IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| MARVIN FIELDER, et al.,<br>individually and on behalf of<br>a class of similarly situated<br>individuals,<br><br>      Plaintiffs,<br><br>vs.<br><br>CREDIT ACCEPTANCE CORPORATION,<br> et al.,<br><br>      Defendants. | Case No. 96-1210-CV-W-3 |

## SUGGESTIONS IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

### I. INTRODUCTION

A. Posture of this Motion

  The plaintiffs understand the Court to have indicated in the teleconference of March 12, 1997, that it will treat the complaint as the equivalent of a motion for certification. This motion is premised upon, and incorporates by reference, plaintiffs' proposed Second Amended Complaint. Although as of this date the Court has not ruled on plaintiffs' motion to file that complaint, the basic factual allegations and legal theories advanced in the complaints do not vary substantially for purposes of this motion. The most significant differences are the addition of two more sets of named debtor-plaintiffs, the assertion of Chapter 365 RSMo (Motor Vehicle Time Sales Act) as an additional theory of recovery for the excess official fees charges, and the expansion of the class to include persons with similar claims which have accrued since the filing of the original petition in state court. The plaintiffs refer the Court to the description of the counts at the

beginning of plaintiffs' proposed Second Amended Complaint, which provides a brief overview of class counts III - XIV.

Pursuant to the Court's order the plaintiffs have pursued discovery on 1 out of 20, or 1,300, of the 26,000 Missouri accounts identified by CAC that fit the time frame of the pleadings. The documentation provided by CAC indicates some 335 of those 1,300 accounts were referred by CAC to collection attorneys in Missouri for litigation. Pursuant to the additional communications among counsel and the Court, the plaintiffs are treating those 335 account as the representative sample, from which to extrapolate conclusions relevant to the issue of class certification. The plaintiffs should note here that the discovery produced by CAC on those files is by no means complete: numerous documents produced were illegible, many litigation files were missing various important documents (many, for example, lacked copies of filed pleadings, judgments, and repossession-related notices), and the computer records on these 335 files were only produced for the first time one week ago, on a special "Zip" computer tape that has required time and effort to translate into files readable by plaintiffs' counsel. The plaintiffs have not had any significant opportunity to examine those computer records as of this date. Thus, in all comments about those files that follow in these Suggestions, the plaintiffs are using only the most conservative figures, those that are clearly demonstrated by discovery thus far provided by CAC. In some instances the actual numbers may well be several times higher — such as the true number of persons overcharged for post-maturity interest.

B. Overview of the case for class certification purposes

In a nutshell, the class of plaintiffs on the claims against NACI, as previously indicated informally to the Court, is between 120 and 160 persons, each of whom were overcharged for official fees. On the class claims against CAC,

there are two broad classes - **(1)** those subjected to dealers' official fee overcharges (Counts VI - IX) and **(2)** those subjected to CAC's post-maturity interest overcharges (Counts X - XIV). Each of these two classes contains a subclass. The official fee overcharge counts contain subclasses of class members with claims for credit sale disclosure violations under the Truth in Lending Act (Counts V and IX). The interest overcharge counts contain a subclass of class members whose cars were repossessed, and one of class members against whom judgment was actually taken for excessive interest. The first class (the excess official fees class) numbers approximately 2,800 accounts (again, using only the most conservative figures); the second class numbers at a minimum some 2,420 accounts. The smallest subclass of this class, those with judgments actually taken against them for excess interest charges, numbers at least 520. All of this information — indeed all of the information needed to establish the plaintiffs' claims — comes from CAC records: the installment contracts; the petitions and affidavits filed against the debtors; the notices relating to repossession and resale; and CAC's internal computer records.

The facts of this case could serve as a textbook example of a consumer class action: thousands of individuals, signing form installment contracts, are subjected to overcharges for official fees and post-maturity interest and, in those cases where their cars are repossessed, receive misleading pre-sale and post-sale notices which are inadequate to advise them of their rights as required by law.

Plaintiffs maintain defendants' practices detailed above run afoul of the Truth in Lending Act (15 U.S.C. §§1601 et seq., hereafter TILA), the Merchandising Practices Act (Chapter 407 RSMo, hereafter MPA), the Motor Vehicle Time Sales Act (Chapter 365 RSMo, hereafter MVTSA), the Missouri statutes governing defaults in consumer transactions (§§408.551 - 562 RSMo) and Article 9 of the Uniform Commercial Code (§§400.9-501 et seq., hereafter UCC).

3

The violations alleged are all documented by CAC's own paperwork relating to the transactions. This case is therefore particularly well-suited for class action treatment.

As one respected commentator has cogently observed:

> The desirability of providing recourse for the injured consumer who would otherwise be financially uncapable of bringing suit and the deterrent value of class litigation clearly render the class action a viable and important mechanism in challenging fraud on the public.

Newberg on Class Actions, § 21.29 at 21-55.

There are a few general principles to consider before addressing the details of Rule 23. It should first be noted that courts take a liberal approach to class certification because of the reality that, without a class, individual claims may be too small to litigate:

> The legal system cannot afford a 'multiplicity of small individual suits for damages' and the aggrieved persons cannot economically obtain redress unless they employ the class action device. *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326, 339, 100 S.Ct. 1166, 1174, 63 L.Ed.2d 427 (1980). Therefore, the aggregation of relatively small individual claims in this case where the class members will be the primary beneficiaries of any relief is not only authorized by Rule 23, but is precisely what the rule intended. *Id.; Califano v. Yamasaki*, 442 U.S. at 682, 99 S.Ct. At 2545.

*Linquist v. Bowen*, 633 F.Supp. 846, 861 (W.D.Mo. 1986); affirmed 813 F.2d 884 (8th Cir. 1987).

Although plaintiffs have the burden of demonstrating that the requirements for a class action have been met, any doubts in this regard must be resolved in favor of class certification:

> the interests of justice require that in a doubtful case .... any error, if there is to be one, should be committed in favor of allowing the class action.

*Esplin v. Hirschi*, 402 F.2d 94, 101 (10th Cir. 1968); accord *Kahan v. Rosenstiel*, 424 F.2d 161, 169 (3rd Cir. 1970). Another reason courts err on the side of class

certification is that a certification order is conditional and can be modified later if needed. *Daigle v. Shell Oil Co.*, 133 F.R.D. 600, 602 (D.Colo. 1990) ("Because class certification is subject to later modification, a court should err in favor of, and not against, allowing maintenance of the class action.").

Courts have been particularly sensitive to the need for class actions in cases involving consumers, because these cases typically involve small claims that cannot be litigated economically on an individual basis. As one court has aptly stated:

> In a large and impersonal society, class actions are often the last barricade of consumer protection. . . . To consumerists, the consumer class action is an inviting procedural device to cope with frauds causing small damages to large groups. The slight loss to the individual, when aggregated in the coffers of the wrongdoer, results in gains which are both handsome and tempting. The alternatives to the class action -- private suits or governmental actions -- have been so often found wanting in controlling consumer frauds that not even the ardent critics of class actions seriously contend that they are truly effective. The consumer class action, when brought by those who have no other avenue of legal redress, provides restitution to the injured, and deterrence of the wrongdoer.

Eshaghi v. Hanley Dawson Cadillac Co., 574 N.E.2d 760, 764-66 (Ill.App. 1991).

Congress expressly recognized the propriety of a class action under TILA by providing special damage provisions and criteria for TILA class action cases in 15 U.S.C. §1640(a). In 1976, Congress increased the statutory damages for class actions in 15 U.S.C. §1640. Pub. L. 94-240 (90 Stat. 257). The legislative history of the amendment clearly states:

> The chief enforcement tool will continue to be private actions for actual damages and civil penalties. Much of the testimony received in the hearings, and much of the debate in Subcommittee and Committee centered on the adequacy of the recovery ceiling for civil penalties in class actions. . . . . (Sen.R. No. 94-590, 94th Cong., 2d Sess., p. 8, 1976 USCCAN 438)

5

In revising 15 U.S.C. §1640 to expressly refer to class actions, Congress recognized that "potential class action liability is an important encouragement to the voluntary compliance which is so necessary to insure nationwide adherence to uniform disclosure." Bantolina v. Aloha Motors, 419 F.Supp. 1116, 1120 (D.Haw. 1976). "The possibility of class-action exposure is essential to the prophylactic intent of the Act, and is necessary to elevate truth-in-lending lawsuits from the ineffective nuisance category to the type of suit which has enough sting to insure that management will strive with diligence to achieve compliance." Bantolina, 419 F.Supp. at 1120, citing the 1972 Federal Reserve Board annual report on the Truth in Lending Act.

Likewise, the Missouri Legislature has expressly recognized in MPA that wholesale and widespread deceptive practices affecting consumers are susceptible to class action treatment by providing in §407.025 RSMo that consumer protection claims may be maintained as class actions.

## II.
## THIS ACTION SATISFIES THE RULE 23(a) PREREQUISITES FOR CLASS CERTIFICATION

Although this action was originally filed in state court and the class claims were brought under Missouri's procedural rules governing class actions, those procedures are virtually identical to the requirements of Rule 23 of the Federal Rules of Civil Procedure. Class certification is proper under Rule 23 when the prerequisites to a class action set forth in Rules 23(a) and 23(b)(2) (injunctive relief) or 23(b)(3) (damages) are satisfied. This section II establishes that the case at bar satisfies the four requirements of Rule 23(a). Section III will show that Rule 23(b)(2), which requires that the opposing party has acted or refused to act on grounds generally applicable to the class, is also satisfied with respect to Counts III, IV, VI - VIII and X - XIV (i.e., all the class counts except the Truth in

6

Lending claims in Counts V and IX which seek only statutory damages). Finally, section IIV will show that Rule 23(b)(3), which requires that (i) common questions of law and fact predominate and (ii) a class action is a superior method of adjudicating the controversy, is also satisfied with respect to Counts III - XIV.

The four requirements of Rule 23(a) are discussed below under headings stated in the language used by the rule for each requirement.

**Rule 23(a)(1) Numerosity: The class is so numerous that joinder of all members is impracticable.** CAC's Rule 26 disclosures and its Memorandum of March 12, 1997, to chambers indicate CAC has approximately 26,000 account files for Missouri contracts written between March, 1991, and the present; that CAC has contracts with some 275-300 Missouri dealers; and that CAC has retained approximately 12 law firms throughout Missouri for its collection efforts. Plaintiffs' pre-suit investigation revealed over 800 lawsuits in Jackson County, Missouri, alone, in which CAC had filed suit on basically the same form contracts as those CAC produced in conjunction with the 335 litigation files. Review of those files shows that CAC has uniformly filed petitions and affidavits representing to the courts that it was entitled to post-maturity interest in excess of that allowed by the contract being sued upon.

Approximately 36 of the 335 suits (10.7%) involved contracts with official fee overcharges. Using this as a representative sample would indicate that nearly 2,800 of CAC's 26,000 contracts contain such an overcharge.

In 79 of the 335 files (23.6%) there were judgments for post-maturity interest above that allowed by the contract. This would indicate, conservatively, that CAC has taken 1,580 judgments containing excessive interest (335 out of 1300 files, or 26%, went to litigation; 26% x 26000 = 6700 x 23.6% = 1,580). This figure is conservative, in light of the fact that in 121 of the 335 suits the petitions sought

such excessive interest. By the same calculations, this would result in 2,420 transactions involving excess interest charges.

As for defendant Northeast Auto Credit, Inc. (NACI), the parties' Rule 26 discussions have revealed anywhere between 120 and 180 transactions in which NACI has overcharged consumers for official fees.

With respect to plaintiffs' claims attacking CAC's deficient pre-sale UCC 9-504 (pre-sale) and § 408.557 (post-sale) notices, again, the sampling of transactions provided by the litigation files CAC has produced indicate that at least 113 out of the 335 transactions (33.7%) involved repossessions, which extrapolates to 2258 repossessions among the 6,700 litigation files. The pre-sale notices CAC sent to the debtors are uniformly one of two versions, neither of which differs substantially in the respects for which they are challenged. The post-sale notices are also uniform in the deficiencies alleged by plaintiffs.

There is thus no question but that this case meets Rule 23(a)(1)'s numerosity requirement. It clearly does.

**Rule 23(a)(2) Commonality: There are questions of law or fact common to the class.** While the rule requires common questions of law or fact, as is explained below, the common questions of law and fact applicable to the class in this case are numerous. Such is readily apparent from a mere reading of the Second Amended Complaint and reviewing the exhibits attached thereto. Moreover, as pointed out above, the forms CAC uses for its installment contracts, notices, petitions and affidavits at issue are common to all its transactions, with only minor variations which do not affect the claims advanced by plaintiffs. Responding to a contention that variations in debtors' mortgage contracts defeated commonality in a class action challenging over-escrowing of funds the Eighth Circuit held, in *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995):

> Commonality is not required on every question raised in a class action. Rather, Rule 23 is satisfied when the legal question 'linking the class members is substantially related to the resolution of the litigation.' *Paxton V. Union Nat'l Bank*, 688 F.2d 552, 561 (8th Cir. 1982) (quoting *American Fin. Sys., Inc. V. Harlow*, 65 F.R.D. 94, 107 (D.Md. 1974), *cert. denied*, 460 U.S. 1083, 103 S.Ct. 1772, 76 L.Ed.2d 345 (1983).
>
> \* \* \* \* \*
>
> The main point of contention centers on Mellon's alleged over-escrowing funds, and all members of the class are interested in a satisfactory common course of conduct in the future servicing of their loans, despite the fact that some class members have different mortgage contracts.

Moreover, it is not necessary that every question be common to the class, only that the class members' claims derive from a common nucleus of operative fact. *TBK Partners v. Chomeau,* 104 F.R.D. 127 (E.D.Mo 1985).

Another factor supporting commonality is the absence of any question of individual class members' reliance. Under TILA reliance is not required. *Zamrippa v. Cy's Car Sales*, 674 F.2d 877, 879 (11th Cir. 1982). Nor is it a requirement under the MPA. *State ex rel. Webster v. Areaco Inv. Co.*, 756 S.W. 633, 635 (Mo.App.E.D. 1988) or under the language of the statutes in §§ 400.9-507 (the UCC pre-sale notice claim), 408.556 and 408.557 (the post-sale notice claim) and 365.100 (the MVTSA claims).

**Rule 23(a)(3) Typicality: The claims or defenses of the representative parties are typical of the claims or defenses of the class.** Typicality is met where the class members have been subjected to the same allegedly unlawful treatment. *Rentschler v. Carnahan*, 160 F.R.D. 114, 116 (E.D.Mo. 1995). The named plaintiffs' claims are typical if they emanate from the same legal theory, remedial theory or offense as the persons they seek to represent. *Ellis v. O'Hara, 105 F.R.D. 556, 561* (E.D.Mo. 1985). The burden of demonstrating typicality is fairly easily met so long as other class members have

9

Case 4:96-cv-01210-ODS   Document 38   Filed 07/16/97   Page 9 of 17

claims similar to the named plaintiff. *DeBoer, supra,* at 1174. Plaintiffs' claims against defendants do not deviate in any respect material to this motion from the claims of the other class members, all of whom were entitled to, and deprived of, fair and honest treatment by defendants.

Plaintiffs' proposed Second Amended Complaint contains twelve class claims in Counts III through XIV. The claims focus on CAC's and its dealers' practices of charging debtors nonexistent official fees; CAC's practice of charging excessive post-maturity interest; CAC's failure to send proper pre-sale and post-sale notices to debtors upon repossession of their cars; and CAC's failure to fulfill statutory pleading requirements in filing deficiency suits against consumers.

**Counts III through IX are all predicated on defendants' official fee overcharges.** Plaintiffs claim such overcharges run afoul of the MPA, MVTSA and TILA. They further claim CAC is liable for its dealers' deceptive conduct in this regard, both as a direct participant and by reason of 16 C.F.R. §433, the Federal Trade Commission's rule abrogating the holder in due course doctrine in consumer credit transactions. Plaintiffs' claims attacking the official fee overcharges are typical of the claims of the class of debtors they seek to represent.

The official fee overcharge claims center on one common fact. While the only public official fee in Missouri in the typical credit sale of a car is the $8.50 fee charged by the Department of Revenue (and sometimes the additional $1.50 charged by fee agents) for noting CAC's lien on the title, defendants were routinely charging anywhere from $22.00 to $307.50 to car buyers under the guise of official fees and pocketing the difference. Plaintiffs contend this constitutes an unfair and deceptive practice prohibited by the MPA, specifically §407.020 RSMo. Plaintiffs further allege this practice violates MVTSA, specifically §365.070.6(8) RSMo, which requires truthful disclosure of the amount of official fees payable by the buyer. Moreover, plaintiffs allege this additional charge should have been

disclosed for what it was - a part of the finance charge - as required by TILA, specifically 15 U.S.C. §§1638(a)(3) and (b)(1). The common questions of fact and law are thus obvious: did defendants falsely state the amount of official fees and, if so, did they thereby violate foregoing consumer protection statutes? A related common question of law is whether, under Counts VIII and IX, CAC can be held liable for its dealers' overcharges of official fees under the FTC holder clause in all the form contracts, which clause is mandated by the above FTC rule. The straightforward and uncomplicated factual and legal issues presented by these counts are thus particularly well-suited to class treatment.

**Counts X, XI and IX** all call into question CAC's practice of charging debtors excessive post-maturity interest, including compound interest. The common question of fact running throughout these claims centers on the amount of post-maturity interest (if any) provided for in the installment contracts on the one hand and amount of post-maturity interest CAC has charged its debtors on the other. The common factual question of whether CAC has charged excessive interest is easily answered by looking at the documents CAC has filed with the courts in its collection suits and the computer records CAC maintains on each debtor's account.

It is worth noting here that CAC admits to filing a false claim for post-maturity interest in its suit against plaintiffs Marvin Fielder and Deborah Williams (see Answer and Affirmative Defenses of Credit Acceptance Corporation to First Amended Complaint, paragraph 57). Discovery has established this was not an isolated instance. As pointed out earlier, in an estimated 2,420 other transactions, CAC did the same thing.

The question of law common to all the transactions - whether CAC's post-maturity interest charges transgress the various Missouri statutes governing late charges or interest and thereby trigger the MPA's prohibition against unfair and

11

deceptive practices and the MVTA's prohibition against excessive late charges, is resolved by resort to those statutes. See, e.g., §365.100 (restricting late charges on motor vehicle installment contracts and §365.150 barring creditor from recovery of any time price differential, delinquency or collection charges if creditor violates §365.100); §407.020 prohibiting unfair and deceptive practices; §408.020 (governing rate of interest allowable on money due on a contract) and §408.040 (governing allowable rate of post-judgment interest). Whether CAC has violated any or all of the foregoing statutes in overcharging thousands of debtors for post-maturity interest involves common questions of law and fact particularly well-suited to class action treatment. The same goes for Count XIV, which seeks relief in equity for CAC's practice of interest overcharges and judgments based on false affidavits and petitions.

**Count XII** contests the validity of the UCC 9-504 notice of sale CAC sends to defaulting debtors upon repossession of their cars. Once more, the common factual question involves the content of a form document. Because CAC sends virtually the same notice to everyone, if the notice is deficient in the case of one it is deficient in the case of all. The common legal question is whether the notice passes muster under the UCC and its judicial gloss. A related common question of law is whether the notice is deceptive, in violation of MPA §407.020.

**Finally, Count XIII** takes issue with the post-sale notices and pleadings CAC employs in its deficiency actions against consumers. Again, the content of the notices is uniform - if one is bad so are they all; the legal question common to all is whether the content of the form meets the requirements of §408.557 RSMo. As for CAC's pleadings, though there is somewhat less uniformity here (some of its collection attorneys apparently prefer their own forms) the form petition CAC includes in the suit package it sends to its attorneys is penned naked of the allegations required by §408.556 RSMo for stating claim upon which relief may be

12

Case 4:96-cv-01210-ODS   Document 38   Filed 07/16/97   Page 12 of 17

granted in a deficiency action. The common questions of fact and law are once more obvious respecting this count.

While neither all the members of the various classes and subclasses nor even all the named plaintiffs are asserting the same claims, concepts of commonality and typicality do not mandate that all putative class members share identical claims. *DeBoer, supra,* at 1174-5.

**The representative parties will fairly and adequately protect the interests of the class.** The Rule 23 requirement that the named plaintiffs provide fair and adequate protection for the interests of the class. That protection involves two factors: (a) no antagonistic interests between the plaintiff and the class and (b) competent counsel. *Linquist v. Bowen*, supra, at, 859.

The interests of the named plaintiffs are coincident with the general interests of the class. Here, both the named plaintiffs and the class members seek money damages and equitable relief as the result of defendants' unlawful actions. Given the identity of claims between the plaintiffs and the class members, there is no potential for conflicting interests in this action. There is no antagonism between the interests of the named plaintiffs and those of the class.

Plaintiffs' counsel are both experienced. Mr. Brown has been practicing since 1980 and has concentrated his practice in the area of consumer protection law at both the state and federal levels. He has extensive experience in handling complex consumer protection litigation at both levels. He was actively involved in multi-district litigation in the late 1980's involving Chrysler's wide-spread practice of disconnecting the odometers on new vehicle while being driven by Chrysler employees before being sold to unwary retail customers. He is admitted to practice before the state courts in Missouri, Kansas and Massachusetts and the federal courts in the Western District of Missouri, the District of Kansas, the Eighth Circuit and the Tenth Circuit.

13

Mr. Irwin has been practicing since 1973. He has also concentrated his practice in the area of consumer protection law and has likewise handled complex litigation at both the state and federal levels. As early as 1974 he acted as co-counsel in *Asalee Hunter, et al. v. Jonas Byrd Milner, et al.*, No. 74-CV-495-W-2, U.S. District Court, Western District of Missouri, a successful class action against several pay day loan companies for usury and Truth in Lending violations. He has served as co-counsel on two other suits (one of which is still pending) brought as consumer class actions. He is admitted to practice before the state courts in Missouri and the federal courts in the Western District of Missouri, the Eighth Circuit, and the Supreme Court.

### III.
### THIS ACTION SATISFIES THE RULE 23(b)(2) PREREQUISITES FOR CLASS CERTIFICATION

Plaintiffs seek class-wide injunctive relief, in addition to damages, under Counts III, IV, VI and VII against defendants prohibiting them from overcharging car buyers for official fees; under Counts X, XI and XIV against defendant CAC prohibiting it from charging excessive post-maturity interest; under Count XII against CAC prohibiting it from continued violation of UCC Article 9; and under Count XIII against CAC prohibiting it from continued violation of §§ 408.556 and 408.557 RSMo. Such relief is appropriate under Rule 23(b)(2) where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole". From the pleadings and the above discussion it is clear that defendants have acted on grounds generally applicable to the class. And, while counsel for defendants assured plaintiffs' counsel that defendants have discontinued the challenged practices, as late as January 27, 1997, over three months this suit was filed, CAC

took a judgment against the putative plaintiffs Henderson for falsely-claimed excess post-maturity interest. In addition, CAC continues to utilize the same form notices and petitions in its repossessions and attendant deficiency suits. Plaintiffs desire to insure that such practices are halted and remain stopped by court order.

## IV.
## THIS ACTION SATISFIES THE RULE 23(b)(3) PREREQUISITES FOR CLASS CERTIFICATION

The requirements of Rule 23(b)(3) are also clearly satisfied by this case. Those requirements are discussed briefly below, again under headings stated in the language of the rule.

**The questions of law or fact common to the members of the class predominate over any questions affecting only individual members.** No serious debate can be raised over the Second Amended Complaint's satisfaction of this requirement: <u>all</u> of the central factual <u>and</u> legal questions are common to the class. Defendants' conduct was not directed against any individual car buyer to the exclusion of others, but, rather, affected the class members generally. The commonality of the central legal and factual questions is overwhelming. This is, again, readily apparent from a reading of the Petition and the above discussion of Rule 23(a)'s typicality requirement.

**A class action is superior to other available methods for the fair and efficient adjudication of the controversy.** A class action is not just a fair and efficient method for adjudicating this case, it is indeed the <u>only</u> means available to vindicate the rights of the plaintiffs and the other class members here.

This action seeks, among other things, damages and injunctive relief for wrongs committed against, and affecting, and entire class of consumers - thousands in number - in amounts reaching millions of dollars. However, the

15

individual claims, while possibly for as much in some cases as a few thousand dollars, are clearly too small to justify individual actions. This especially so here because of the case's complexities and large expenses and attorneys' time required to prosecute the case properly. In this regard, this is exactly the kind of action contemplated by the class action rule, which allows the accumulation of many relatively small but meritorious claims into a single suit that would otherwise not be pursued.

## CONCLUSION

For the reasons stated above, plaintiffs respectfully request that this motion be granted and that the Court certify this case to proceed as a class action.

Respectfully submitted,

**SLOUGH, CONNEALY, IRWIN & MADDEN**

By _____
DALE K. IRWIN #24928
4051 Broadway, Suite 3
Kansas City, Missouri 64111
(816)531-2224
(816)531-2147 (telecopier)

**ATTORNEYS FOR PLAINTIFF**

and

**THE BROWN LAW FIRM**

By _____
BERNARD E. BROWN #31292
4800 Rainbow, Suite 200
Westwood, Kansas 66205
(913) 722-4777
(913) 722-6777 (telecopier)

16

## CERTIFICATE OF SERVICE

I certify that a copy of the above and foregoing was faxed and mailed, first class, postage prepaid, this 20th day of June, 1997, to:

Mr. David R. Mitchell
2307 South Outer Road, Suite 204
Blue Springs, MO 64015
fax number 224-1101
Attorney for defendant Northeast Auto Credit, Inc.

Ms. N. Louise Ellingsworth
3500 Kansas City Place
1200 Main Street
Kansas City, MO 64105
fax number 374-3300
Attorney for defendant Credit Acceptance Corporation

Attorney for Plaintiffs