# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

FILED
APR 15 1998
R. F. CONNOR, CLK.
U. S. DISTRICT COURT
WEST DISTRICT
OF MISSOURI

MARVIN FIELDER, et al.,   )
individually and on behalf of  )
a class of similarly situated  )
individuals,  )
   )
        Plaintiffs,  )  Case No. 96-1210-CV-W-3
   )
vs.  )
   )
CREDIT ACCEPTANCE CORPORATION, )
  et al.,  )
   )
        Defendants.  )

## PLAINTIFFS' CORRECTED SUGGESTIONS IN OPPOSITION TO "CAC'S MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION AND TO DISMISS OR STAY BY REASON OF PENDING STATE COURT LITIGATION", AND IN OPPOSITION TO "CAC'S MOTION FOR PARTIAL SUMMARY JUDGMENT"

Having thrown Brer Rabbit into the briar patch some fifteen months ago,[1] Brer Fox now pauses to reconsider. While CAC may well now regret having shifted the battle to this Court, its belated subject matter jurisdiction attack is unfounded, as is its plea for a stay. After losing the class certification battle and hiring an additional law firm, CAC now asserts state court would be a better place to litigate this matter. However, none of the reasons proffered by CAC for reversal of this Court's removal order justify returning this class action to state court. Certainly nothing CAC says can possibly justify breaking this class action up into thousands of individual cases. CAC's res judicata summary judgment arguments are closely connected to the arguments in its motion to dismiss, and similarly without merit.

---

[1]    CAC removed this matter from the Circuit Court of Jackson County, Missouri, to this Court on November 25, 1996.



Document # 132

Rather than submitting largely duplicate pleadings, or relying on cross-referencing between separate pleadings, the plaintiffs supposed that it would be better for the Court and all parties if they submit their suggestions on both CAC's motion to dismiss and on its motion for partial summary judgment in one pleading (with argument totaling under 15 pages per motion, per local rule).

The plaintiffs proceed assuming fairly detailed familiarity with the claims asserted in this case, and would refer the Court to their suggestions in support of their pending motions for summary judgment for additional explanation of the case. The plaintiffs also proceed understanding that for purposes of the motion to dismiss the allegations of their Third Amended Complaint are taken as true, and that for purposes of the summary judgment motion the uncontroverted allegations of the Third Amended Complaint are taken as true.

## I.   Response to CAC's Statement of Facts

1.    "CAC has obtained 4,360 money judgments in the Missouri state courts for deficiencies on retail installment contracts including 2690 judgments after repossession, which numbers include many members of both plaintiff classes."
RESPONSE:  Controverted, except that the plaintiffs do not dispute the very approximate magnitude of the numbers.  The plaintiffs controvert this allegation only based on an objection: that they have not been given this information by CAC despite its clear obligation to do so under Rule 26, and thus are unfairly prevented from verifying the accuracy of the numbers.  The plaintiffs have no way of knowing, for example, if CAC's numbers include all later-filed suits and judgments or only suits filed and judgments taken up to October 15, 1996; they do not have the names of the class members included in these numbers (CAC has provided to date only information on the original representative sampling used for class certification purposes, amounting to one in 20 of the persons sued by CAC

2

whose contracts were issued between October 15, 1991 and October 15, 1996. The plaintiffs similarly have no way of verifying the "many" members of the Official Fees class in particular.

2.      "Each class member subject to a judgment in favor of CAC could have asserted his or her claims in this action as a defense or counterclaim in the prior state court action."

RESPONSE: Controverted. The meaning of "could have" is critical and quite ambiguous. To the extent that it suggests that the plaintiffs had knowledge of the legal violations and therefore "could have" asserted the claims, for example, the plaintiffs controvert this assertion. See plaintiffs' additional uncontroverted fact 1, below.

3.      "Each class member subject to a judgment in favor of CAC is seeking to relitigate in this action issues which were necessarily decided in the prior state court action."

RESPONSE: Controverted. This is not a statement of fact but a legal conclusion and as such will be addressed by plaintiffs in the argument portion of these Suggestions.

## II. Plaintiffs' Additional Uncontroverted Facts

1.      Thousands of judgments were entered against absent class members in cases where the judges themselves did not realize that CAC was claiming more interest and fees than those to which it was entitled and, even when one judge sought to question CAC's practice, CAC's attorney affirmatively directed his attention away from the proper post-maturity interest clause in the installment contract and affirmatively misrepresented to him an excessive post-maturity interest rate applied. See transcript from *CAC v. Collins* in the Circuit Court of Buchanan County, Missouri attached as Exhibit A. See also uncontroverted facts

3

27 and 31 and supporting documents in plaintiffs' "Suggestions In Support Of Plaintiffs' Three Motions For Partial Summary Judgment Against CAC" ("27. CAC apparently always charged compound interest in the same fashion as charged on the Fielder/Williams and Henderson accounts when it repossessed a vehicle and filed a collection action", and "31. Extrapolating from the 122 litigation files with charges for unauthorized post-maturity interest rates, CAC charged such interest using false affidavits and false petition allegations on over 1/3 of the litigation accounts, which would equal a total of in excess of 2,400 accounts.")

2.      CAC continued to take judgments and file suit based on false affidavits claiming excessive post-maturity interest even after this case was removed to this Court. (See the Henderson case, and Exhibits B and C attached hereto.)

## III.  Preliminary matters

Before addressing the substance of CAC's *Rooker-Feldman* and abstention arguments, the plaintiffs address several preliminary matters.

### 1.    Members of class 1 generally do not have judgments or suits against them (so that CAC's *Rooker-Feldman* and abstention arguments would not apply to them)

In asserting that all of plaintiffs' claims relate to accounts with final judgments entered by, or pending litigation before, Missouri courts (at page 3 of its Suggestions), CAC chose simply to ignore the class definitions in this Court's class certification order and the allegations of the Complaints.  Obviously, there is no connection between the allegations for members of the Official Fees class and pending litigation or judgments against those class members.  CAC's assertion is entirely without basis, in fact or in the pleadings.

4

### 2. A substantial number of members of class 2 also do not have judgments or litigation pending against them.

Again, while the decided majority (but not all) of the members of class 2 were at least sued by CAC, a sizable number even of those sued never had judgments taken against them, and do not have litigation pending against them. Class two is composed of persons "charged" excess post-maturity interest (whether by charges for interest at an unauthorized percentage rate, or charges for compound interest, or both). Some CAC account debtors were apparently charged post-maturity interest at an excessive percentage rate, but were never sued. Similarly, not all of the suits filed were prosecuted to judgments, and a significant number were dismissed. Again, CAC's allegation that all members of this class are subject to pending state litigation or judgments is without basis in fact or in the pleadings.

### 3. The suits and judgments relied upon by CAC here include many wrongfully filed, prosecuted, and taken long after notice that this conduct was wrongful, even long after this suit was filed and CAC had responded

By way of general background, plaintiffs' claims for relief are supported by the facts of CAC's continued filing of suits with false affidavits long after removing this matter to this Court. See the Henderson case, in which judgment was taken on 1/27/97 for 18% on a contract providing for no post-maturity interest and Exhibits B (Judgment taken on 1/21/97 for 25% interest on contract providing for post-maturity interest at 9%) and Exhibit C (suit filed on 4/3/97 for 18% on contract providing for no post-maturity interest) attached hereto.

## IV. CAC's *Rooker-Feldman* arguments

### 1. Overview of *Rooker-Feldman*

The *Rooker-Feldman* doctrine, as explained in Wright, Miller and Cooper, *Federal Practice and Procedure*, Vol. 18 § 4469, is essentially the rule that the

federal courts must afford full faith and credit to state court judgments, but raised to be a matter limiting the jurisdiction of the federal courts on the ground that the federal district courts have only original (not appellate) jurisdiction. In other words, if a state court would afford one of its judgments res judicata effect, the federal courts do not have jurisdiction to do otherwise. Or, if a claim before a federal court amounts to an appeal or an ordinary collateral attack on a state court judgment, the court does not have jurisdiction to adjudicate the claim.

But, by the same token, "In a federal court 'the judgment of a state court will be accorded the same but no greater effect as res judicata than would be given to it by the courts of the state in which it was rendered.'" *Bryson v. Guarantee Reserve Life Ins. Co.*, 520 F.2d 563, 566 (8th Cir. 1975).

Further, there is a long-standing and firmly established "exception" for collateral attacks in federal courts on state court judgments that do not relitigate the cases, but are based on independent equitable claims of "fraud on the court" or complete want of personal or subject matter jurisdiction. (The plaintiffs submit that examination of all relevant cases shows that this is no "exception", but simply a restatement of an area in which res judicata would not in any event apply.) As stated in *McKay v. Pfiel*, 827 F.2d 540, 543-4 (9thCir.1987):

> Federal district courts, as courts of original jurisdiction, n4 may not serve as appellate tribunals to review errors allegedly committed by state courts. Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 296, 26 L. Ed. 2d 234, 90 S. Ct. 1739 (1970) ("Lower federal courts possess no power whatever to sit in direct review of state court decisions."). The Supreme Court long ago defined the difference between original proceedings, over which federal district courts have jurisdiction, and those proceedings that are only attacks on correctness of a state court's judgment, over which they do not:
>
> > The question presented with regard to . . . jurisdiction . . . is, whether the proceeding . . . is or is not in its nature a separate suit, or whether it is a supplementary proceeding so connected with the original suit as to form an incident to it, and substantially a continuation of it. If

6

the proceeding is merely tantamount to the common-law practice of moving to set aside a judgment for irregularity, or to a writ of error, or to a bill of review or an appeal, it would belong to the latter category, and the United States court could not properly entertain jurisdiction of the case. Otherwise, the Circuit Courts of the United States would become invested with power to control the proceedings in the State courts, or would have appellate jurisdiction over them in all cases where the parties are citizens of different States. Such a result would be totally inadmissible.

On the other hand, if the proceedings are tantamount to a bill in equity to set aside a decree for fraud in the obtaining thereof, then they constitute an original and independent proceeding, and according to the doctrine laid down in *Gaines v. Fuentes* (92 U.S. (2 Otto) 10, [23 L. Ed. 524]), the case might be within the cognizance of the Federal courts. The distinction between the two classes of cases may be somewhat nice, but it may be affirmed to exist. In the one class there would be a mere revision of errors and irregularities, or of the legality and correctness of the judgments and decrees of the State courts; and in the other class, the investigation of a new case arising upon new facts, although having relation [*544] to the validity of an actual judgment or decree, or the party's right to claim any benefit by reason thereof.

*Barrow v. Hunton,* 99 U.S. (9 Otto) 80, 82-83, 25 L. Ed. 407 (1878); cf. *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 175, 2 L. Ed. 60 (1803)("It is the essential criterion of appellate jurisdiction, that it revises and corrects the proceedings in a cause already instituted, and does not create that cause.").

(omitting footnote citing to *Rooker*) The *McKay* court goes on to discuss *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 75 L. Ed. 2d 206, 103 S. Ct. 1303 (1983), and cites (at 544) *Resolute Ins. Co. v. North Carolina,* 397 F.2d 586 (4th Cir.), cert. denied, 393 U.S. 978, 89 S. Ct. 446, 21 L. Ed. 2d 439 (1968) for further support for the currency of this analysis. *See also Simon v. Southern Railway Company,* 236 U.S. 115; 35 S. Ct. 255; 59 L. Ed. 492 (1915). Again, in *In re Sun Valley Foods Co.,* 801 F.2d 186, 189 (6th Cir. 1986):

Review of final determinations in state judicial proceedings can be obtained only in the *United States Supreme Court.*

7

> *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462,
> 476, 103 S. Ct. 1303, 1311-12, 75 L. Ed. 2d 206 (1983). See 28 U.S.C. §
> 1257. See also *Atlantic Coast Line Railroad Co. v. Locomotive*
> *Engineers*, 398 U.S. 281, 296, 90 S. Ct. 1739, 1747-48, 26 L. Ed. 2d
> 234 (1970); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416, 44 S. Ct.
> 149, 150, 68 L. Ed. 362 (1923). A United States district court "has
> no authority to review final judgments of a state court in
> judicial proceedings." *Feldman*, 460 U.S. at 482, 103 S. Ct. at
> 1315. This is true, even though the state court judgment may
> have been erroneous. (Citations omitted).
>
> There is, however, an exception to the general rule that
> precludes a lower federal court from reviewing a state's
> judicial proceedings. A federal court "may entertain a
> collateral attack on a state court judgment which is alleged to
> have been procured through fraud, deception, accident, or
> mistake. . . ." *Resolute Insurance Co. v. State of North*
> *Carolina*, 397 F.2d 586, 589 (4th Cir. 1968). The district court
> below stated: "there has been no evidence . . . [of] facts such as
> fraud, accident or mistake which . . . deceived the Court into a
> wrong decree. . . ."

For similar holdings see *Automobile Club of Michigan v. Stacey,* 750 F. Supp. 259,

263-4 (E.D.MI 1990); *Davis v. Bayless,* 70 F.3d 367, 375-76 (5th Cir. 1995); *Radiology*

*Institute, Inc. v. Rodriguez*, 818 F. Supp. 477, 478-9 (D.PuertoRico 1993); *In Re*

*Highway Truck Drivers Local 107*, 888 F.2d 293, 298-299 (3rdCir.1989). A similar

analysis that arguably supports at least this general view is found in *Euge v.*

*Smith*, 418 F.2d 1296, at 1299 (8thCir. 1969).

Probably the seminal federal case with respect to setting aside a judgment

for "fraud on the court" is *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S.

238, 88 L. Ed. 1250, 64 S. Ct. 997 (1944) (although it deals with matters all within the

federal courts). For a good discussion of the potent analysis showing the reach of

*Hazel* see Wright, Miller and Kane, *Federal Practice and Procedure*, Vol. 11 §

2870.

## 2. Analysis of plaintiffs' case under *Rooker-Feldman*

The plaintiffs submit that they certainly are not seeking appellate review of

any state court judgments, or indeed "review" of any kind. Rather, they are

8

asserting affirmative claims that 1) were never before filed or presented in any way in the state court cases (and that were not under any circumstances compulsory counterclaims), 2) in any event for multiple reasons would not be barred by Missouri res judicata rules. Also, the plaintiffs are 3) to the extent necessary asserting claims for affirmative equitable relief from any judgments, which would be granted as a matter of right under Missouri law and would not be barred by res judicata.

CAC focuses on 3), the plaintiffs' claims for equitable relief from the judgments, never addressing 1) and 2), the plaintiffs' claims that clearly have not been litigated and could not be barred by any claim of res judicata (or *Rooker-Feldman* bar). The plaintiffs will first discuss CAC's attack on the plaintiffs' claims for equitable relief from the judgments, and will then discuss the plaintiffs' other claims.

CAC cites a number of cases, published and unpublished (*see* 8th Circuit Rule "Plan for Publication of Opinions", section 3) that it hopefully argues would bar any action in equity to set aside or amend the judgments. However, despite the rather sweeping language quoted, the plaintiffs submit that none of these cases varies at all from the description of *Rooker-Feldman* set out above, and that in particular the "exception" for an independent action in equity is not at all negated by any of those cases.

Probably the case most heavily relied upon by CAC is *Kamilewicz v. Bank of Boston Corp.*, 92 F.3d 506 (7th Cir. 1996), *cert. den.*, 117 S.Ct. 1569 (1997). But in *Kamilewicz* the claims that there had been fraud on the court were litigated in a subsequent hearing, under the state trial court's continuing jurisdiction in that class action; setting aside the judgment would indeed have been "review" of a matter already presented to the state court, and ignoring the res judicata effect of decisions by that court of matters actually presented to it. Again, the state court

9

continued to hold jurisdiction over the class case, so that it was entirely proper and manageable for the state court to hear such motions. By contrast, in the instant case, any action to set aside or amend the state court judgments must either be brought in one court in a class action — meaning that it will not be presented to all of the many separate courts where the judgments were entered — or it will be doomed to ridiculous piecemeal handling court by court (and, practically speaking, will never happen).

The plaintiffs thus submit that *Rooker-Feldman* as applied to this case could not even possibly effect more than the limited part of plaintiffs' case that would set aside or amend state judgments, and that any *Rooker-Feldman* question further boils down to what res judicata effect, if any, such judgments have, and whether if necessary Missouri law would support actions to set them aside or modify them. The plaintiffs will now discuss how most of their claims do not run afoul of res judicata even where there are judgments, and how Missouri and federal law in any event clearly supports affirmative actions to set aside or amend such judgments.

## V.   Plaintiffs' case, res judicata and actions in equity

### 1.   Many claims obviously not touched by res judicata; defense not asserted

As noted at the beginning of these Suggestions, the Official Fee Class members are not generally judgment debtors or in litigation brought by CAC, so there are no res judicata questions related to their claims. Similarly, a sizable (but unknown) number of the Post-Maturity Interest Class members either were never sued or never had judgment taken against them; likewise, their claims could not be subject to res judicata questions.

In addition, it should be noted that CAC has filed multiple pleadings in this case, and not once, before these motions, has it raised the defense of res judicata, which by ordinary pleading requirements would constitute a waiver of that defense.

### 2. No compulsory counterclaims in Associate Circuit cases

The Post-Maturity Class asserts claims against CAC under Chapters 408, 365, and 407, and under 9-507 of the UCC. Of course, these claims have not been litigated.

It is important at this stage of the discussion to clarify one issue: contrary to assertions and misleading authority cited by CAC, since all CAC collection actions took place in Associate Circuit Court, counterclaims were in any event not compulsory (regardless of their possible connection to the transaction in the petition). CAC cites *Myers v. Clayco Bank*, 687 S.W.2d 256 (Mo.App. 1985); *Brannan v. Eisenstein*, 804 F.2d 1041 (8th Cir. 1986) and *Podhorn v. Paragon Group*, 795 F.2d 658 (8th Cir. 1986) to support its assertion that a compulsory counterclaim rule applies. However, CAC ignores the controlling Missouri Supreme Court case, *Rahman v. Matador Villa Associates*, 821 S.W.2d 102 (Mo.banc 1991), which holds that the compulsory counterclaim rule does not apply in associate circuit court. Once again CAC has avoided presenting to this Court authority that would contradict its misleading citations.

CAC's reliance on *Myers v. Clayco State Bank*, 687 S.W.2d 256 (Mo.App.W.D. 1985) in this regard is totally misplaced. There a group of guarantors were sued by the bank on a $250,000.00 promissory note. The bank won summary judgment. The guarantors then sued the bank. The court dismissed this suit, ruling that the claims should have been asserted as compulsory counterclaims in the bank's earlier suit. In affirming the trial court's dismissal, the court of appeals did not even mention, much less rule on, the issue in the case

at bar, i.e., whether the compulsory counterclaim rule applies in proceedings governed by Chapter 517. This was obviously because the suit in *Myers* was not brought pursuant to Chapter 517, in that it involved a claim for $250,000.00. Section 517.011.1(1), quoted above, only applies to suits seeking up to $25,000.00. The *Myers* case therefore has no application here.[2] Similarly, *Rahman* controls over the earlier tentative suggestion of Missouri law found in *Podhorn*. In fact, CAC ignores CAC ignores the Eighth Circuit's admonition in *Podhorn* that a federal court is required to apply the state law as interpreted by the courts of the state.

### 3. Plaintiffs' claims would in any circumstance not have been compulsory counterclaims; no res judicata bar

CAC contends that Missouri associate circuit judges necessarily determined the issues raised by plaintiffs when entering judgment on CAC's deficiency claims and therefore plaintiffs are collaterally estopped from raising their TILA [or other state law] violations in this action. CAC cites *Cotton v. Federal Land Bank of Columbia*, 676 F.2d 1368 (11th Cir. 1982) in support of this contention.

True enough, the court there said that in determining whether the creditor had a right to foreclose on the real estate at issue the state court would necessarily have considered the validity of the notes and the deeds to secure the notes and, accordingly, would have considered whether TILA violations had occurred. But in citing *Cotton* CAC ignores the crucial distinction between it and this case - the

---

2    CAC's assertion of a "compulsory counterclaim" non-issue here mirrors its behavior at the class certification stage, where it claimed the federal compulsory counterclaim rule would require it to file thousands of counterclaims against absent class members, thereby rendering this case unmanageable. At that time CAC cited numerous older decisions in its favor without bothering to mention the most recent decision on point, a case in which its own attorneys were involved, had gone the other way. Now CAC cites the *Myers* decision, which is clearly not on point, and ignores the Missouri Supreme Court's decision in *Rahman,* which clearly is.

fact that real estate secured the notes in *Cotton*, whereas the installment contracts in this case are secured by cars. This distinction is crucial because the only transactions subject to rescission (i.e., invalidity) by reason of TILA violations are those secured by real estate. See 15 U.S.C. § 1635. So, when the court in *Cotton* spoke of the validity of the notes and deeds securing them in the context of TILA, it could only have been with reference to the rescission provisions of TILA. Of course, no claim is made in the instant matter that any of the installment contracts is invalid by reason of any TILA violation because none of the installment contracts at issue is secured by real estate. Moreover, no claim is made that any of the contracts is invalid for violation of any state law. *Cotton* therefore has absolutely no bearing on the issues in this case.

More to the point on this question is *Peterson v. United Accounts, Inc.*, 638 F.2d 1134 (8th Cir. 1981). As previously noted by this Court, TILA (and Fair Debt Collection Practices Act) counterclaims are deemed permissive under *Peterson*. See *Fielder v. Credit Acceptance Corporation*, 175 F.R.D. 313, at 321. A permissive counterclaim by definition is not lost by failure to assert it in the creditor's suit on the underlying transaction. Numerous courts have held TILA claims, to continue this example, to be permissive counterclaims to a creditor's collection action. *Spartan Grain & Mill Co. v. Ayers*, 581 F.2d 419 (5th Cir. 1978, cert. denied, 444 U.S. 831, 100 S.Ct. 59, 62 L.Ed2d 39 (1979) (counterclaims are permissive, relying on cases which held that creditor collection claims are also permissive); *Brady v. C.F. Schwartz Motor Co.*, 723 F.Supp. 1045 (D.Del. 1989); *Christy v. Heights Finance Corp.*, 101 B.R. 542 (C.D. Ill. 1987) (failure to raise TILA claim in consumer's bankruptcy is no bar to subsequent suit against creditor); *Daugherty v. First Bank & Trust Co.*, 435 F.Supp. 218 (N.D.Ind. 1977) (relying on rule that creditor counterclaims are permissive to consumer TILA actions).

CAC's statement (in its summary judgment suggestions) that "by entering default judgments against class members and in favor of CAC, the Missouri courts necessarily made a finding that CAC was entitled to default judgments"[3] begs the question, which is: What issues in litigation, if any, are foreclosed by a prior judgment, particularly a default judgment? The court in a case cited by CAC, *Hernandez v. Westoak Realty & Investment, Inc.*, 771 S.W.2d 876, 884 (Mo.App. 1989), wrestled with this question. The Hernandezes had sued a lender and a builder to set aside a foreclosure sale were awarded a default judgment setting aside the foreclosure. In a subsequent suit they attempted to claim that the lender and the builder were not separate corporations and that the earlier default judgment was res judicata to this effect. Refusing to accord the prior default judgment res judicata effect, the court said:

> It is difficult enough to delineate the issues on which litigation is, or is not, foreclosed by a prior judgment entered after a trial. This difficulty is made more acute by a default judgment, where as here, the issues were not joined by responsive pleadings and no trial occurred. However, contrary to the Hernandezes' contention, the alter ego issue was not necessarily resolved by the default judgment in [the prior litigation].

*Id.*, at 884. And, in response to the Hernandezes' contention that they had alleged in their pleadings in the prior suit that the lender and the builder were "one and the same entity", the court said:

> The Hernandezes, however, do not tell us what proof would be necessary to support a request to set aside a foreclosure sale and, thus, fail to tell us whether all or part of these allegations were necessary to support their request to set aside the foreclosure sale in [the prior case]. This failure, in turn, results in a failure to demonstrate to us that the alter ego theory was necessarily determined by the default judgment. We are not required to pick up the cudgels for the Hernandezes and make those arguments for them.

---

3    CAC's Suggestion in Support, page 5.

*Id.*, at 885. Likewise, this Court is not obliged to pick up the cudgel for CAC; it is CAC's responsibility to plead and prove any res judicata bar.

But in any event, good authorities suggest that where a default judgment is at issue, there is no issue preclusive effect from the judgment. As stated in *Jackson v. R.G. Whipple, Inc.*, 225 Conn. 705; 627 A.2d 374, 381 (Conn. 1993), "In the comments to the section on issue preclusion in the Restatement, it is stated that 'in the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated.' (Emphasis added.) 1 Restatement (Second), Judgments § 27, comment (e) (1982)." *See also* Wright, Miller and Cooper, *Federal Practice and Procedure*, Vol. 18 § 4442 ("This result is correct . . ..") And Missouri cases on res judicata cite and follow the Restatement of Judgments. *See*, for example, *Sanders v. Insurance Company of North America*, 904 S.W.2d 397, 401 (Mo.App. 1995).

Further, it is now time to pause and consider just what CAC is saying: That it has obtained thousands of inflated default judgments using false affidavits (and in flagrant violation of pleading statutes); that it has continued suing debtors and taking such judgments using false affidavits; and that while it was all a big mistake, CAC can nonetheless ratify its conduct used to obtain those judgments, and use those judgments as a sword now (rather than immediately satisfying them or setting them aside, or continuing to ignore any possible res judicata effect as it did in each of its Answers in this case) to assert res judicata and bar plaintiffs' claims. This is patently inequitable, to put it mildly. And, indeed, this would be a basis for ignoring any preclusive effect of the default judgments. 1 Restatement Judgments 2nd, § 68.

In any event, plaintiffs have amply demonstrated, by their cites to *Rahman, Peterson et al.* above, that their claims herein cannot be properly characterized as

compulsory counterclaims to CAC's associate circuit court debt collection actions and thus are not barred by res judicata.

The plaintiffs' statutory claims clearly were not litigated. Even if they could have been brought in state court and there were a compulsory counterclaim rule, None of the claims asserted by plaintiffs in this case would have been adjudicated in connection with CAC's collection actions. They are all affirmative claims for relief under TILA, the Motor Vehicle Time Sales Act, the Missouri statutes on defaults, the Missouri Uniform Commercial Code and the Merchandising Practices Act, each with their own separate elements. They all stand on their own and plaintiffs were not required by any compulsory counterclaim rule to file them in CAC's collection actions.

This is also in accord with § 22, Restatement of Judgments 2d, which provides that where the defendant may interpose a claim as a counterclaim but he fails to do so, he is not thereby precluded from subsequently maintaining an action on the claim unless the counterclaim was considered compulsory by statute or rule.

### 4. Actions in equity

The plaintiffs suggest that, since res judicata does not bar their claims, it may not be necessary for the judgments to be set aside, if damages awarded in appropriate claims compensate for the excess amounts awarded in the defective judgments. If judgments are to be set aside, while the rule of *Hazel* (see below) would support simply wiping the judgments out and leaving CAC with no amounts due at all, it would be within the realm of equity for the judgments to be amended, reduced only to eliminate improper awards.

At the outset it must be noted that the nature of the fraud practiced upon the courts and the class members transcends the type of fraud courts of equity might refer to as intrinsic and thus insufficient to justify relief against a judgment. In the instant matter, CAC, with the full and enduring participation of its collection

attorneys across the state, have joined forces to file false affidavits and false petitions in thousands of collection suits across the State of Missouri. Thousands of default judgments have been taken which include excessive post-maturity interest and unauthorized compound interest based upon such affidavits. This case thus involves far more than injury to an individual litigant; rather, it amounts to a wholesale assault on the system of justice. In such a circumstance the U.S. Supreme Court has declared that equity will intervene to grant relief against such judgments, regardless of when they were entered. *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944).

In *Hazel-Atlas*, Hartford and its lawyers submitted to the court a fake trade journal article supporting their position in connection with patent litigation against Hazel. The article, which had been submitted for publication under the name of a former President of the Glass Workers' Union, had in reality been written by Hartford and its attorneys. In granting equitable relief to Hazel from the fraudulently-obtained judgment, the court, after noting that the matter did not concern only private parties, said:

> Furthermore, tampering with administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society. Surely it cannot be that preservation of the integrity of the judicial process must always wait upon the diligence of litigants. The public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud.

*Id.*, at 246. This same rule obtains in the state courts of Missouri. In *Sutter v. Easterly*, 189 S.W.2d 284 (Mo. 1945), the Missouri Supreme Court affirmed the setting aside in equity of a judgment in a personal injury action which was procured by manufactured evidence. In that case the plaintiff's attorney got an individual who was nowhere near the accident scene to testify that he had

witnessed the accident and that the defendant was on the wrong side of the road. In rejecting the plaintiff's argument that the mere giving of false evidence will not authorize equity to vacate a judgment, the court said:

> In this case we have more than the perjured testimony of witness Schilling. We find the party's chief attorney engaged in a plot to furnish a false witness to "make a case" with perjured testimony and a conspiracy with such false witness to carry out the plot.

> \*      \*      \*      \*      \*

> [Plaintiff's attorney's] scheme and conspiracy were such a violation of a lawyer's duty to the court, -- a duty imposed not alone by principles of honesty and good morals but also by a code of ethics adopted as rules of court, as to amount to a fraud on the court for which equity will grant relief.

*Id.* at 292-93. The court went on to quote at length from *Hazel-Atlas*, including the quote from that case set out above. It is thus clear that Missouri courts will grant relief in equity from judgments procured by fraud on the system of justice itself. That is exactly what we have in this case.

Even if CAC's contention that it did not intend to charge consumers fees or interest unauthorized by law is taken at face value, Missouri courts would still have the power to grant relief in equity from judgments procured by CAC's false affidavits. Judgments can be set aside for constructive fraud as well as for intentional fraud. *Johnson v. Stull*, 303 S.W.2d 110, 116 (Mo. 1957) (judgment based on service by publication set aside because affidavit upon which constructive service obtained falsely stated defendant could not be found in state; unnecessary to show affiant intended to deprive defendant of notice). The same goes for a judgment procured by mistake. *Krashin v. Grizzard,* 31 S.W.2d 984, 987 (Mo. 1930) ("equity will interpose its aid when a wrong has been done to a litigant through accident or mistake as readily as when there has been fraud in the concoction or procurement of a judgment").

Likewise, the Restatement of Judgments, Second, § 68 provides that a judgment by default may be avoided if the judgment "was based on a claim that the party obtaining the judgment knew to be fraudulent". Likewise, § 70 of the Restatement provides for relief from a judgment in a contested action where it was based upon a claim the party knew to be fraudulent.

It is worth noting that Missouri courts will, in such actions in equity, set aside judgments rendered by other Missouri courts, and that this is a matter of right under Missouri law if the facts support the action. *See Sanders, supra* (requiring the Jackson County Circuit Court to set aside a judgment of the Cape Girardeau Circuit Court in an independent action in equity).

## VI. Abstention/stay issue

The fact that CAC has sued or is in the process of suing thousands of poor, unsophisticated, unrepresented debtors in associate circuit court collection suits across the State of Missouri can hardly furnish any reason for this Court to decertify this class action. To the contrary, the very fact of such a multiplicity of collection actions goes to the heart of the reason for proceeding with this case as a class action, which is that:

> The legal system cannot afford a 'multiplicity of small individual suits for damages' and the aggrieved persons cannot economically obtain redress unless they employ the class action device. *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326, 339, 100 S.Ct. 1166, 1174, 63 L.Ed.2d 427 (1980). Therefore, the aggregation of relatively small individual claims in this case where the class members will be the primary beneficiaries of any relief is not only authorized by Rule 23, but is precisely what the rule intended. *Id.; Califano v. Yamasaki*, 442 U.S. at 682, 99 S.Ct. At 2545.

*Linquist v. Bowen*, 633 F.Supp. 846, 861 (W.D.Mo. 1986); affirmed 813 F.2d 884 (8th Cir. 1987).

19

Just as CAC's cites to compulsory counterclaim cases have no application, neither does its cite to *Darsie v. Avia Group Int'l.*, 36 F.3d 743 (8th Cir. 1994). For, as noted by CAC, the compulsory counterclaim rule furnished the underpinning for the Eighth Circuit's decision in that case.[4] But even if *Darsie* were applied in the instant matter, a balancing of the four listed factors set out at page 8 of CAC's Suggestions in Support would augur strongly against abstention. Taking those factors one by one demonstrates this as so.

The first factor, inconvenience of the federal forum, is glossed over by CAC. This is perhaps because CAC, not plaintiffs, made the original choice to be in federal court. CAC obviously believes this to be a convenient forum. Plaintiffs agree with CAC on this point. This first factor thus would weigh heavily in favor of keeping this case here.

The second factor, the chance to avoid piecemeal litigation, also weighs heavily in favor of retention. In certifying this case as a class action this Court found that there are questions of law and fact common to the class members' claims, that the named plaintiffs' claims are typical of those of the class members, that CAC "has acted or refused to act on grounds generally applicable to the class" and that the plaintiffs "may not have the resources to sue individually and the results of thousands of state court decisions could be inconsistent." *Fielder v. Credit Acceptance Corp.*, 175 F.R.D. 313, 320-1 (W.D.Mo. 1997). The clear aim of CAC is not to avoid piecemeal litigation, but to embrace it, so long as it is on its own turf. This second factor would also thus weigh heavily in favor of keeping the case here.

The third factor - priority of filing - is, at worst, a neutral factor. Plaintiffs filed this action on October 15, 1996. CAC has never really provided plaintiffs or

---

4    CAC's Suggestions, page 9.

the Court with concrete numbers concerning the collection actions it has filed and when it filed them. While CAC now says it has "forwarded" approximately 8,782 accounts to Missouri attorneys for suit, it does not say how many suits were in fact filed, let alone when they were filed - whether before or after plaintiffs filed this class action. Neither does CAC give a clue as to when the suits were filed which resulted in the approximately 4,360 judgments it claims to have taken to date. And, while making much of the fact that one of the judgments it has taken was against the class representatives Henderson, CAC neglects to point out that its suit against the Hendersons was not filed until December 3, 1996, well after CAC had removed this case to this Court and filed its Answer admitting its fraudulent conduct in the Fielder/Williams collection suit. So, while CAC studiously avoids giving out any meaningful numbers by which to gauge this third Darsie factor, it is telling that the one case it chooses to emphasize - the Henderson case - clearly mitigates against abstention, having been a later-filed state court case.

The fourth *Darsie* factor concerns the source of governing law. Plaintiffs' claims in this case are drawn from both state and federal law. CAC's confidence in this Court to decide the state law questions was unqualified fifteen months ago when it filed its Removal Petition. CAC points to nothing that has happened since then to shake this confidence. It merely says that "this Court is in no better position to interpret those statutes than the state courts."[5] This is hardly a reason to abstain.

The fifth factor, the state court's ability to adequately the parties' rights, weighs heavily in favor of retention. This forum is undoubtedly the far superior one in which to litigate plaintiffs' claims. One need only to sit through an afternoon's collection docket in associate circuit court to realize this. Perhaps this

---

5    CAC's Suggestions in Support, p. 9.

is why the legislature, the Missouri Supreme Court in *Rahman* and the Missouri Court of Appeals in *Lankheit* were all loathe to accord res judicata effect to associate circuit court judgments in bar of later-asserted consumer claims. CAC's contention that plaintiffs demonstrated their confidence in the state court to protect class members' claims by filing this case there misses the mark. Plaintiffs filed this case in circuit court as a class action. CAC is not asking this court to abstain in favor of a class action already on file in circuit court, but to abandon thousands of unrepresented debtors, leaving them to their own devices in CAC's individual collection actions on file in associate circuit courts.[6] As the record clearly demonstrates, and as CAC indeed implicitly admits,[7] those courts have thus far been wholly ineffective in the face of CAC's collection machine, rendering thousands of judgments for fraudulently claimed interest and official fees against unrepresented debtors. This Court, on the other hand, has already demonstrated, by certifying this matter to proceed as a class action, that it is a far superior forum in which to seek justice for CAC's hapless debtors.

## Conclusion

The plaintiffs submit that CAC's motions are both without merit, and should be overruled.

---

6    CAC asks this Court to "stay this action to permit resolution of litigation currently pending beween CAC and members of the plaintiff classes in the Missouri state courts." CAC's Suggestions in Support, pp. 7-8.

7    CAC's president implicity acknowledges in his affidavit attached to CAC's Suggestions in Support that judgments for too much money have been taken. Also, CAC by its post-judgment filings in the Henderson collection action in St. Louis openly acknowledges that it obtained a judgment for too much interest.

THE BROWN LAW FIRM

by: _____
     Bernard E. Brown, Mo. Bar #31292
3100 Broadway, Ste. 223
Kansas City, MO 64111
(816) 960-4777
"FAX" (816) 960-6777

SLOUGH, CONNEALY, IRWIN AND MADDEN

by: _____
     Dale K. Irwin, Mo. Bar #24928
4051 Broadway, Suite 3
Kansas City, MO 64111
(816) 531-2224
"FAX" (816) 531-2147

ATTORNEYS FOR PLAINTIFFS


### Certificate of Service

I hereby certify that a copy of the foregoing was faxed and mailed this 16th day of March, 1998, to:

Ms. N. Louise Ellingsworth
Mr. Frank W. Lipsman
3500 Kansas City Place
1200 Main Street
Kansas City, MO 64105
fax number 374-3300
Attorney for defendant Credit Acceptance Corporation


Mr. John P. Scotellaro
Mr. Robert M. Moye
70 West Madison Street
Suite 3300
Chicago, Illinois 60602
fax number 312-372-2098

_____
Attorney for plaintiffs

IN THE MISSOURI COURT OF APPEALS

WESTERN DISTRICT

CREDIT ACCEPTANCE CORP.,        )
                                )
            Appellant,          )
                                )
vs.                             )    W. D. No. 53051
                                )
KENNETH AND CONNIE COLLINS,     )
                                )
            Respondents.        )

IN THE BUCHANAN COUNTY CIRCUIT COURT
FIFTH JUDICIAL CIRCUIT, DIVISION IV
Honorable James William Roberts, Judge

CREDIT ACCEPTANCE CORP.,        )
                                )
            Plaintiff,          )
                                )
vs.                             )    Cause No. CV695-918ACX
                                )
KENNETH AND CONNIE COLLINS,     )
                                )
            Defendants.         )

TRANSCRIPT ON APPEAL

APPEARANCES:

Mr. Kevin Kelly
Attorney at Law
1005 Grand Ave. #700
Kansas City, Missouri 64106
   For:  Plaintiff

Ms. Connie Collins
2535 South 12th St.
St. Joseph, Missouri 64503
   For:  Pro Se

EXHIBIT_____A-1_____

(June 14, 1996)

1    THE COURT:  This is Case Number CV695-918.  The

2    style of the case is Credit Acceptance Corp. vs. Connie and

3    Kenneth Collins.  The matter has been tried in Associate

4    Court; and this is a trial de novo or, in other words, a total

5    new trial from that proceeding.  The Plaintiff is present by

6    its attorney, Kevin Kelly.  And do--And does the--Do you have

7    a corporate representative, also?

8    MR. KELLY:  I have my witnesses, Judge.  I do

9    not have a Credit Acceptance Corp. representative.

10    THE COURT:  All right.  All right.  The

11    Defendants are present in person and without an attorney.  Is

12    everybody ready to go?

13    THE DEFENDANT:  Yes.

14    MR. KELLY:  Yes.

15    THE COURT:  All right.  Mr. Kelly?

16    MR. KELLY:  Your Honor, prior to actually

17    starting the trial, I would ask the Court to take judicial

18    notice of its--of its file and bring to the Court's attention

19    the following items.  On May 15th of this year--There is a

20    file stamped copy of Plaintiff's Request for Admissions of

21    Fact and Genuineness of Documents to the Defendants; and, as

22    of today's date, I have no answers to those questions and

2

EXHIBIT A-2

1   having with this.  The amounts were incorrect on it.  The

2   signat--Like I said, I did not sign it.  They told my husband

3   it was okay for him to sign my name.

4               THE COURT:  What?

5               THE DEFENDANT:  I did not sign the cont

6   The gentleman at A-1 Auto Credit told my husband it wa

7   to sign my name.  We signed--We signed--

8               THE COURT:  All right.  Hang on a secol

9   *We'll get some testimony in a minute here.*

10              THE DEFENDANT:  Okay.

11              THE COURT:  They're asking you to admit what

12  the contract provides.  That it will either provide it or it

13  won't.  That's--I see nine percent interest.  I don't see 23

14  percent in the contract.  But perhaps it's in here after

15  default.

16              MR. KELLY:  If I may, Your Honor.  On the

17  contract running across the page in the middle is five boxes--

18  are five boxes on the left-hand side.  It says annual

19  percentage rate.  Your copy may not be as clean as mine.

20              THE COURT:  No, it's clear--a clean copy.  I

21  see, the annual percentage rate is--

22              MR. KELLY:  Yeah.

23              THE COURT:  --23 percent, yes.  Okay.  Here,

7

EXHIBIT A-3

IN THE CIRCUIT COURT OF BUCHANAN COUNTY, MISSOURI
ASSOCIATE CIRCUIT DIVISION

CREDIT ACCEPTANCE CORPORATION
25505 West Twelve Mile Road
Southfield, Michigan 48034-8339

*1-16-96 at 9:00 am*
*CW695-918 AC*

        Plaintiff,

    vs.

KENNETH COLLINS AND CONNIE COLLINS
Serve at: 2535 W. 12th Street
St. Joseph, Missouri 64503

        Defendants.

## PETITION

COMES NOW, the Plaintiff, Credit Acceptance Corporation, and for its cause of action against the Defendants states:

1.   The Plaintiff is a Michigan corporation authorized to do business in this state.

2.   Plaintiff is the assignee of a certain retail installment sales contract dated 04/16/95, a copy of which is attached and labeled Exhibit A pursuant to said contract. Plaintiff is entitled to interest on said retail installment sales contract in the amount of 23.00%.

3.   Defendants entered into said contract to purchase a 1987 Chevrolet.

4.   Defendants is/are in default of said contract, and is currently due and owing the Plaintiff $3,362.38 plus interest for 11/17/95.

5.   Plaintiff has demanded payment from Defendants but Defendants have refused to pay.

WHEREFORE, Credit Acceptance Corporation, prays for judgment against the Defendants in the principal amount of $3,362.38, for interest on the unpaid balance at the rate of 23.00% per annum, for reasonable attorney fees, for the Plaintiff's costs incurred herein, and for other such relief as justice may require.

                Respectfully submitted,
                WISE & FORD

                Kevin Kelly, MBE #34408
                1005 Grand Avenue, Suite 700
                Kansas City, Missouri 64106
                (816)842-6468  FAX: 842-7676
                ATTORNEY FOR PLAINTIFF

#215240

EXHIBIT A-4

KEVIN KELLY
1005 GRAND AVE
SUITE 700
KANSAS CITY MO 64106

CREDIT ACCEPTANCE CORPORATION
Plaintiff
vs.
CONNIE COLLINS, KENNETH COLLINS
Defendant

AFFIDAVIT of PROOF and of NON - MILITARY SERVICE
STATE OF MICHIGAN, COUNTY OF OAKLAND

PATRICIA RIVERS of full age, being duly sworn according to law,
upon my oath depose and say:

1) I am an accounts receivable clerk of plaintiff, and am duly
authorized to make this affidavit.

2) I am fully familiar with the books and business of the
plaintiff. The account of the defendant(s), above referenced,
set forth in the complaint in this cause is a true and accurate
copy of the books of original entry of the plaintiff.

3) The service for which said charges were made, were performed
for the defendant, at the special instance and request of the
defendant. Said charges are fair and reasonable, and are as per
agreement. The defendant promised to pay the sum therefor.

4) Credit has been duly given for all payments, counterclaims
and set offs and there now remains due and owing from the said
defendant to the plaintiff the sum of $3362.38    together
with interest from 111795 , at 23.00 %.

5) No defendant named herein is a minor or incompetent person.

6) This claim is based on a writ of attachment, capias ad respondendum,
replevin, or claims based directly upon the sale of a chattel wherein
a chattel has been repossessed peaceably or by legal process.

7) After diligent search, I know that no defendant named herein is
in the military service of the United States.

8) That I have read the petition filed with the court in this action and
it is true and correct to the best of my knowledge and belief.

Sworn and subscribed before me
this NOV 17, 1995.                      *Patricia A Rivers*
                                        PATRICIA RIVERS

*Mary Colleen Ford*
NOTARY

        MARY COLLEEN FORD
        NOTARY PUBLIC - WAYNE COUNTY, MI
215240  MY COMMISSION EXPIRES 06/19/99

EXHIBIT  A-5

IN THE CIRCUIT COURT OF BUCHANAN COUNTY, MISSOURI

CREDIT ACCEPTANCE CORPORATION, )
               Plaintiff, )
                            )
vs.                    ) Case No.: CV 695-918-ACX
                            )
KENNETH & CONNIE COLLINS, )
              Defendant. )

## PLAINTIFF'S CAC REQUEST FOR ADMISSIONS
## OF FACT AND GENUINENESS OF DOCUMENTS TO DEFENDANT

COMES NOW the Plaintiff, Credit Acceptance Corporation, CAC, and propound the following requests for admissions of fact and genuineness of documents to the Defendants to be answered in accordance with Supreme Court Rule 59:

1.    Please admit the Plaintiff, Credit Acceptance Corporation, CAC, is a Michigan corporation.

2.    Please admit that on or about April 16, 1995 A - 1 Auto Credit [hereinafter dealer] and defendants entered into a Retail Installment Sale Contract regarding the Defendant's purchase of a 1987 Chevrolet S-10 motor vehicle.

3.    Please admit that the dealer assigned the contract to CAC.

4.    Please admit that CAC is a holder in due course of the contract.

5.    Please admit that the contract provides that Defendants would make monthly payment of $207.82 under the contract.

6.    Please admit that Defendants made no payment on the contact.

7.    Please admit that CAC has made demand upon the Defendant for payment.

8.    Please admit that CAC has performed each and every obligation under the contract.

9.    Please admit that the contract provides for interest on the unpaid balance at the rate of 23% per annum.


RECEIVED
MAY 17 1996
BY:

EXHIBIT A-6

10.    Please admit that the contract provides the Defendants are obligated to pay CAC reasonable attorney fees and costs.

11.    Please admit that the Defendant is indebted to CAC in the principal sum of $3,362.38.

12.    Please admit that the Kenneth Collins executed the contract.

13.    Please admit that Connie Collins executed the contract.

## DOCUMENTS

14.    Please admit the genuineness of the Retail Installment Sale contract attached to the Plaintiff's Petition.

15.    Please admit the genuineness of the Buyers Guide attached hereto and made a part hereof.

WISE & FORD

Kevin Kelly - MBE 34408
1005 Grand Avenue, Suite 400
Kansas City, Missouri 64106
(816) 842 - 6468
ATTORNEY FOR PLAINTIFF

**RETAIL INSTALLMENT CONTRACT AND SECURITY AGREEMENT**

Buyer _____
Addr. _____ **4C SOUTH 12TH**  **JESPH MO 64503**

No. _____
Date **April 16, 1995**

"You" and _____ means each Buyer above and guarantor, jointly and severally.

Address **2005 PEAR** **ST JOSPH MO 64503**

"We" and "us" means the Seller and successors and assigns

**SALE:** You agree to purchase the property described below according to the following terms, including those on the reverse side.
You agree to pay us the total of payments of **THREE THOUSAND NINE HUNDRED FOURTY-EIGHT DOLLARS AND 57 CENTS**

Dollars ($ _____ ) as specified below.
(a) ☒ in _____ **19** _____ installments of $ **207.82** each, beginning **MAY 10,1995** and continuing on the same day
of each month thereafter, until _____ 19 _____ when a final payment of $ **207.82** will be due
(b) ☐ (other) _____

**Prepayment:** You may prepay this contract in whole or in part at any time. However, any partial prepayment will not reduce or excuse any later payments until this note is paid in full. If and when prepaid in full, or upon maturity by acceleration, the interest portion of the finance charge will be recomputed using the rule of 78's as provided in Section 365 140 RSMo to determine the exact amount then due. No refund or credit of less than $1.00 will be made.

☐ If checked, you agree to pay a minimum finance charge of $ **25.00** _____
☐ If checked, an acquisition fee of $ **15.00** _____ will be deducted from the refund before payment or credit to you. No part of this fee will be refunded.

☐ If checked, you agree to pay a late charge on any payment made more than _____ **10** _____ days after it is due, of 5% of the payment, but not less than $1.00 or greater than $ **5.00** _____

**Post-Maturity Interest:** You agree to pay interest at the rate of **9.00** _____ per year on any amount owing on this contract which is not paid at maturity, including maturity by acceleration.

**SECURITY:** You give us a purchase money security interest in the property described below, including all accessions, attachments, accessories, equipment and all proceeds from the property. **WARRANTY INFORMATION IS SUPPLIED TO YOU SEPARATELY.**

| MAKE | YEAR | MODEL | BODY TYPE | LICENSE NO./YEAR | IDENTIFICATION NO. |
|------|------|-------|-----------|------------------|--------------------|
| CHEV | 87 | S-10 | P/U | | 1GCBS14E2H0150301 |

Other Description:

**CREDIT ACCEPTANCE CORPORATION, The Silver Triangle Building**
25505 West Twelve Mile Road, Suite 3000, Southfield, Michigan 48034-8339. **Toll Free (800) 634-1506**

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | AMOUNT FINANCED The amount of credit provided to you or on your behalf. | TOTAL OF PAYMENTS The amount you will have paid when you have made all scheduled payments. | TOTAL SALE PRICE The total cost of your purchase on credit, including your down payment of $ **1,000.00** |
|---|---|---|---|---|
| **33.000** % | $ **665.08** | $ **3,283.50** | $ **3,948.58** | $ **4,948.58** |

| Your Payment Schedule will be: | Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|---|
| | **19** | $ **207.82** | **MONTHLY BEGINNING - 5/10/95** |
| | | $ | |
| | | $ | |

**Security:** You are giving a security interest in the goods or property being purchased.
☐ Required Deposit: The annual percentage rate does not take into account my required deposit.
☒ Late Charge: You will be charged a late charge on any payment made more than _____ **10** _____ days after it is due, of 5% of the payment, but not less than $1.00 or greater than $ **5.00**
**Prepayment:** If you pay off this contract early, you ☐ may ☒ will not be entitled to a refund of part of the Finance Charge.
You can see your contract documents for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

Filing fees $ **N/A**
"e" means an estimate

**CREDIT INSURANCE**
Credit life insurance and credit disability insurance are not required to obtain credit, and will not be provided unless you sign and agree to pay the additional costs.

| | Premium | Term |
|---|---|---|
| Credit Life | | |
| Credit Disability | | |
| Joint Credit Life | | |

You ☐ do ☐ do not want credit life insurance.
X _____ **N/A**
You ☐ do ☐ do not want credit disability insurance.
X _____ **N/A**
You ☐ do ☐ do not want joint credit life insurance.
X _____ **N/A**
X X

**PROPERTY INSURANCE**
You understand that you are free to insure your property with whatever licensed company, agent, or broker you may choose; that you may do so at any time after the date of this loan; that you have not canceled any existing insurance on your property if you owned it before this loan; and that this loan cannot be denied you simply because you did not purchase your insurance through us. YOU MAY NOT NEED TO PURCHASE CREDIT PROPERTY INSURANCE, AND YOU MAY HAVE OTHER INSURANCE WHICH WE WILL ACCEPT WHICH COVERS THE PROPERTY SECURING THIS LOAN. YOU SHOULD EXAMINE ANY OTHER INSURANCE WHICH YOU HAVE IN ORDER TO DETERMINE IF THIS COVERAGE IS NECESSARY. If you get the insurance from or through us you will pay $ **0.00** _____ for _____ **00 MONTHS** _____ of coverage.

The property insurance premium is calculated as follows:
☐ Fire-Theft and Combined Addt. Coverage $ **INCL.**
☐ $ **200.00** Deductible Comprehensive Cov. $ **INCL.**
☐ $ **200.00** Deductible Collision Coverage $ **N/A**
☐ _____ **N/A**
The above insurance does not include liability insurance coverage for bodily injury and property damage unless such insurance is specifically described above.

**ASSIGNMENT**
Seller assigns this contract on **APR 19, 1995** 19 _____
to CREDIT ACCEPTANCE CORPORATION, 25505 West Twelve Mile Road, Suite 3000, Southfield, Michigan 48034-8339 _____ in accordance with the Seller's Assignment appearing on the reverse side. The assignment is 1 ☒ Without Recourse 2 ☐ With Recourse 3 ☐ Subject to a Separate Agreement.

By _____ Title _____ (Seller)

**ITEMIZATION OF AMOUNT FINANCED**

| | | |
|---|---|---|
| 1. Cash Price (excluding Sales Tax) | $ | **4,275.00** |
| 2. Down Payment Computation | | **0** |
| Description of Trade-In _____ | | |
| (a) Gross Trade-In Allowance | $ | **0.00** |
| (b) Pay-Off (if any) | $ | **0.00** |
| (c) Net Trade-In (a minus b) | $ | **1,000.00** |
| (d) Cash Down Payment | $ | **1,000.00** |
| (e) Total Down Payment (c plus d) | $ | **3,275.00** |
| 3. Unpaid Balance of Cash Price (1 minus 2(e)) | | |
| d. Other Charges: | | |
| (a) To Insurance Companies | $ | **0.00** |
| (b) To Public Officials | $ | **0.50** |
| (c) LPO INSURANCE | $ | **0.00** |
| (d) SERVICE CONTRACT | $ | **0.00** |
| (e) _____ | $ | **0.00** |
| 5. Prepaid Finance Charges | | **NONE** |
| 6. Amount Financed (3 plus 4(a) through 4(e)) | $ | **3,283.50** |

**NOTICE TO THE BUYER:** (1) Do not sign this contract before you read it or if it contains any blank spaces. (2) You are entitled to an exact copy of the contract you sign. (3) Under the law you have the right to pay off in advance the full amount due and under certain circumstances to obtain a partial refund of the finance charge.

**BUYER ACKNOWLEDGES RECEIPT OF A COPY OF THIS RETAIL INSTALLMENT CONTRACT**

1. Signed _____ Buyer
2. Signed _____ Buyer

**YOU ALSO AGREE TO THE TERMS ON THE REVERSE SIDE OF THIS CONTRACT.**

Signed _____ For Seller
Title _____

**EXHIBIT A-8**

# IN THE CIRCUIT COURT OF SAINT LOUIS COUNTY, MISSOURI
## ASSOCIATE JUDGE DIVISION

CREDIT ACCEPTANCE CORPORATION,   )
      a Corporation,                    )
                                    )
           Plaintiff,               )
                                    )   Cause No.:
   vs.                               )
                                  )   Division No.:41
LISA GAINES,                      )
      SS #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,           )
      405 Auselbrook St          )
Saint Louis, Missouri 63122     )
                                  )
           Defendant.           )

## PETITION -- BREACH OF CONTRACT

COMES NOW Plaintiff, CREDIT ACCEPTANCE CORPORATION, by and through its counsel, Louis A. Vlasaty, and for its Petition against the Defendant, says unto this Honorable Court as follows:

1.     That the Plaintiff is a Michigan Corporation authorized to do business in the State of Missouri.

2.     Plaintiff is the assignee of a certain retail installment sales contract dated May 18, 1995, a copy of which is attached and labeled Exhibit A. Pursuant to said contract Plaintiff is entitled to interest on said retail installment sales contract at the rate of 25.000%, plus reasonable attorney fees.

3.     Defendant entered into said contract to purchase a 1989 Chevrolet.

4.     Defendant is in default of said contract, and the amount currently due and owing the Plaintiff is $5,879.17, plus interest from date of demand as per the statement of account attached and labeled Exhibit B.

5.     Plaintiff has demanded payment from Defendant but Defendant has refused to pay.

**EXHIBIT** _B-1_

WHEREFORE, Plaintiff prays judgment against the Defendant in the principal amount of $5,879.17, together with interest at the rate of 25.000% per annum from the date of demand in the amount of $672.27, for a reasonable attorney's fee of $888.48, for a total of $7,439.92, and for costs herein expended.

CAMPBELL & COYNE, P.C.

_____
Louis A. Vlasaty #27502
7777 Bonhomme Ave, Suite 1500
St. Louis, Missouri Mo. 63105
(314) 721-5327
Attorney for Plaintiff

THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THIS PURPOSE.

File #96-00939-1
PR1

EXHIBIT __B-2__

LASATY
ENG BLDG. #1500
BONHOMME AVE
LOUIS MO 63105

CREDIT ACCEPTANCE CORPORATION
Plaintiff
vs.
GORDON L GAINES, LISA GAINES
Defendant
_____/

AFFIDAVIT of PROOF and of NON - MILITARY SERVICE
STATE OF MICHIGAN, COUNTY OF OAKLAND

CARLTON COOK, of full age, being duly sworn according to law,
upon my oath depose and say:

1) I am an accounts receivable clerk of plaintiff, and am duly
authorized to make this affidavit.

2) I am fully familiar with the books and business of the
plaintiff. The account of the defendant(s), above referenced,
set forth in the complaint in this cause is a true and accurate
copy of the books of original entry of the plaintiff.

3) The service for which said charges were made, were performed
for the defendant, at the special instance and request of the
defendant. Said charges are fair and reasonable, and are as per
agreement. The defendant promised to pay the sum therefor.

4) Credit has been duly given for all payments, counterclaims
and set offs and there now remains due and owing from the said
defendant to the plaintiff the sum of $5879.17   together
with interest from 10/01/96 , at 25.00 %.

5) No defendant named herein is a minor or incompetent person.

6) This claim is based on a writ of attachment, capias ad respondendum,
replevin, or claims based directly upon the sale of a chattel wherein
a chattel has been repossessed peaceably or by legal process.

7) After diligent search, I know that no defendant named herein is
in the military service of the United States.

8)That I have read the petition filed with the court in this action and
it is true and correct to the best of my knowledge and belief.

Sworn and subscribed before me           _Carlton Cook_
this OCT 01 1996.                          CARLTON COOK

_Patricia A. Rivers_
NOTARY

PATRICIA A. RIVERS
NOTARY PUBLIC - WAYNE COUNTY, MI
MY COMMISSION EXP. 06/15/2000

225895                                    EXHIBIT  B-3

*VIABAIY*

**Buyer** GORDON GAINES
LISA GAINES
**Address** 6406 CABANNE
ST. LOUIS, MO. 63110
"You" and "your" means each Buyer above and guarantor, jointly and severally.

**Seller** PARKWAY MOTOR COMPANY
**Address** 4340 KINGSHIGHWAY
ST. LO. 63109
"We" and "us" means the Seller above, its successors and assigns.

**SALE:** You agree to purchase the property described below according to the following terms, including those on the reverse side.
You agree to pay us the total of payments of **EIGHTEEN THOUSAND THIRTY-NINE AND 60/100 DOLLARS**
Dollars ($ **6039.60** ) as specified below:

(a) ☒ In **24** installments of $ **251.65** each, beginning **JUNE 18** , 19 **95** and continuing on the same day of each month thereafter, until **5/18** , 19 **97** when a final payment of $ _____ will be due.

(b) ☐ (other) _____

**Prepayment:** You may prepay this contract in whole or in part at any time. However, any partial prepayment will not reduce or excuse any later payments until this note is paid in full. If and when prepaid in full, or upon maturity by acceleration, the interest portion of the finance charge will be recomputed using the rule of 78's (as provided in Section 365.140 RSMo) to determine the exact amount then due. No refund or credit of less than $1.00 will be made.

☒ If checked, you agree to pay a minimum finance charge of $ **25.00**.

☒ If checked, an acquisition fee of $ **15.00** will be deducted from the refund before payment or credit to you. No part of this fee will be refunded.

☒ If checked, you agree to pay a late charge on any payment made more than **10** days after it is due, of 5% of the payment, but not less than $1.00 or greater than $ **85.00**.

**Post-Maturity Interest:** You agree to pay interest at the rate of **9.00** % per year on any amount owing on this contract which is not paid at maturity, including maturity by acceleration.

**SECURITY:** You give us a purchase money security interest in the property described below, including all accessions, attachments, accessories, equipment and all proceeds from the property. WARRANTY INFORMATION IS SUPPLIED TO YOU SEPARATELY.

| MAKE | YEAR | MODEL | BODY TYPE | LICENSE NO/YEAR | IDENTIFICATION NO |
|------|------|-------|-----------|-----------------|-------------------|
| BUICK | 1986 | CENTURY | 4 DR. SEDAN | | 1G4AL19X8GT417906 |

Other Description:
CREDIT ACCEPTANCE CORPORATION, The Silver Triangle Building
25505 West Twelve Mile Road, Suite 3000, Southfield, Michigan 48034-8339, Toll Free (800) 634-1506

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | AMOUNT FINANCED The amount of credit provided to you or on your behalf. | TOTAL OF PAYMENTS The amount you will have paid when you have made all scheduled payments. | TOTAL SALE PRICE The total cost of your purchase on credit, including your down payment of $ 800.00 |
|---|---|---|---|---|
| **20.00** % | $ **1095.10** | $ **4944.50** | $ **6039.60** | $ **6839.60** |

| | Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|---|
| Your Payment Schedule will be: | **24** | $ **251.65** | MONTHLY BEGINNING JUNE 18, 1995 |

**Security:** You are giving a security interest in the goods or property being purchased.
☐ Required Deposit: The annual percentage rate does not take into account your required deposit.
☒ Late Charge: You will be charged a late charge on any payment made more than **10** days after it is due, of 5% of the payment, but not less than $1.00 or greater than $ **5.00**.
**Prepayment:** If you pay off this contract early, you ☐ may ☒ will not be entitled to a refund of part of the Finance Charge.
You can see your contract documents for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties. Filing fees $ **N/A** 'x' means an estimate

**CREDIT INSURANCE**
Credit life insurance and credit disability insurance are not required to obtain credit, and will not be provided unless you sign and agree to pay the additional costs.

| Type | Premium | Term |
|------|---------|------|
| Credit Life | N/A | N/A |
| Credit Disability | N/A | N/A |
| Joint Credit Life | N/A | N/A |

You ☐ do ☒ do not want credit life insurance.
X _____
You ☐ do ☒ do not want credit disability insurance.
X _____
You ☐ do ☒ do not want joint credit life insurance.
XX _____

**PROPERTY INSURANCE**
You understand that you are free to insure your property with whatever licensed company, agent, or broker you may choose; that you may do so at any time after the date of this loan; that you have not canceled any existing insurance on your property if and before this loan; and that this loan cannot be denied you simply because you did not purchase your insurance through us. YOU MAY NOT NEED TO PURCHASE CREDIT PROPERTY INSURANCE, AND YOU MAY HAVE OTHER INSURANCE WHICH WE WILL ACCEPT WHICH COVERS THE PROPERTY SECURING THIS LOAN. YOU SHOULD EXAMINE ANY OTHER INSURANCE WHICH YOU HAVE IN ORDER TO DETERMINE IF THIS COVERAGE IS NECESSARY. If you get the insurance from or through us you will pay $ **691.00** for **12 MONTHS** coverage.

The property insurance premium is calculated as follows:
☐ Fire, Theft and Combined Coverage $ **0.00**
☒ $100.00 Deductible Comprehensive Cov. $ **INCLUDED**
☒ $100.00 Deductible Collision Coverage $ **INCLUDED**

The above insurance does not include liability insurance coverage for bodily injury and property damage unless such insurance is specifically described above.

**ITEMIZATION OF AMOUNT FINANCED**
1. Cash Price (excluding Sales Tax) $ **5045.00**
2. Down Payment Computation
   Description of Trade-In
   (a) Gross Trade-In Allowance $ **0.00**
   (b) Pay-Off (if any) $ **0.00**
   (c) Net Trade-In (a minus b) $ **0.00**
   (d) Cash Down Payment $ **800.00**
   (e) Total Down Payment (c plus d) $ **800.00**
3. Unpaid Balance of Cash Price (1 minus 2(e)) $ **4245.00**
4. Other Charges
   (a) To Insurance Companies $ **691.00**
   (b) To Public Officials $ **8.50**
   (c) _____ $ _____
   (d) _____ $ _____
   (e) _____ $ **0.00**
5. Prepaid Finance Charge $ **NONE**
6. Amount Financed (3 plus 4(a) through 4(e)) $ **4944.50**

**NOTICE TO THE BUYER:** (1) Do not sign this contract before you read it or if it contains any blank spaces. (2) You are entitled to an exact copy of the contract you sign. (3) Under the law you have the right to pay in advance the full amount due and under certain circumstances to obtain a partial refund of the finance charge.

BUYER ACKNOWLEDGES RECEIPT OF A COPY OF THIS RETAIL INSTALLMENT CONTRACT

X _Gordon Gaines_ Buyer
X _Lisa Gaines_ Buyer

YOU ALSO AGREE TO THE TERMS ON THE REVERSE SIDE OF THIS CONTRACT.

**ASSIGNMENT**
Seller assigns this contract on **MAY 18** , 19 **95**
to CREDIT ACCEPTANCE CORPORATION, 25505 West Twelve Mile Road Suite 3000, Southfield, Michigan 48034-8339 In accordance with the Seller's Assignment appearing on the reverse side. The assignment is ☐ Without Recourse ☐ With Recourse ☐ Subject to a Dealer's Agreement.

Signed _____
By _Parkway Motor Co._ (Seller)
Title PHS.

Signed _Perry O'Neil_ Any Seller
Title Pres.

EXHIBIT **B-4**

© 1992 Bankers Systems, Inc. St. Cloud, MN (1-800-397-2341) Form RIC-PI-MO-AKD 6/18/92 CUSTOMIZED

# MISSOURI CIRCUIT COURT
# TWENTY-SECOND JUDICIAL CIRCUIT
### (St. Louis City)

*Credit Acceptance Corporation*

VS.

*Gordon Games and Lisa Games*

No. _960-16008_   Room _____ _1/21_ 19 _96_

*Cause dismissed without prejudice as to Lisa Games*

JUDGMENT ~~IN DEFAULT~~ *by Consent as to Gordon Games*

Comes now the Plaintiff(s) in Person and/or by his Attorney or Agent and the Defendant(s); *Gordon Games appears in person* ~~Although thrice called comes not but makes DEFAULT~~. This cause being now submitted to the Judge upon the proofs, evidence and pleadings adduced and the Judge being fully advised in the premises finds that the Plaintiff(s) is/are justly entitled to recover of the Defendant(s).

WHEREFORE IT IS ORDERED, ADJUDGED AND DECREED that the Plaintiff(s) recover of the Defendant(s) as follows:

$ _5,879.17_ ............ Principal

$ _—_ ............ Interest *to accrue at contract rate of 25.00% per annum*

$ _888 48_ ............ Attorney's fees

$ _6,767.65_ ............ Total plus cost of Court

*execution stayed upon payment of $50.00 /week until paid in full.*

* That to the best of affiant's knowledge and belief, the deft(s) is/are employed in civilian life and that by reason therof the deft(s) is/are not now engaged in the military service of the United States.

SO ORDERED

_____ Judge

X *Gordon Games (Jan 21)*

_____ Attorney

Subscribed and sworn ato before me this _____

of _____

_____
Clerk or Deputy Clerk

EXHIBIT B-5

Credit Acceptance Corp,  
25505 West Twelve Mile Road  
Southfield  Mi 48034  
       Plaintiff,  

vs  
VICKIE L CLINE  
908 BELLO MONDO  
APT #4  
PLATTE CITY MO 64079  
STEVEN L CLINE  
908 BELLO MONDO  
APT #4  
PLATTE CITY MO 64079  
       Defendant  

\* CASE NO: 97AC00689  
\*          DIV 10  
\* COMPLAINT  
\* KEVIN KELLY 34408  
\* 1005 GRAND AVE  
\* SUITE 410  
\* KANSAS CITY, MO 64106  
\* Counsel For Plaintiff  
\* 816-842-6228  
\*  
\*

**FILED**  
**APR 03 1997**  
SANDRA L. DOWD  
Clerk of the Circuit Court Platte County, MO

    NOW COMES the Plaintiff, CREDIT ACCEPTANCE CORPORATION, by and through counsel KEVIN KELLY, and for its Complaint against the Defendant(s), says unto this Honorable Court as follows:

    1. That the Plaintiff is a Michigan Corporation authorized to do business in the State of MO.

    2. Plaintiff is the assignee of a certain retail installment sales contract dated 05/27/95, a copy of which is attached and labeled Exhibit A. Pursuant to said contract Plaintiff is entitled to interest on said retail installment sales contract in the amount of 18.00%.

    3. Defendant(s) entered into said contract to purchase a 1988 MERCURY.

    4. Defendant(s) is/are in default of said contract, and is currently due and owing the Plaintiff $ 3890.58, plus interest from 09/12/96.

    5. Plaintiff has demanded payment from Defendant(s) but Defendant(s) have refused to pay.

    WHEREFORE, your Plaintiff demands judgment against the Defendant(s) in the amount of $ 3890.58 together with court costs, interest and reasonable attorney fees.

EXHIBIT C-1

MBE#34  
Kevin

KEVIN KELLY
1009 GRAND AVE
SUITE 310
KANSAS CITY MO 64106

CREDIT ACCEPTANCE CORPORATION
Plaintiff
vs.
VICKIE L CLINE  STEVEN L CLINE
Defendant
_____/
AFFIDAVIT of PROOF and of NON - MILITARY SERVICE
STATE OF MICHIGAN  COUNTY OF OAKLAND

LETRECE TEAGUE  of full age, being duly sworn according to law,
upon my oath depose and say:

1) I am an accounts receivable clerk of plaintiff, and am duly
authorized to make this affidavit.

2) I am fully familiar with the books and business of the
plaintiff. The account of the defendant(s), above referenced,
set forth in the complaint in this cause is a true and accurate
copy of the books of original entry of the plaintiff.

3) The service for which said charges were made, were performed
for the defendant, at the special instance and request of the
defendant. Said charges are fair and reasonable, and are as per
agreement. The defendant promised to pay the sum therefor.

4) Credit has been duly given for all payments, counterclaims
and set offs and there now remains due and owing from the said
defendant to the plaintiff the sum of $3890.58   together
with interest from 09/12/96 , at 18.00 %.

5) No defendant named herein is a minor or incompetent person.

6) This claim is based on a writ of attachment, capias ad respondendum,
replevin, or claims based directly upon the sale of a chattel wherein
a chattel has been repossessed peaceably or by legal process.

7) After diligent search, I know that no defendant named herein is
in the military service of the United States.

8) That I have read the petition filed with the court in this action and
it is true and correct to the best of my knowledge and belief.

Sworn and subscribed before me
this SEP 12 1996.

*LETRECE TEAGUE*
LETRECE TEAGUE

*Patricia A. Rivers*
NOTARY

PATRICIA A. RIVERS
NOTARY PUBLIC - WAYNE COUNTY, M
MY COMMISSION EXP. 06/15/2000

227603

EXHIBIT C-2

**RETAIL INSTALLMENT CONTRACT AND SECURITY AGREEMENT**

STEVEN L. CLINE
Address: 905 BELLO H
PLATTE CITY MO 64079

No. 227X63
Date: 05-27-95

"You" and "your" means each Buyer and guarantor, jointly and severally. "We", "us" and "our" means the Seller above, its successors and assigns.

**SALE:** You agree to purchase the property described below according to the following terms, including those on the reverse side.
You agree to pay us the total of payments of **FIVE-THOUSAND-FOUR-HUNDRED-SIXTY-ONE-AND-82/100's**
Dollars ($ **5461.82** ) as specified below:
(a) ☒ in **26** installments of $ **210.07** each, beginning **JUNE** **26**th, 19 **95**, and continuing on the same day of each month thereafter, until **JULY** **26**th, 19 **97**, when a final payment of $ **210.07** will be due
(b) ☐ (other)

**Prepayment:** You may prepay this contract in whole or in part at any time. However, any partial prepayment will not reduce or excuse any later payments until the note is paid in full. If and when prepaid in full, or upon maturity by acceleration, the interest portion of the finance charge will be recomputed using the rule of 78's (as provided in Section 365.140 RSMo) to determine the exact amount then due. No refund or credit of less than $1.00 will be made.

☒ If checked, you agree to pay a minimum finance charge of $ **N/A**
☐ If checked, an acquisition fee of $ **N/A** will be deducted from the refund before payment or credit to you. No part of this fee will be refunded.

☒ If checked, you agree to pay a late charge on any payment not more than __ days after it is due, of 5% of the payment, but not less than $1.00 or greater then $ __

**Post-Maturity Interest:** You agree to pay interest at the rate of 5% per year on any amount owing on this contract which is not paid at maturity, including maturity by acceleration.

**SECURITY:** You give us a purchase money security interest in the property described below, including all accessions, attachments, accessories, equipment and all proceeds from the property. WARRANTY INFORMATION IS SUPPLIED TO YOU SEPARATELY.

| MAKE | YEAR | MODEL | BODY TYPE | LICENSE NO/YEAR | IDENTIFICATION NO |
|------|------|-------|-----------|-----------------|-------------------|
| MERCURY | 1988 | TRACER | TUDOR | | 3MAWM1151JRG857B1 |

Other Description:

**CREDIT ACCEPTANCE CORPORATION** | The Silver Triangle Building
25505 West Twelve Mile Road, Suite 3000, Southfield, Michigan 48034-8339, Toll Free (800) 634-1506

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | AMOUNT FINANCED The amount of credit provided to you or on your behalf. | TOTAL OF PAYMENTS The amount you will have paid when you have made all scheduled payments. | TOTAL SALE PRICE The total cost of your purchase on credit, including your down payment of $ 540.00 |
|---|---|---|---|---|
| 18.00 % | $ 966.55 | $ 4195.27 | $ 5461.82 | $ 6001.82 |

| Your Payment Schedule will be: | Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|---|
| | 26 | $ 210.07 | MONTHLY BEGINNING JUNE 26th 1995 |
| | | $ | |
| | | $ | |

**Security:** You are giving a security interest in the goods or property being purchased.
☐ Required Deposit: The annual percentage rate does not take into account any required deposit.
☒ Late Charge: You will be charged a late charge on any payment made more than __ days after it is due, of 5% of the payment, but not less than $1.00 or greater than $ __

**Prepayment:** If you pay off this contract early, you ☐ may ☒ will not be entitled to a refund of part of the Finance Charge.
You can see your contract documents for any additional information about nonpayment, default, any __ Filing fees $ N/A required repayment before the scheduled date, and prepayment refunds and penalties. "e" means an estimate.

**CREDIT INSURANCE**
Credit life insurance and credit disability insurance are not required to obtain credit, and will not be provided unless you sign and agree to pay the additional costs.

| Type | Premium | Term |
|------|---------|------|
| Credit Life | N/A | |
| Credit Disability | 138.18 | 26 |
| Joint Credit Life | 65.09 | 26 |

You ☐ do ☒ do not want credit life insurance

_Vickie S. Cline_ want credit disability insurance.
You ☒ do ☐ do not want joint credit disability insurance.
_Vickie S. Cline_

**PROPERTY INSURANCE**
You understand that you are free to insure your property with whatever licensed company, agent, or broker you may choose; that you may do so at any time after the date of this loan; that you have not canceled any existing insurance on your property if you owned it before this loan; and that this loan cannot be denied you simply because you did not purchase your insurance through us. YOU MAY NOT NEED TO PURCHASE CREDIT PROPERTY INSURANCE, AND YOU MAY HAVE OTHER INSURANCE WHICH WE WILL ACCEPT WHICH COVERS THE PROPERTY SECURING THIS LOAN. YOU SHOULD EXAMINE ANY OTHER INSURANCE WHICH YOU HAVE IN ORDER TO DETERMINE IF THIS COVERAGE IS NECESSARY. If you get the insurance from or through us you will pay $ __ for __ of coverage.

The property insurance premium is calculated as follows:
Fire-Theft ___ Combined Add'l Coverage $ N/A
___ Deductible Comprehensive Cov. $ N/A
___ FIRST LEVELS Collision Coverage $ 642
The above insurance does not include liability insurance coverage for bodily injury and property damage unless such insurance is specifically described above.

**ITEMIZATION OF AMOUNT FINANCED**
1. Cash Price (excluding Sales Tax) $ 4190.00
2. Down Payment Computation
   Description of Trade-In __
   (a) Gross Trade-In Allowance $ N/A
   (b) Pay-Off (if any) $ N/A
   (c) Net Trade-In (a minus b) $ N/A
   (d) Cash Down Payment $ 540.00
   (e) Total Down Payment (c plus d) $ 540.00
3. Unpaid Balance of Cash Price (1 minus 2(e)) $ 3650.00
4. Other Charges
   (a) To Insurance Companies $ 845.27
   (b) To Public Officials $ N/A
   (c) __ $ N/A
   (d) VSI $ N/A
   (e) __ $ N/A
5. Prepaid Finance Charges $ NONE
6. Amount Financed (3 plus 4(a) through 4(e)) $ 4195.27

**NOTICE TO THE BUYER:** (1) Do not sign this contract before you read it or if it contains any blank spaces. (2) You are entitled to an exact copy of the contract you sign. (3) Under the law you have the right to pay off in advance the full amount due and under certain circumstances to obtain a partial refund of the finance charge.

**BUYER ACKNOWLEDGES RECEIPT OF A COPY OF THIS RETAIL INSTALLMENT CONTRACT**

1. Signed _Vickie S. Cline_ Buyer
2. Signed _Steven Cline_ Buyer

YOU ALSO AGREE TO THE TERMS ON THE REVERSE SIDE OF THIS CONTRACT.

Signed _Clay Mooney_ For Seller

**ASSIGNMENT**
Seller assigns this contract on _May 27_ , 19 95
CREDIT ACCEPTANCE CORPORATION, 25505 West Twelve Mile Road, Suite 3000, Southfield, Michigan 48034-8339 in accordance with the Seller's Assignment appearing on the reverse side. The assignment is
☐ Without Recourse 2. ☐ With Recourse 3. ☐ Subject to a Limited Agreement.

AUTO MART
X _Mooney_ (Seller)

EXHIBIT C-3

Case 4:96-cv-01210-ODS Document 132 Filed 04/15/98 Page 39 of 39