MARVIN FIELDER, et al., )
)
                Plaintiffs, )
)
v. ) Case No. 96-1210-CV-W-3
)
CREDIT ACCEPTANCE )
CORPORATION, et al., )
)
                Defendants. )

FILED MAY 08 1998
R. F. CONNOR, CLK.
U.S. DISTRICT COURT
WEST DISTRICT
OF MISSOURI

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Pending is Defendant Credit Acceptance Corporation's ("CAC") Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. #89) and CAC's Motion for Partial Summary Judgment (Doc. # 88). Upon careful consideration by the Court, for the reasons set forth below, Defendant CAC's motions are denied.

### I. BACKGROUND

The factual background of this case has been previously set forth in detail in Fielder v. Credit Acceptance Corp., 175 F.R.D. 313 (1997). Therefore, only the facts relevant to this Order shall be discussed.

This Court granted class certification status to the Plaintiffs on October 9, 1997. Plaintiffs filed their Third Amended Complaint on March 10, 1998, containing fourteen counts against Defendant CAC and Defendant Northeast Auto Credit, Inc. Counts X and XI contain a prayer "for an order setting aside or in the alternative reforming any judgments to discharge plaintiffs from any liability based on excessive post-maturity interest charges" in the prayer. Counts XIII and XIV pray for an injunction barring CAC from proceeding with suits or taking judgments and "for an order setting aside or in the alternative reforming any judgments to discharge plaintiffs from liability." Plaintiffs claim CAC has continued to pursue default judgments in the Missouri state courts for

deficiencies on retail installment contracts after the filing of this case. Plaintiffs claim class members are still being injured by those default judgments that have inaccurate calculations for interest and fees and because CAC is still pursuing action in state court against other class members. CAC claims it has obtained thousands of judgments against class members in Missouri state courts for amounts due and owing on retail installment contracts and has several pending matters. CAC is now voluntarily taking action in Missouri state courts to correct some of the interest calculations on the default judgments. CAC claims this Court does not have subject matter jurisdiction over any of Plaintiffs' claims for relief because they involve final Missouri state court judgments and are therefore barred by the Rooker-Feldman doctrine, res judicata and collateral estoppel. Plaintiffs claim the Rooker-Feldman doctrine, res judicata and collateral estoppel do not prevent this Court from adjudicating all Plaintiffs' claims.

## II. DISCUSSION

### A. Motion to Dismiss

CAC has filed a Motion to Dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure. A motion to dismiss should be granted when it appears that "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). In ruling on a motion to dismiss, the Court is required to view the facts alleged in the complaint in the light most favorable to the Plaintiffs. Rule 12(h)(3) provides that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." CAC contends that the Rooker-Feldman doctrine destroys this Court's jurisdiction because Plaintiffs' Third Amended Complaint requests relief that is essentially just a collateral attack on the state court judgments.

"The Rooker-Feldman doctrine states that district courts do not have subject matter jurisdiction over challenges to state court decisions in judicial proceedings." Charchenko v. City of Stillwater, 47 F.3d 981, 983 (8th Cir. 1995) (citing Rooker v. Fidelity Trust Co., 263 U.S. 413, 416, 44 S. Ct. 149, 150, 68 L. Ed. 362 (1923); District

2

of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476, 103 S. Ct. 1303, 1311, 75 L. Ed. 2d 206 (1983)). "The only court with jurisdiction to review decisions of state courts is the United States Supreme Court." Neal v. Wilson, 112 F.3d 351, 356 (8th Cir. 1997) (citing Charchenko v. City of Stillwater, 47 F.3d 981, 983 (8th Cir. 1995).

> A federal district court has jurisdiction over general constitutional challenges if these claims are not inextricably intertwined with the claims asserted in state court. A claim is inextricably intertwined if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it. In other words, Rooker-Feldman precludes a federal action if the relief requested in the federal action would effectively reverse the state court decision or void its ruling.

Id. Plaintiffs contend that the Rooker-Feldman doctrine does not preclude subject matter jurisdiction in this Court. This Court agrees with Plaintiffs and finds that it has subject-matter jurisdiction over Plaintiffs' claims. Plaintiffs' requests for relief do not center on the fact that the Missouri state court default judgments are inherently wrong but rather focus on the correctness of the calculation of the award of damages. Plaintiffs claim "[t]housands of judgments were entered against absent class members" where the interest and fees were incorrectly calculated by charging excessive post-maturity interest.[1] Pl.'s Suggestions in Opp'n, p. 3. The incorrect calculation of the

---

[1] Plaintiffs contend that they do not have records or information regarding how many class II members have judgments against them or have pending lawsuits against them. Plaintiffs also contend that many of the lawsuits never resulted in judgments. Additionally, Plaintiffs claim that class I members do not have judgments against them and therefore are not subject to the Rooker-Feldman doctrine. Defendant CAC does not offer to quantify or identify the members of each class who have judgments against them except to say that "all" of Class I and II are in pending litigation or have judgments against them. The Court is reluctant to dismiss unidentified class members. It would seem counterproductive for this Court to identify which class members have judgments against them in order to dismiss Plaintiffs' class claims on their behalf. The Court would otherwise have jurisdiction of all the other class members whom CAC has not taken judgment against and therefore dismissing those Plaintiffs would seemingly encourage CAC to seek judgments against all remaining class members in hopes the Court would not maintain subject matter jurisdiction and dismiss Plaintiffs' class claims

3

damage awards is the basis of Plaintiffs claims of misrepresentation in violation of several Missouri statutes. Plaintiffs' claims are independent causes of action based on the Defendants' conduct which ultimately culminated in default judgments. Accordingly, the relief Plaintiffs request would not reverse the state courts' decisions but instead would compensate Plaintiffs for Defendants' misrepresentations leading to the entry of default judgments against them for incorrect damage awards.[2]

Additionally, Plaintiffs contend that even if the Missouri state court judgments raise Rooker-Feldman jurisdictional issues, this Court should still maintain subject matter jurisdiction for several reasons. First, some courts have established an exception that a "federal court may entertain a collateral attack on a state court judgment which is alleged to have been procured through fraud, deception, accident, or mistake." In re Sun Valley Foods Co. v. Detroit Marine Terminals, Inc., 801 F.2d 186, 189 (6th Cir. 1986) (citations omitted). See also Resolute Ins. Co. v. State of North Carolina, 397 F.2d 586 (4th Cir. 1968); Raddatz v. Beaubien, 880 F. Supp. 500 (E.D. Mich. 1995); Automobile Club of Michigan v. Stacey, 750 F. Supp. 259 (E.D. Mich. 1990); Radiology Inst. Inc. v. Rodriguez, 818 F. Supp. 477 (D. P.R. 1993) The Eighth Circuit has not addressed this exception to the Rooker-Feldman doctrine but this Court finds that it is especially applicable in this case and will follow the cases from other

---

on their behalf as well. The class certification status of this case would be effectively destroyed if all class members with judgments were dismissed for lack of subject matter jurisdiction.

[2]Plaintiffs also filed a Motion for Preliminary Injunction requesting this Court to prevent CAC from continuing to file actions in state courts to "correct" their judgments in default that had excessive post-maturity interest. This Court denied that motion in a separate Order filed this same date. Plaintiffs' request for relief in their Third Amended Complaint "for an order setting aside or in the alternative reforming any judgments to discharge plaintiffs from liability" is read by this Court as requesting the same relief as the preliminary injunction motion because CAC is currently reforming those judgments it determined have excessive post-maturity interest charges and this Court is allowing CAC to proceed in those actions.

4

jurisdictions.[3] MacKay v. Pfeil states that "the investigation of a new case arising upon new facts, although having relation to the validity of an actual judgment or decree, or the party's right to claim any benefit by reason thereof" would be within federal court jurisdiction. 827 F.2d 540, 543-44 (9th Cir. 1987) (citations omitted). In this case, the excessive post-maturity interest charges on the contracts could easily be attributed to accident or mistake and, conceivably, fraud or deception.[4] Accordingly this Court will retain subject matter jurisdiction.

Secondly, the default judgments were entered mostly against absent class members and the issues of excessive post-maturity interest charges and official fees were not litigated before the state courts. See Hernandez v. Westoak Realty & Inv. Inc., 771 S.W.2d 876, 884 (holding that a default judgment only precludes the re-litigation of those issues necessarily resolved by that judgment for issue preclusion). This Court does not have access to all the default judgments but the Plaintiffs contend that the official fees or excessive post-maturity interest were not issues before the courts; much less were they litigated issues.[5] Therefore, reading the Third Amended Complaint in the light most favorable to the Plaintiffs, CAC's Motion to Dismiss is denied.

---

[3]The Eighth Circuit has however mentioned in dicta the possibility that fraud in state court litigation may be enough to invoke federal court jurisdiction when the Plaintiff is seeking the nullification of a state court injunction although it has never been ruled applicable to Rooker-Feldman. Euge v. Smith, 418 F.2d 1296 (8th Cir. 1969).

[4]In fact, CAC admits that some of the contracts have charged excessive post-maturity interest that CAC is now attempting to remedy. The Court assumes those remedies are being used to correct those "mistaken" default judgment awards. Plaintiffs contend however that the Defendants fraudulently or intentionally have charged the Plaintiffs excessive post-maturity interest and official fees and would necessarily fall under the fraud or deception exception.

[5]But cf. Snider v. City of Excelsior Springs, 984 F. Supp. 1251, 1254 (W.D. Mo 1997) (where the plaintiffs' timeshare interests were considered in the ultimate decision by the state court).

Third, this Court has already determined that the claims for default judgments are not compulsory counterclaims in a class certification. See Fielder v. Credit Acceptance Corp., 175 F.R.D. 313 (W.D. Mo. 1997). Plaintiffs also contend that any claims against CAC in the default judgments were not compulsory counterclaims because they were entered in associate circuit court. Rahman v. Matador Villa Assoc., 821 S.W.2d 102 (Mo. banc 1991) holds that the compulsory counterclaim rule does not apply in associate circuit court. Thus, the issues of excessive post-maturity interest and official fees were not litigated when the default judgments were entered; nor were they required to be litigated in associate circuit court.[6]

### B. Motion for Partial Summary Judgment

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See generally Williams v. City of St. Louis, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Get Away Club, Inc. v. Coleman, 969 F.2d 664 (8th Cir. 1992). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588-89 (1986); Tyler v. Harper, 744 F.2d 653, 655 (8th Cir. 1984), cert. denied, 470 U.S. 1057 (1985). However, a party opposing a motion for

---

[6]The Court also believes that the second and third points above raise the additional argument that Plaintiffs' claims are not inextricably intertwined with the default judgments. CAC does not contend that the state courts even considered the issues of excessive post-maturity interest or official fees before granting default judgments.

6

summary judgment "may not rest upon the mere allegations or denials of the . . . pleadings, but . . . by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

The Defendant CAC moves for partial summary judgment based on the doctrines of res judicata and collateral estoppel. CAC states that it has obtained 4,360 money judgments in the Missouri state courts for deficiencies on retail installment contracts including 2,690 judgments after repossession which include members of the Plaintiffs' classes. Res judicata and collateral estoppel prevent a party from re-litigating the same claims, defenses or issues that should have been raised or were in fact raised in prior litigation between the same parties. Clements v. Pittman, 765 S.W.2d 589, 591 (Mo. 1989) (en banc); Peoples-Home Life Ins. Co., v. Haake, 604 S.W.2d 1, 7 (Mo. Ct. App. 1980). As already stated above, the issues or claims of excessive post-maturity interest and official fees were not previously litigated during the default judgments.[7] CAC attached a copy to their Suggestions in Support of Motion for Partial Summary Judgment of a Judgment in Default entered against Jerome and Lucy Henderson. Ex. C. The Judgment in Default states that the defendants were in default after they were called three times and did not appear. Id. The Judgment only provides an amount stated for Principal, Interest (listed at 18% per annum), Attorney's Fees and the Total plus court costs. Id. Nowhere in the Judgment does it indicate the court considered excessive post-maturity interest or official fees overcharges.

Also, the issues were not compulsory counterclaims that were required to be raised at the prior proceedings. See Fielder v. Credit Acceptance Corp., 175 F.R.D.

---

[7]Additionally, the Eighth Circuit has indicated that a default judgment can operate as res judicata so long as the matter is devoid of fraud or collusion. See Kapp v. Naturelle, Inc., 611 F.2d 703, 707 (8th Cir. 1979). The basis of Plaintiffs' claims is misrepresentation. The Court doubts that the default judgments would have res judicata effect even if the doctrine of res judicata applied.

7

313 (W.D. Mo. 1997) (holding compulsory counterclaim rule not applicable in class actions); Rahman v. Matador Villa Assoc., 821 S.W.2d 102 (Mo. banc 1991) (holding compulsory counterclaim rule not applicable in associate circuit court). Plaintiffs contend that most of the judgments involve CAC suing defendants who never appeared in court. CAC has produced no documents which would prove res judicata and collateral estoppel and the Court is unwilling to grant summary judgment in favor of an estimated number of purported class members and preclude them from this lawsuit. The Court, by its companion Order today, is allowing CAC to continue to correct its judgments and continue its business. If the Court accepts CAC's position with respect to collateral estoppel and res judicata, it will empower CAC to continue to erode federal court jurisdiction of these claims. The Court is not so inclined. Accordingly, CAC's Motion for Partial Summary Judgment is denied.[8]

### III. CONCLUSION

Pending is Defendant Credit Acceptance Corporation's ("CAC") Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. #89) and CAC's Motion for Partial Summary Judgment (Doc. # 88). Defendant CAC's Motion to Dismiss for Lack of Subject Matter Jurisdiction is denied. Defendant CAC's Motion for Partial Summary Judgment is denied.

IT IS SO ORDERED.

Date: 5/8/98

ORTRIE D. SMITH, JUDGE
UNITED STATES DISTRICT COURT

---

[8]Plaintiffs also argue that this Court has jurisdiction because Plaintiffs' claims are actions in equity. Because the Court finds that it has jurisdiction, this additional argument supporting jurisdiction will not be addressed. Defendant CAC also requested this Court to abstain or stay this matter by reason of pending state court litigation. The requests for abstention or to stay were denied by this Court in an Order dated March 10, 1998, and accordingly, will not be addressed in this Order.