IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

MARVIN FIELDER, et al.,                    )
                                           )
                    Plaintiffs,            )
                                           )
v.                                         )      Case No. 96-1210-CV-W-3
                                           )
CREDIT ACCEPTANCE                          )
CORPORATION, et al.,                       )
                                           )
                    Defendants.            )

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT AND DENYING DEFENDANT CAC'S CROSS-MOTION FOR SUMMARY JUDGMENT

Pending is Plaintiffs' Motion for Partial Summary Judgment for the "Post-Maturity Interest" Class for Liability and Injunctive and Declaratory Relief against Credit Acceptance Corporation ("CAC") (Doc. # 81), Plaintiffs' Motion for Partial Summary Judgment for the "Official Fees" Class for Liability and Injunctive and Declaratory Relief against CAC (Doc. # 82), Plaintiffs' Motion for Partial Summary Judgment for the "Repossession" Subclass for Liability and Injunctive and Declaratory Relief against CAC (Doc. # 83), and CAC's Cross-Motion for Summary Judgment (Doc. # 128). Plaintiffs' Motions have been considered together and for the reasons set forth below are DENIED IN PART AND GRANTED IN PART. CAC's Cross-Motion is DENIED except as to the post-sale notices.

## I. BACKGROUND

The factual background of this case has been previously set forth in detail in Fielder v. Credit Acceptance Corp., 175 F.R.D. 313 (1997) (order granting class certification status) and in Fielder v. Credit Acceptance Corp.,1998 WL 394995 (W.D. Mo. 1998) (order denying Defendants' Motion to Dismiss and Motion for Partial

Summary Judgment).[1] Therefore, only the facts relevant to this Order shall be discussed.

Plaintiffs Marvin Fielder and Deborah Williams initially filed this matter in Missouri state court on October 15, 1996. Defendants CAC and Northeast Auto Credit, Inc. ("NAC") removed it to this Court on November 25, 1996, based upon Plaintiffs' claims asserted under the Truth in Lending Act, 15 U.S.C. §§ 1601, *et seq.* On October 9, 1997, this Court granted Plaintiffs' Motion for Class Certification. The case is presently pending on Plaintiffs' Third Amended Complaint filed on March 10, 1998, containing fourteen counts against Defendant CAC and Defendant NAC.

Plaintiffs have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56 for liability and injunctive and declaratory relief against Defendant CAC. Plaintiffs' Motion requests relief under Counts VI, VII, VIII and IX for the "official fees" class, under Counts X, XI, and XIII for the "post-maturity interest" class, and under Counts XII and XIII for the "repossession" subclass. CAC filed its suggestions in opposition to Plaintiffs' motions and it filed a Cross-Motion for Summary Judgment.

## II. STATEMENT OF UNCONTROVERTED FACTS

The following statement of uncontroverted facts either has been agreed to by the parties in their briefs or has been determined by the Court as uncontroverted after review of all the pleadings and documents in the matter.

1.     Defendant CAC is engaged in the business of financing, administering, servicing and collecting retail installments used in the purchase and sale of used automobiles.

2.     Plaintiffs Marvin Fielder and Deborah Williams entered into an installment contract for the purchase of a vehicle from Defendant Northeast Auto Credit, Inc., which

---

[1]Northeast Auto Credit has not participated in this case since the early pleadings. On January 15,1998, this Court entered an Order granting Plaintiff's Motion for Interlocutory Default Judgment.

2

contract contained a charge of $43.50 denominated as "Filing fees" and as "Other Charges" "To Public Officials".

3.      Plaintiffs Jerry Dau and Kimberly Williams entered into an installment contract for the purchase of a vehicle from Preferred Auto Sales, which contract contained a charge of $25.00 denominated as "Paid to Public Officials - Filing Fees".

4.      Plaintiffs Jerome Henderson and Lucy Henderson entered into an installment contract for the purchase of a vehicle from Charles Brock Oldsmobile.

5.      The Fielder/Williams and the Dau/Williams installment contracts were assigned by the selling dealers to CAC.

6.      The above Plaintiffs' motor vehicle installment sale contracts all contain the following clause:

> ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS AND SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

7.      The Fielder/Williams and Henderson retail installment contracts contain the following Prepayment clause:

> You may prepay this contract in whole or in part at any time. However, any partial prepayment will not reduce or excuse any later payments until this note is paid in full. If and when prepaid in full, or upon maturity by acceleration, the interest portion of the finance charge will be recomputed using the rule of 78's (as provided in Section 365.140 RSMo) to determine the exact amount then due. No refund or credit of less than $1.00 will be made.

8.      The William/Dau retail installment contract contains the following Refund Calculation clause:

> If you prepay in full or if you default and we demand payment of the unpaid balance, you may be entitled to a refund credit of part of the recomputed finance charge. If the term of this Contract is 61 months or less, we will determine the credit using the sum of the balances method provided for in Mo. Rev. Stat. § 365.140. We will retain a $15.00 acquisition fee when making this calculation. If the Contract is greater

3

than 61 months, we will use an actuarial method to determine the credit. We will apply the credit to the amount you owe us or refund it to you. We will not refund amounts less than $1.00.

A refund of any prepaid, unearned insurance premiums may be obtained from us or from the insurance company named in you policy or certificate of insurance.

9.     CAC supplied the above-mentioned installment sale contract forms to the selling dealers.

10.    CAC took possession of a vehicle purchased by Plaintiffs Fielder and Williams, sold it and sued Plaintiffs Fielder and Williams on the installment contract for a deficiency.

11.    CAC charged and obtained payments of finance charges, interest, and delinquency and collection charges on certain contracts.

12.    The Fielder/Williams installment contract contained a 9% post-maturity interest clause and CAC filed suit against Plaintiffs Fielder/Williams requesting post-maturity interest at the rate of 22%.

13.    CAC filed suit against Plaintiffs Fielder and Williams and the Petition requested $4,177.42, including $88.72 in interest which was added to the balance of $4,088.70.

14.    The Henderson installment contract contained a blank post-maturity interest clause.

15.    In December of 1996, CAC filed an action for judgment in the St. Louis County Associate Circuit Court against Jerome and Lucy Henderson requesting a judgment on the retail installment contract with interest in the amount of 18%.

16.    CAC filed suit against Plaintiffs Jerome and Lucy Henderson and the Petition requested $4,354.71 including $394.50 in interest which was added to the balance of $3,960.21.

17.    CAC obtained a default judgment against Plaintiffs Jerome and Lucy Henderson which included a provision for interest at 18%.

4

18.     CAC filed affidavits in connection with filing certain lawsuits in Missouri which contained erroneous post-maturity interest rates.

19.     CAC sent certain pre-sale notices to Plaintiffs Fielder, Williams and the Hendersons.

20.     Neither the Fielder/Williams nor the Henderson installment contract contains a provision for compound interest.

21.     CAC apparently always charged compound interest in the same fashion as charged on the Fielder/Williams and Henderson accounts when it repossessed a vehicle and filed a collection action.

22.     The balance stated in the Fielder/Williams and the Henderson pre-sale notice included unrebated charges.

23.     In many cases, including the Fielder/Williams and Henderson cases, CAC did not sell the debtors' repossessed vehicles until some time after the sale date set by the pre-sale notice.

24.     With respect to the following contracts, for example, which contained a 9% figure in the post-maturity interest clause CAC sought and obtained judgments for post-maturity interest on the following dates at the following rates: (1) March 17, 1997, account #167196 at 22% and (2) March 11, 1997, account #242669 at 22%.

25.     With respect to the following contracts, for example, which contained no figure in the post-maturity interest clause CAC sought and obtained judgments for post-maturity interest on the following dates at the following rates: (1) January 27, 1997, account #150094 at 18% (2) January 7, 1997, account #189660 at 18%; and (3) March 12, 1997, account #233967 at 23%.

26.     CAC determines whether to accept the assignment of a consumer's retail installment contract by reviewing consumer's credit application and the other "Documents needed for deal approval." After CAC agrees to accept assignment of a consumer's contract, the contract is filled in, the consumer signs the contract, the dealer executes the assignment portion and forwards the executed contract to CAC.

5

27.     CAC requires a Missouri dealer to submit a copy of the consumer's Title Application, along with certain other "[d]ocuments needed for deal advance" before it will advance a dealer any funds on a given transaction.  Ordinarily, these documents are submitted to CAC several days after CAC has agreed to accept the assignment. The dealer may or may not forward a copy of a consumer's Title Application along with the assigned retail installment contract, and may delay weeks or even months before doing so.  In some cases a dealer never forwards a given Title Application to CAC, and CAC simply collects installment payments from the consumer and pays the dealer a portion of the total amount financed after the corresponding "pool" of installment contracts pays out.  However, when CAC has agreed to accept an assignment it does so whether or not the dealer ever forwards a copy of the Title Application and sufficient documentation to receive the advance.

28.     CAC accepted the assignment of retail installment contracts of Missouri account holders which pertained to motor vehicles having a cash sale price of more than $7,500.

29.     In the Pre-Sale Notice, CAC advises account holders to call a toll free telephone number to obtain a precise redemption amount.  When an account holder calls the toll free telephone number to obtain the precise redemption balance, and states a date on which he or she intends to redeem, the balance may be calculated and the finance charge rebate is calculated as of that date.

30.     Account holders who call the toll free telephone number reach CAC collection personnel who provide information regarding opportunities to reinstate the account holders' retail installment contracts.  Reinstatement typically requires payment of past due balances along with repossession expenses.  It is typically in CAC's interest to attempt to negotiate the return of a repossession vehicle to the account holder prior to repossession sale.

31.     Jerome Henderson, one of the class representatives, called the toll free telephone number upon receipt of his Pre-Sale Notice and discussed with a CAC representative the balance to be paid to obtain return of his vehicle.

6

32.     Marvin Fielder and Deborah Williams have made no payments to CAC as a consequence of legal action to enforce a deficiency judgment against them.

33.     Jerome Henderson and Lucy Henderson have made no payments to CAC as a consequence of legal action by CAC to enforce a deficiency judgment against them.

34.     On September 17, 1996, the Missouri Division of Finance sent a letter authorizing the Missouri Attorney General to implement the powers of Chapter 407 of the Revised Statues of Missouri against CAC.

35.     CAC files credit reports on all debtors' accounts.

## III. DISCUSSION

### A. STANDARD OF REVIEW

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See generally Williams v. City of St. Louis, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Get Away Club, Inc. v. Coleman, 969 F.2d 664 (8th Cir. 1992). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588-89 (1986); Tyler v. Harper, 744 F.2d 653, 655 (8th Cir. 1984), cert. denied, 470 U.S. 1057 (1985). However, a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the . . . pleadings, but . . . by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

7

## B. OFFICIAL FEES CLASS

Plaintiffs move for summary judgment under Counts VI, VII, VIII and IX for the Official Fees Class and state several different causes of action. Plaintiffs indicate they have the right to recover for all monies they paid for finance charges, delinquency and collection charges as well as the right to injunctive relief, declaratory relief, punitive damages and attorney's fees. Each cause of action upon which Plaintiffs rely shall be addressed in turn.

### 1. Chapter 365

Plaintiffs argue that the retail installment contracts involved in this case are governed by the Motor Vehicle Time Sales Act, Chapter 365 of the Revised Statutes of Missouri. Section 365.070.6(8) requires that the contract contain the amount of official fees paid and section 365.020(6) defines official fees as "the fees prescribed by law for filing, recording or otherwise perfecting and releasing or satisfying any title or lien retained or taken by a seller in connection with a retail installment transaction." Plaintiffs argue that the Defendants charged them for excessive official fees and therefore they are barred from recovery of any time price differential, delinquency or collection charge on the contracts. Mo. Rev. Stat. § 365.150. The Defendants make several arguments.

First, Defendants argue that Chapter 365 does not create a private right of action but only creates an affirmative defense in deficiency actions because the statute states that any person violating sections of Chapter 365 "shall be barred from recovery of any time price differential, delinquency or collection charge on the contract." Mo. Rev. Stat. § 365.150(2). Section 365.150 also indicates that violation of the chapter is a class B misdemeanor and correction of any violation within thirty days after the date of sale will release the seller or holder from criminal penalty or civil forfeitures. Mo. Rev. Stat. § 365.150(1) & (3). Defendants argue that the remedies provided under section 365.150 are authorized by the state authorities and are meant as punishment or are penal in nature and, therefore, they are not private remedies. Plaintiffs argue the

8

statute is remedial because the statute provides benefits to the consumer and therefore is to be liberally construed.

The Missouri Supreme Court has held that "[w]hen the legislature has established other means of enforcement, we will not recognize a private civil action unless such appears by clear implication." Johnson v. Kraft General Foods, Inc., 885 S.W.2d 334, 336 (Mo. 1994) (en banc) (citations omitted). Plaintiffs argue that the statute does give another means of enforcement through Section 365.145 which says "[s]ections 408.551 to 408.562, RSMo, shall apply to any retail installment transaction made pursuant to sections 365.010 to 365.160." Mo. Rev. Stat. § 365.145. Section 408.562 states:

> In addition to any other civil remedies or penalties provided for by law, any person who suffers any loss of money or property as a result of any act, method or practice in violation of the provisions of sections 408.100 to 408.561 may bring an action in the circuit court of the county in which any of the defendants reside, in which the plaintiff resides, or in which the transaction complained of occurred to recover actual damages. The court, may in its discretion, award punitive damages and may award to the prevailing party in such action attorney's fees, based on the amount of time reasonably expended, and may provide such equitable relief as it deems necessary and proper.

Therefore, section 365.150 allows the state authorities to impose penalties but also allows a private right of action through its own subsection 2 as well as section 408.562 as incorporated by section 365.145. Additionally, if a private right of action is allowed, the statute is remedial and should be liberally construed so as to meet the cases which are clearly within the spirit or reason of the law. See Addison v. Jester, 758 S.W.2d 454, 457 (Mo. Ct. App. 1988) (finding that section 408.030 is remedial because it imposes a penalty which accrues to the party aggrieved, to be recovered by private action). In this case, the Court finds that the statute is both penal, because the state can punish a violator, and remedial, because a private right of action under Chapter 365 is available through Chapter 408 and Section 365.150(2). See Tabor v. Ford, 240 S.W.2d 737 (Mo. Ct. App. 1951) (mentioning statutes that have been found to be both remedial and penal).

9

Secondly, Defendant argues that Chapter 365 is limited to new or used vehicles having a cash sale price of $7,500 or less. The definition of "motor vehicle" in Section 365.020(5) says "any new or used automobile, mobile home, motorcycle, truck, trailer, semitrailer, truck tractor, or bus having a cash sale price of seven thousand five hundred dollars or less primarily designed or used to transport persons or property on a public highway, road or street." "Plaintiffs acknowledge that somewhere on the order of 5% of the installment contracts involved cash sale prices of over $7,500." Plaintiffs' Reply Suggestions at 4. However, Plaintiffs also argue that CAC waived the $7,500 exemption by incorporating Chapter 365 into the contracts.

CAC's retail installment contracts do refer to Chapter 365 in either the Prepayment clauses or the Refund Calculation clauses.[2] In Lankheit v. Estate of Scherer the Missouri Court of Appeals applied Chapter 365 to a retail installment contract for the purchase of a new vehicle having a sale price of nineteen thousand five hundred twenty-two dollars and eighty cents ($19,522.80). 811 S.W.2d 853, 854 (Mo. Ct. App. 1991). The court in Lankheit found that Chapter 365 applied to the retail installment contract because "[t]he contract here is of that type and, indeed, makes specific reference to § 365.140 which is a part of the Missouri Motor Vehicle Time Sales Law." Id. at 856. The parties in Lankheit, unlike the present case, were not arguing that Chapter 365 was inapplicable because of the purchase sale price.[3] However this Court does not find the distinction makes a difference because, in this case, the retail installment contracts also included specific reference to section 365.140. Accordingly, the $7,500 exemption does not exclude CAC's retail installment contracts from application of Chapter 365.

_____

[2]See Statement of Uncontroverted Facts.

[3]Perhaps the court in Lankheit did not address the issue because, like this Court, it assumed that the language in the definition really only applies the $7,500 limitation to the word "bus." Consequently, a bus would have to have a cash sale price of less than $7,500 but other vehicles would not.

10

Third, the Defendant argues that the claims of some of the class members are barred by the statute of limitations of three years in Mo. Rev. Stat. section 516.130(2) for any action upon a statute for a penalty or forfeiture. Plaintiffs argue that because CAC is a corporation the applicable statute of limitation is six years per Mo. Rev. Stat. section 516.420. The case of Nolan v. Kolar, 629 S.W.2d 661, 663 (Mo. Ct. App. 1982) holds that the six-year limitation period in section 516.420 applies to a suit for a penalty or forfeiture against a corporation. Plaintiffs filed this case on October 15, 1996, well within the six-year statute of limitation period.

Now that the Court has determined that Chapter 365 applies to the retail installment contracts in this case, the Court must now decide if Plaintiffs are entitled to summary judgment and if CAC is entitled to its cross-motion for summary judgment. Plaintiffs argue that CAC has charged excessive official fees on some of the retail installment contracts. Section 365.070.6(8) states that all retail installment contracts must contain "the amount of official fees." Plaintiffs contend that the official fees, which are defined in the facts above, in a retail installment contract are either $8.50 or no more than $10.00. Plaintiffs attach an affidavit from Gary Hopper, a Senior Consumer Credit Examiner of the Missouri Division of Finance, which states that companies licensed as sales finance companies under the Motor Vehicle Time Sales Act are required to maintain an account ledger for each individual installment contract which sets forth the amount of official fees charged under the contract. Plaintiffs' Ex. X. Mr. Hopper also states that the Division of Finance has taken the position that the amount of official fees referred to in section 365.070.6(8) is $8.50 as charged by the Department of Revenue for perfecting a lien on a motor vehicle plus an additional fee of $1.50 if the application to perfect the lien was delivered to a fee agent. Id.

CAC contends that purchasers of an automobile may be required to pay a number of fees or charges before obtaining title to their vehicle such as license fees, reservation fees, transfer fees, renewal penalties, title penalties, expeditious title fees, state taxes and local taxes. Additionally, CAC argues that there may be other fees or charges payable to Missouri officials as part of the sale of a used automobile that are

11

not reflected in the Missouri Title Application. Defendants Ex. 8. CAC acknowledges that it is aware of the amounts entered into the "paid to public officials" line of the retail installment contracts which are assigned to it but are unaware that any of the fees were illegitimate or excess fees pocketed by the dealer.

The Court is disturbed by the inability of either party to prove where the fees on the retail installment contracts over and above the $8.50 charge were sent. CAC claims the fees are legitimate and Plaintiffs argue that the fees must be illegitimate if the charges were over $8.50. CAC claims it did not pay anything to register its lien and the responsibility to send the application and fee to the Director of Revenue was allocated to its dealers. CAC relies on the affidavit of Mark D. Horvath, the National New Business Manager of Credit Acceptance Corporation, to prove that it did not have the responsibility for submitting the Title Applications to the Missouri Department of Revenue and that CAC accepts assignment of a retail installment contract whether or not it receives a copy of the consumer's Title Application. Defendant's Ex. 1.

Unfortunately, Plaintiffs have only submitted a sample of retail installment contracts with official fee charges exceeding $8.50 but have not been able to submit any documentation proving one way or the other whether the extra charges were in fact illegitimate. CAC has created a genuine issue of material fact on this issue by basically disclaiming any knowledge of wrongdoing by its dealers and causing the Court to search through documents it does not have to find the explanation for the extra charges.[4] Therefore, in viewing the facts in the light most favorable to the opposing party, Plaintiffs are denied summary judgment on this issue. Accordingly, since CAC cannot prove the extra charges over and above $8.50 were in fact legitimate, its cross-motion for summary judgment is also denied.

---

[4]The Court is frustrated with CAC's seemingly ostrich strategy used to defeat summary judgment on this issue. It seems that if the charges were in fact illegitimate, CAC would be responsible under the holder in due course language in its contract for the excess charges and merely disclaiming any knowledge of whether the charges were in fact legitimate would not be a defense.

## 2. Chapter 408

Plaintiffs claim that section 408.562 is an additional remedies section providing for recovery of actual damages, punitive damages, attorney's fees and equitable relief for violations of Chapter 365. As stated above, section 365.145 provides that section 408.551 to 408.562 shall apply to any retail installment transaction made pursuant to sections 365.010 to 365.160. CAC argues that section 408.562 only applies to "credit transactions" not credit "violations" of sections 365.010 to 365.160. Since section 408.562 is clearly a statute for "damages recoverable for violation," the Court finds that section 408.562 is meant to be an additional remedy for violations of sections 365.010 to 365.160 as set forth in section 365.145 and Plaintiffs would be entitled to actual damages, punitive damages, attorney's fees, and equitable relief for any violation of Chapter 365.[5]

CAC also argues that section 408.562 limits claims to those persons who "suffers any loss of money or property." Plaintiffs argue that they have suffered damages because the interest charges were excessive by adding extra official fee charges, their credit reports were damaged, they lost the benefit of the bargain, they lost their vehicles and they lost time.

The court in Minton v. Hill states that a person who suffers any loss of money or property may, under section 408.562, sue to recover actual and punitive damages when a sale is made with the transfer of title. 944 S.W.2d 250, 255 (Mo. Ct. App. 1997). In this case the Defendant accepted assignment of the retail installment contract and transferred the title and therefore, would be liable for any damages.[6] However, as stated in B. 1, above, both Plaintiffs and the Defendant are denied summary judgment on the issue of excess official fee charges and consequently, Plaintiffs are denied damages under this section. If Plaintiffs can show they were

---

[5]See also discussion above under Chapter 365.

[6]Arguably CAC is liable under the Holder in Due Course Rule as well. See discussion infra at B. 4.

13

charged excess official fees, then Plaintiffs can prove and recover their actual damages. Additionally, the Court notes that it can provide equitable relief under section 408.562 and reform the contracts.

### 3. Chapter 407

Plaintiffs have moved for summary judgment on Chapter 407, the Merchandising Practices Act ("MPA"), of the Missouri Statutes for the official fee overcharges. The MPA provides at section 407.020(1) that:

> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose, as defined in section 407.453, in or from the state of Missouri, is declared to be an unlawful practice. The use by any person, in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose, as defined in section 407.453, in or from the state of Missouri of the fact that the attorney general has approved any filing required by this chapter as the approval, sanction or endorsement of any activity, project or action of such person, is declared an unlawful practice. Any act, use or employment declared unlawful by this subsection violates this subsection whether committed before, during or after the sale, advertisement or solicitation.

Plaintiffs argue that CAC violated the MPA for overcharging official fees and that the overcharges were per se violations of the MPA because they were in violation of Chapter 365. Plaintiffs ask for actual damages, punitive damages, attorney's fees and equitable relief pursuant to section 407.025 which states:

> Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020, may bring a private civil action in either the circuit court of the county in which the seller or lessor resides or in which the transaction complained of took place, to recover actual damages. The court may, in its discretion, award punitive damages and may award to the prevailing party attorneys' fees, based on the amount of

14

time reasonably expended, and may provide such equitable relief as it deems necessary or proper.

CAC makes several arguments which will be addressed in turn. First, CAC argues that section 407.020 does not apply to it because it is a sales finance company. Section 407.020.2(2) states that the section will not apply to:

Any institution or company that is under the direction and supervision of the director of the department of insurance, or director of the division of finance, unless the directors of such divisions specifically authorize the attorney general to implement the powers of this chapter or such powers are provided to either the attorney general or a private citizen by statute. (emphasis added).

CAC argues that it is supervised by the Missouri Division of Finance to ensure compliance with the Motor Vehicles Time Sales Law and that the Director of Finance has not authorized the powers of section 407.020 nor has any statute granted such powers to the Attorney General or a private citizen. Plaintiffs argue that CAC has never raised this argument in any prior pleadings or briefs and therefore is barred from raising it at this late date.[7] Alternatively, Plaintiffs argue that the exemption in section 407.020.2 is negated because the division of finance authorized the attorney general to implement the powers of the chapter on September 17, 1996.

Plaintiffs attach a letter from Earl L. Manning, Commissioner of Finance, addressed to the Attorney General stating that the Attorney General is authorized to implement the powers of Chapter 407 against the Defendant. Plaintiffs' Ex. Y. Plaintiffs also contend that section 407.025 provides for implementation of Chapter 407 by a private citizen. The Court finds that section 407.020 applies to CAC because the

---

[7]Further, a defense of exemption is an affirmative defense that must be pleaded. See Mitchell v. Williams, 420 F.2d 67, 68 n.2 (8th Cir. 1969). CAC has not pleaded the exemption for a sales finance company in any of its pleadings and is therefore now precluded from raising the defense.

15

Attorney General was authorized to implement the powers and the 1992 amendment to the statute creates the powers for a private citizen.[8]

CAC also argues that it did not make any representation or omission "in connection with the sale or advertisement of any merchandise in trade or commerce" as required by section 407.020. CAC claims that it only accepted assignment of the retail installment contracts and cannot be held vicariously liable for any misrepresentations made to Plaintiffs by the dealers. Plaintiffs argue that the subsection applies whether the violation was committed before, during or after the sale and that the definition of merchandise in section 407.010(4) applies to "any objects, wares, goods, commodities, intangibles, real estate or services." The Court finds Plaintiffs' analysis of the statute persuasive and holds that section 407.020 can apply to CAC if 1) the Plaintiffs establish that CAC directly violated the section by misrepresentation of official fees or if 2) extending credit is a service under the section. The Court is persuaded that section 407.020 does apply to "services" such as, in this case, financing a retail installment contract. See In Re Western Acceptance Corp., Inc., 788 P.2d 214 (Idaho 1990) (holding that the collection of a debt arising out of a sale of goods or services is subject to the provisions of the Consumer Protection Act even when the collection of the debt is by a third party who has purchased the debt from the seller.); State of Kansas ex rel. Miller v. Midwest Serv. Bureau of Topeka, Inc., 623 P.2d 1343 (Kan. 1981) (holding that an independent debt collection agency is liable for violations of the Kansas Consumer Protection Act because a debt collector is engaged in enforcing a consumer transaction); Garland v. Mobil Oil Corp., 340 F. Supp. 1095 (N.D. Ill. 1972) (holding that Illinois Uniform Deceptive Trade Practices Act applied not only to practices affecting sales but also to financing).

---

[8]The fact that CAC claims it has never seen the letter to the Attorney General from the Commissioner of Finance does not remove liability under section 407.020. Also the fact that the letter only mentions CAC and not any other company actually lends credibility to Plaintiffs' argument that the Attorney General was authorized to investigate the Defendant. CAC is apparently licensed by the Division of Finance, but its license does not alter the impact of the authorization letter.

16

In order for Plaintiffs to recover under section 407.020 they would have to prove fraud or misrepresentation. The elements of fraud in Missouri must be proved by a preponderance of the evidence in a jury tried case. Glass Design Imports, Inc. v. Import Specialties, 867 F.2d 1139, 1142 (8th Cir. 1989). The elements of fraud are "1) a representation, 2) its falsity, 3) its materiality, 4) the speaker's knowledge of its falsity, or his ignorance of its truth, 5) the speaker's intent that it should be acted upon by the person and in the manner reasonably contemplated, 6) the hearer's ignorance of the falsity of the representation, 7) the hearer's reliance on the representation being true, 8) his right to rely thereon, and 9) the hearer's consequent and proximately caused injury" and must be pled with particularity per rule 9 of the Federal Rules of Civil Procedure. Sofka v. Thal, 662 S.W.2d 502, 506 (Mo. 1983) (en banc) (citations omitted). The Plaintiffs have adequately pleaded a cause of action in their Third Amended Complaint for a violation of section 407.020 but have not proven a violation of the section for excess official fees entitling them to summary judgment.[9]

Defendants also argue that the Plaintiffs have not suffered any damages or "an ascertainable loss of money or property" under section 407.025. The Court has addressed the damages issue in the above discussion and will not address it again here. Accordingly, the Court finds that section 407.020 applies to CAC and the retail installment transactions but both Plaintiffs and CAC are denied summary judgment on the official fees violation.

### 4. FTC Holder Rule

Plaintiffs also move for summary judgment for the official fees class under the FTC Holder in Due Course Rule and request that Plaintiffs be awarded the overcharges which were paid up front for the execution of the contracts. CAC argues that Plaintiffs can only recover the amounts actually paid to CAC, which CAC claims were nothing, and only after Plaintiffs received little or nothing of value. CAC claims Plaintiffs received the vehicles which, indisputably have some value. CAC claims that the

---

[9]See discussion under Chapter 365 above.

Plaintiffs did not pay any official fees to CAC but rather to the seller and so CAC is not obligated to pay the Plaintiffs anything.

Additionally, CAC argues that state law limits the recovery from an assignee of a contract to a setoff after an assignee initiates formal legal proceedings and the debtor asserts a defense within ninety days after the receipt of the goods. Defendant's Reply Brief at 25 (citing Mo. Rev. Stat. § 408.405). CAC contends the debtors received an automobile, something of value, that the debtors did not assert any rights to a setoff, the debtors did not pay anything to CAC, and that those debtors who still have the automobiles might not want to rescind their contracts.

The retail installment contracts in this case are unquestionably subject to the Holder in Due Course rule, meaning that CAC is subject to all claims and defenses the debtor could assert against the seller.[10] Missouri statute 408.405 states that:

> [t]he rights of a holder or assignee of an instrument, account, contract, right, chattel paper or other writing other than a check or draft, which evidences the obligation of a natural person as buyer, lessee, or borrower in connection with the purchase or lease of consumer goods or services, are subject to all defenses and setoffs of the debtor arising from or out of sale or lease, notwithstanding any agreement to the contrary, only as to amounts then owing and as a matter of defense to or setoff against a claim by the holder or assignee; provided however, with respect to goods only, the rights of the debtor under this section may be asserted to the seller at the address as which he did business at the time of sale and must be so asserted within ninety days after receipt of the goods.

Plaintiffs therefore can only assert claims under this rule for those class members who asserted their rights within the ninety-day period after receipt of the vehicles. Accordingly, to the extent that Plaintiffs in the official fees class can show they asserted their rights within ninety days, they would be permitted to recover. However, as the

---

[10]See Statement of Uncontroverted Facts, above. See also Drew v. Chrysler Credit Corp., 596 F. Supp. 1371, 1376 (W.D. Mo. 1984) (holding that section 408.405 applies to a finance company affiliated with a seller because it carries out the intent of preventing consumer losses resulting from "paper shuffling").

18

discussion above demonstrates, Plaintiffs are denied summary judgment on the official fees claim.  CAC's cross-motion for summary judgment on this point is also denied.

### 5.  TILA

Plaintiffs move for summary judgment for the official fees class under a violation of the Truth in Lending Act ("TILA").  TILA requires disclosure of all finance charges attributable to a credit sale.  15 U.S.C. § 1601(a)(3).  Plaintiffs argue that the overcharges for official fees constitute finance charges and that CAC is liable for failing to disclose the official fee overcharges as finance charges.  CAC argues that it did not fail to disclose the charges for official fees and that it is not responsible in any event, because the "overcharges" were not "apparent on the face" of the disclosure documents.

Under TILA a finance charge is defined as:

> Except as otherwise provided in this section, the amount of the finance charge in connection with any consumer credit transaction shall be determined as the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incidence to the extension of credit.  The finance charge does not include charges of a type payable in a comparable cash transaction. . . .

15 U.S.C. § 1605(a).  Items that are exempt from computation of the finance charge in all credit transactions include:

> Fees and charges prescribed by law which actually are or will be paid to public officials for determining the existence of or for perfecting or releasing or satisfying any security related to the credit transaction.

15 U.S.C. § 1605(d).  Plaintiffs contend that CAC is liable for its sellers failure to make the required disclosure regarding the official fee overcharges.  Plaintiffs argue CAC is liable under TILA for a total recovery in a class action of "not more than the lesser of $500,000 or 1 per centum of the net worth of the creditor." 15 U.S.C. § 1640(a)(2)(B).

19

CAC argues that it cannot be held liable under TILA as an assignee unless the violation of the statute is "apparent on the face" of the disclosure statement. "[A] violation apparent on the face of the disclosure statement includes, but is not limited to (1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned, or (2) a disclosure which does not use the terms required to be used by this subchapter." 15 U.S.C. § 1641. CAC contends it did not have actual knowledge of any official fee overcharges nor are the official fee overcharges apparent on the face of the documents it receives for assignment and it did not submit title application forms to the Missouri Department of Revenue in connection with any class member's purchase of an automobile.

Plaintiffs contend that because the charges for official fees were over $10 on some of the retail installment contracts, they were "apparent on the face" violations. Plaintiffs submit parts of CAC's Dealer Manuel which includes instructions for its dealers. Plaintiffs' Ex. E. Plaintiffs include in the Dealer Manuel packet a copy of an Application for Missouri Title and License showing a charge of $8.50 for a title fee and claim CAC trains its dealers to only charge $8.50 and therefore, CAC must know it is violating TILA. CAC argues that the copy of the Application for Missouri Title and License is not provided to its Missouri dealers and the form shows other charges which are appropriately aggregated together as fees. Defendant's Ex. 1.

The Court declines to grant summary judgment to either party on this claim because as discussed above, the propriety of the official fee charges cannot be determined by the Court at this time. Logically, then, the Court cannot find that CAC had actual knowledge that the official fee charges were in violation of TILA or that CAC is liable because the violations should have been "apparent on the face." The Court does note, however, that CAC cited two factually similar cases wherein the courts held that the overcharges for fees were excluded as "comparable cash transactions" under that statute and that access to assignment documents did not make the violations "apparent on the face." See Brown v. Coleman Investments, Inc., 993 F. Supp. 416 (M.D. La 1998); Brister v. All Star Chevrolet, Inc., 986 F. Supp. 1003 (E.D. La 1997).

20

Also, one circuit court has held that "[section] 1641(a) does not impose a duty of additional inquiry on assignees. Only violations that a reasonable person can spot on the face of the disclosure statement or other assigned documents will make the assignee liable under the TILA." See Taylor v. Quality Hyundai, Inc., 1998 WL 401494, *5 (7th Cir. 1998).

Plaintiffs also argue that CAC is liable for its dealers' violations of TILA under the FTC Holder Rule and language in the contracts. The Court declines to find liability under the FTC Holder Rule for violations of TILA for the same reasons set forth above in denying TILA liability. Since the violations are not apparent on the face, the Court is not inclined to allow Plaintiffs to circumvent the assignee standard for liability under TILA by using the FTC language. See Brister v. All Star Chevrolet, Inc., 986 F. Supp. 1003 (E.D. La 1997) (holding that the FTC notice language cannot be used to impose liability upon an assignee unless the violation was "apparent," otherwise, the express requirements for assignee liability under TILA would be moot). Accordingly, summary judgment on this claim is denied to both parties.

## C. POST-MATURITY INTEREST CLASS

Plaintiffs move for summary judgment under Counts X, XI and XIII for post-maturity interest charged at rates higher than allowed by the retail installment contracts against the debtors, most of whom have defaulted and against whom CAC has obtained a judgment. Plaintiffs claim they have the right to recover for all monies they paid for finance charges, delinquency and collection charges as well as the right to injunctive relief, declaratory relief, punitive damages and attorney's fees. Each cause of action relies upon the same statutes as used above in the official fees class. Each cause of action upon which Plaintiffs rely shall be addressed in order of presentation.

21

CAC claims that none of the class members have paid any excess interest charges and that this Court does not have jurisdiction over these claims.[11] CAC makes several arguments under each cause of action which shall be addressed in turn.

## 1. Unauthorized Rates

Plaintiffs claim that CAC has charged thousands of debtors post-maturity interest at rates higher than allowed by its contracts to obtain judgments. Plaintiffs claim CAC used false affidavits and false claims in petitions to obtain the judgments with excessive interest. CAC has not denied that some of the petitions for judgments contain post-maturity interest rates higher than the post-maturity interest rate stated in the contract.[12] Plaintiffs have alleged four separate causes of action for charging the debtors post-maturity interest at unauthorized rates.

### a. Chapter 365

Plaintiffs allege and CAC admits that certain retail installment contracts provided for a lesser post-maturity interest rate than the rate CAC sued and received judgments at against the debtors. The Fielder/Williams account, for example, limited post-maturity interest to nine percent (9%) by the "Post-Maturity Interest" clause in the contract. CAC however, sued Fielder and Williams and claimed an interest rate of twenty-two percent (22%) on the accelerated balance of the contract. On January 27, 1997, CAC took a default judgment against the Hendersons which included post-maturity interest of eighteen percent (18%) when the Hendersons retail installment contract contained no post-maturity interest rate. In July of 1997, CAC filed a Motion to Set Aside the Default Judgment and Enter Amended Default Judgment which reduced the post-maturity interest claim to zero percent (0%). Plaintiffs claim that of the 335 litigation

---

[11]The Court has previously denied CAC's Motion to Dismiss for lack of subject matter jurisdiction. The Court has also authorized CAC to continue to "correct" any judgments containing inaccurate or excess post-maturity interest so long as the Court and the parties are informed.

[12]See Statement of Uncontroverted Facts.

Case 4:96-cv-01210-ODS   Document 212   Filed 08/04/98   Page 22 of 35

files they investigated, a total of 122, revealed incorrect post-maturity interest charges. CAC does not deny the numbers of incorrect charges but indicates it has amended several mistaken judgments.

Plaintiffs claim CAC violated section 365.100 when it charged post-maturity interest at a greater rate than authorized in the retail installment contracts. Section 365.100 provides:

> If the contract so provides, the holder thereof may charge and collect:
> . . .
> (2) Interest on each delinquent payment at a rate which shall not exceed the highest lawful contract rate. . . .

Mo. Rev. Stat. § 365.100.

The Court has already addressed both CAC's argument regarding a private right of action under Chapter 365 and the statute of limitations argument under the official fees class discussion above. Therefore, the Court will only address new arguments under this section.

CAC argues that class members whose retail installment contracts had an empty blank for the post-maturity interest provision are not entitled to greater damages then those class members whose contracts had a nine percent (9%) rate. Essentially, CAC claims that the blank post-maturity interest provision in the retail installment contracts meant the parties did not agree to a rate and therefore CAC automatically gets the rate provided by Missouri statute. Section 408.020 of the Revised Statutes of Missouri provides:

> Creditors shall be allowed to receive interest at the rate of nine percent per annum, when no other rate is agreed upon, for all moneys after they become due and payable, on written contracts, and on accounts after they become due and demand of payments is made; for money recovered for the use of another, and retained without the owner's knowledge of the receipt, and of all other money due or to become due for the forbearance of payment whereof an express promise to pay interest has been made.

Case 4:96-cv-01210-ODS   Document 212   Filed 08/04/98   Page 23 of 35

Mo. Rev. Stat. § 408.020. The case of <u>Addison v. Jester</u> supports CAC's position. 758 S.W.2d 454, 458 (Mo. Ct. App. 1988) (holding that the legal rate of recovery for interest absent an agreement is 9%).

After consideration of the evidence, the Court finds that CAC violated section 365.100 by charging excess post-maturity interest and grants summary judgment to Plaintiffs for unauthorized rates of post maturity interest charged to the class. CAC's cross motion for summary judgment is denied. However, those class members with blank post-maturity provisions are only awarded damages if they were charged excess interest above the nine percent (9%) default rate in section 408.020. Accordingly, pursuant to section 365.150 CAC is barred from recovery of any time price differential, delinquency or collection charges on such accounts. Plaintiffs can recover past interest payments and the Court awards equitable relief as provided in section C. 3 below and damages to be determined at a later date.

### b. Chapter 408 as Incorporated

Plaintiffs argue that a violation of section 365.100 gives rise to liability for actual damages, punitive damages, attorney's fees and equitable relief under section 408.562. As discussed above, section 365.145 incorporates section 408.551 to 408.562 to any retail installment transaction made pursuant to sections 365.010 to 365.160. CAC's arguments regarding class members proof of loss of money or property has been addressed above in section B. II. Accordingly, Plaintiffs are awarded actual damages for those class members who have paid excess interest with the amounts to be determined at a later date. The Court will not award injunctive relief to set aside all the prior default judgments with excessive post-maturity interest but will allow the prior judgments to be amended nunc pro tunc by CAC. The Court also awards attorneys fees, the exact amount to be determined at a later date.

### c. Chapter 408 Direct Violation

Plaintiffs assert a right to relief under section 408.562 for a violation of section 408.556. Section 408.556 provides:

24

1. In any action brought by a lender against a borrower arising from default, the petition shall allege the facts of the borrower's default, facts sufficient to show compliance with the provisions of section 400.9-501 to 400.9-407, RSMo, which provisions are hereby deemed applicable to all credit transactions, with respect to any sale or other disposition of collateral for the credit transaction, the amount to which the lender is entitled, and an indication of how that amount was determined.

2. A default judgment may not be entered in the action in favor of the lender unless the petition is verified by the lender, or sworn testimony, by affidavit or otherwise, is adduced showing that the lender is entitled to the relief demanded.

CAC argues that section 408.556 is a pleading requirement and the remedy for a violation of the section is dismissal of the collection suit. Plaintiffs argue that the filing of false affidavits in conjunction with the post-maturity interest provisions violate section 408.556 and give rise to damages under section 408.562 and section 365.150. The Court does not find that CAC violated the pleading requirements of section 408.556 or that Plaintiffs have supported an independent cause of action under this statute.[13] CAC did file affidavits in support of its judgment but the fact that some of the affidavits contained incorrect post-maturity interest calculations is not a violation of this section. CAC's other arguments in opposition to liability under this section have already been addressed by the Court in the official fees section above. Accordingly, Plaintiffs motion for summary judgment on this claim is denied.

### d. Chapter 407

Plaintiffs also argue that CAC's misrepresentation to debtors, in false affidavits and petitions filed with the courts, of the interest owing is in violation of section 407.020. CAC argues that it has not violated section 407.020 because it did not do anything "in connection with the sale or advertisement of any merchandise in trade or commerce." The Court could not find any Missouri cases dealing with extension of

---

[13]But, see the discussion below regarding the repossession subclass where the Court finds that CAC violated section 408.556 with regard to the pre-sale notices and the deficiency suit pleadings.

25

credit and whether misrepresentations about that credit would trigger section 407.020. This issue seems to be one of first impression and the Court believes that the legislature intended to include CAC's actions under this statute. Therefore, Plaintiffs are granted summary judgment under this section for misrepresentations about the post-maturity interest rates. CAC also makes arguments about damages which have been addressed by the Court in the official fees section above. Plaintiffs are awarded judgment with respect to liability for CAC's violation of section 407.020. The relief set forth in section 407.025, which includes actual damages, equitable relief, attorney's fees, and possible punitive damages is to be determined at a later date.

## 2. Compound Interest

Plaintiffs claim that CAC charged compound interest in connection with its repossession and deficiency actions because it charged interest on the principle balance and then charged interest again when it sought a judgment. Plaintiffs provide computer notes, post-sale notices and pleadings in support of their contention. Plaintiffs argue CAC is liable under section 365.100 and section 408.080. CAC does not explain or deny the figures Plaintiffs claim are charges for compound interest, nor does CAC point to a provision in the retail installment contracts authorizing compound interest.

Section 408.080 provides generally that "[p]arties may contract, in writing, for the payment upon interest; but the interest shall not be compounded oftener than once a month. Where a different rate is not expressed, interest upon interest shall be at the same rate as interest on the principle debt. . . ." In this case, the parties have not contracted for compound interest. Additionally, section 365.100 provides that:

If the contract so provides, the holder thereof may charge and collect:

(1) A delinquency and collection charge on each installment in default for a period of not less than ten days in an amount not to exceed five percent of each installment or five dollars, whichever is less, provided, however, that a minimum charge of one dollar may be made.

26

Indeed, CAC contract forms contain almost nearly identical language to section 365.100 in the "late charge" section. Accordingly, the Court finds CAC in violation of section 365.100 and awards summary judgment for the Plaintiffs. Plaintiffs are entitled to the remedies in section 365.150 and section 408.562.

### 3. Relief

Plaintiffs are therefore awarded the following relief as indicated in each section above:

1. CAC is permanently enjoined from charging or collecting post-maturity interest at any rate above that specifically provided in the contracts;

2. CAC is permanently enjoined from charging or collecting compound post-maturity interest;

3. The Court declares that no amounts are owing on the contracts for any finance charges or interest, delinquency or collection charges;

4. CAC is permanently enjoined from charging or collecting any finance charges or interest, delinquency or collection charges on the contracts;

5. CAC is permanently enjoined from issuing any credit reports on the accounts that show balances including such charges and CAC is directed to correct any such credit reports that have issued;

6. CAC shall move for the default judgments based on excessive post-maturity interest and compound post-maturity interest be amended nunc pro tunc consistent herewith in the issuing court;

7. CAC is liable to the Plaintiffs for actual damages to be determined in subsequent proceedings;

8. CAC is liable to for the Plaintiffs' attorney's fees to be determined in subsequent proceedings; and

9. The issue of punitive damages and any additional equitable or other relief will be determined in subsequent proceedings.

27

## D. REPOSSESSION SUBCLASS

Plaintiffs allege CAC violated provisions relating to repossession, redemption and notice of sale to members of the repossession subclass. CAC claims the pre and post sale notices were reasonable and adequate to inform the debtors of their rights. Plaintiffs move under Counts XII and XIII for summary judgment on these claims.

### 1. Post-Sale Notices

Plaintiffs claim that CAC violated several sections of section 408.557 in providing post-sale notices to members of the repossession subclass. CAC claims it complied with section 408.557 and even if the notices were inadequate, the Plaintiffs have not suffered any harm. Section 408.557 provides:

> 1. When a lender sells or otherwise disposes of collateral in a transaction in which an action for a deficiency may be commenced against the borrower, prior to bringing any such action or upon written request of the borrower, the lender shall give the borrower the notice described in this section. A lender gives notice to the borrower under this section when he [she] delivers the notice to the borrower or mails the notice to him [her] at his [her] last known address.
> 2. The notice shall be in writing and conspicuously state:
> (1) The name, address and telephone number of the lender to whom payment of any deficiency is to be made;
> (2) An identification of the goods sold or otherwise disposed of;
> (3) The date of sale or other disposition;
> (4) The nature of the disposition if other than a sale, or, if a sale, whether or not the goods were sold at public auction and the name and address of the person who conducted the auction;
> (5) The amount due the lender immediately prior to the disposition after deducting the amount of any refund of interest and, if known to the creditor, insurance premiums;
> (6) The sale price;
> (7) Expenses incurred by the lender permitted to be deducted from the sale price before application to the debt pursuant to sections 400.9-501 to 400.9-507, RSMo, itemized and identified to show the nature of each such expense; and
> (8) The remaining deficiency, or surplus, as of the date of sale, computed by subtracting item (7) from item (6) and subtracting the difference so determined, if more than zero, from item (5).

28

Mo. Rev. Stat. § 408.557. Plaintiffs identified two post-sale notices sent to CAC's debtors. Plaintiffs claim the first such notice, Plaintiffs' Exhibit K, violates the statute because it 1) contains no identification of the goods sold, 2) does not state the date the vehicle was sold 3) does not state whether the vehicle was sold at a public auction, 4) overstates the balance due immediately prior to sale, and 5) does not set out the calculation of the remaining deficiency. Plaintiffs claim the second such notice, Plaintiffs' Exhibit L, violated the statute because it 1) does not state whether the vehicle was sold at a public auction, 2) overstates the balance due immediately prior to sale, and 3) does not set out the calculation of the remaining deficiency.

The only Missouri case that finds a violation of section 408.557 is Lankheit v. Estate of Scherer, 881 S.W.2d 853 (Mo. Ct. App. 1991). In Lankheit, the creditor failed to send a post-sale notice and therefore the court held that the creditor was barred in his deficiency suit from recovery of "any time price deferential, delinquency or collection charge on the contract." Id. at 856 (citing Mo. Rev. Stat. § 365.150.2). Admittedly, the two forms of post-sale notices given in this case are not perfect models demonstrating compliance with the provisions of section 408.557. However, unlike the case law explaining pre-sale notices, the post-sale notice provisions do not require strict compliance with the statute. In Lankheit, the court found that the pre-sale notices must strictly comply with the statutory requirements while no discussion was held about strict compliance with the post-sale notice requirements. Id. Accordingly, the Court finds that CAC's post-sale notices substantially comply with the requirements of section 408.557 and the debtors were fairly placed on notice. The debtors received the information necessary to protect their interests since they were informed of the pre-sale balance, credits for unearned finance charges and insurance premiums, the amount for which the collateral was sold, the expenses of the sale and any remaining deficiency or surplus.

Additionally, Plaintiffs have not submitted any evidence that the defective post-sale notices have resulted in Plaintiffs damage. The vehicles were already sold and the deficiencies in the notice do not give rise to any actual damages pursuant to

29

section 408.562. Therefore, Plaintiffs' motion for summary judgment on this claim is denied and CAC's cross-motion for summary judgment is granted.

## 2. Pre-Sale Notices

Plaintiffs claim CAC violated the Missouri UCC provisions for pre-sale notices, section 400.9-504, and for redemption rights, section 400.9-506. Plaintiffs claim the pre-sale notices violate the UCC by 1) falsely overstating the payment required to redeem the vehicles; 2) by making false and inconsistent statements about whether the sales would be public or private; 3) by making false and misleading statements about the date by which payment was required for redemption; and 4) by giving inadequate notice prior to the date of sale. Plaintiffs allege the violations of sections 400.9-504 and 400.9-506 give rise to the remedies in section 400.9-507. CAC claims the pre-sale notices it sent to its debtors satisfy the "reasonable notification" requirement of Mo. Rev. Stat. § 400.9-504(3).

Section 400.9-504(3) provides that:

> Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor. If he has not signed after default a statement renouncing or modifying his right to notification of sale, but no such statement shall be effective in the case of consumer goods. [sic] In the case of consumer goods, no other notification need be sent. In other cases, notification shall be sent to any other secured party from whom the secured party has received (before sending his notification to the debtor) written notice of a claim of an interest in the collateral. The secured party may buy at any public sale and if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations he may buy at a private sale.

30

"Compliance with the notice provision of § 400.9-504(3) is a prerequisite to recovery of a deficiency after resale of the collateral." Lankheit v. Estate of Scherer, 811 S.W.2d 853, 858 (Mo. Ct. App. 1991) (citations omitted). "Any doubt as to what constitutes strict compliance with the notice requirement is resolved in favor of the debtor." Id.

Under section 400.9-506 a debtor has the right to redeem the collateral by tendering fulfillment of all the obligations secured by the collateral. Mo. Rev. Stat. § 400.9-506. Plaintiffs argue that CAC's pre-sale notices overstate the amount needed to redeem the collateral because the amount stated in the notices contain unrebated and unearned finance charges. CAC does not deny that the notices state a balance due that is not what the debtors would owe if they choose to redeem the vehicles. However, CAC claims it does not violate the terms of sections 400.9-504 or 400.9-505 because some of the notices themselves state that the amount due and owing may be incorrect and further give a phone number for the Redemption Department for the debtor to call to receive the exact redemption amount. The Court finds that those notices are not deficient by failing to state the exact amount due in order to redeem the vehicles.

However, some of the notices are deficient because the balance figures are overstated and the notices do not discuss redemption or unrebated charges at all. This issue also appears to be one of first impression in Missouri. Plaintiffs argue this Court should follow the case of Wilmington Trust Co. v. Conner, 415 A.2d 773 (Del. 1980) where the court found that insertion of an inflated redemption figure misled the debtors and violated the notice requirement. This Court accepts the premise in Wilmington, that the notice of resale may not contain such misleading information even if the other basic information required by the statute is included. Wilmington, 415 A.2d at 776. The Court finds that some of the notices in this case violated the statute because CAC's figures were not only incorrect but were unreasonably misleading as to the principal debt and the notices did not inform the debtors that the stated balance might be inaccurate. Plaintiffs provided four sample notices that contain presumably unrebated figures with no reference in the notice that the redemption figures were

31

inaccurate. Therefore, the debtors did not have "reasonable notification of the sale" because such notice is designed to ensure the debtors are aware of their rights which include redemption. Plaintiffs are granted summary judgment for those notices that contain inflated figures and no reference to the unrebated balance and denied summary judgment for the notices that contain an inflated figure but also include the Redemption Department information. Plaintiffs are entitled to recover any loss caused by the failure to comply or "in any event an amount not less then the credit service charge plus ten percent of the principal amount of the debt or the time price differential plus ten percent of the cash price." Mo. Rev. Stat. § 400.9-507(1).

Plaintiffs also argue that the pre-sale notices make false statements about whether the sales would be public or private sales because the notices mostly say private but also include the time and place of the sale. The Court denies Plaintiffs' motion for summary judgment on this issue because all but one of the notices provided state the collateral will be sold at a "PRIVATE" auction. Just because the notices also contain the time and place of the sale does not nullify the very express private auction language.

Plaintiffs also claim that the pre-sale notices unduly limit the time within which debtors may redeem their repossessed vehicles. Section 400.9-506 provides that the debtor may redeem the collateral "[a]t any time before the secured party has disposed of the collateral." The pre-sale notices provided to the Court all contain the following language "You may redeem your vehicle until the time of sale (by cash or certified check)." The notices go on to specify a date after which the vehicle would be sold if not redeemed. Plaintiffs are denied summary judgment on this point.

Lastly, Plaintiffs claim that the pre-sale notices suffer from a host of other defects. Some of the notices contained dates of sale that were prior to the actual date of the notice. One notice was blank as to any date of sale. Another notice shows that payment to redeem must be made three days before the scheduled sale and yet others provide less notice than provided for in the contracts. All of these pre-sale notices violate section 400.9-504 and Plaintiffs' motion for summary judgment is granted.

32

Plaintiffs are entitled to recover any loss caused by the failure to comply or "in any event an amount not less then the credit service charge plus ten percent of the principal amount of the debt or the time price differential plus ten percent of the cash price." Mo. Rev. Stat. § 400.9-507(1).

### 3. Deficiency Suit Pleadings

Plaintiffs claim that CAC's deficient pre-sale notices lead to a direct violation of section 408.556.[14] CAC argues that the failure to plead compliance with sections 400.9-501 through 400.9-507, as required by section 408.556, only creates a basis to dismiss a creditor's action for deficiency judgment and should therefore be raised in the original action or otherwise be waived. The Court has previously addressed this argument in Fielder v. Credit Acceptance Corp.,1998 WL 394995, *3 (W.D. Mo. 1998) when the Court denied CAC's Motion to Dismiss and Motion for Partial Summary Judgment because the original deficiency actions were filed in associate circuit court where any defenses were not required to be affirmatively pleaded. The Court finds that CAC has failed to comply with the provisions of section 400.9-501 though section 400.9-507 in its suit pleadings.

Plaintiffs contend they are entitled to relief under section 408.562 for actual damages, punitive damages, attorney's fees and equitable relief as well as section 365.150 which bars CAC from recovery of any time price differential, delinquency or collection charges on the contract. CAC claims that Plaintiffs have no actual damages resulting from the deficiency in the suit pleadings and therefore are not entitled to recover. Again, the Court may award Plaintiffs equitable relief by requiring the Defendants to amend the judgments nunc pro tunc and bar CAC from recovering under section 365.150. Plaintiffs may show actual damages and the Court will consider attorney's fees and punitive damages at a later date. Therefore, the Court finds CAC to be in violation of section 408.556 and grants Plaintiffs' motion for summary judgment on this claim.

---

[14]For the entire text of the statute see section III. C. 1. c. above.

33

## 4. Relief

Plaintiffs are awarded the following relief for the repossession subclass claims and the deficiency suit claims as indicated above:

1. CAC is permanently enjoined from giving pre-sale notices that fail to comply with Missouri's Uniform Commercial Code;

2. CAC is permanently enjoined from filing or pursuing any deficiency actions without first having complied with Missouri's UCC or alleging compliance with Missouri's UCC;

3. The Court declares that no amounts are owing on the repossession subclass pre-sale notice and deficiency suit pleading accounts as stated above;

4. CAC is permanently enjoined from charging or collecting any monies on the repossession subclass pre-sale notice and deficiency suit pleading accounts as stated above;

5. CAC is permanently enjoined from issuing any credit reports on the above accounts that show any balances owing;

6. CAC shall pay each member of the repossession pre-sale subclass, as stated above, a civil penalty under section 400.9-507 equal to the time price differential plus ten percent of the cash price of that account;

7. CAC is liable to Plaintiffs for actual damages to be determined in subsequent proceedings;

8. CAC is liable to Plaintiffs for attorney's fees to be determined in subsequent proceedings;

9. CAC is liable for any punitive damages or any additional equitable relief as the Court may determine in subsequent proceedings.

## IV. CONCLUSION

For the foregoing reasons Plaintiffs are granted partial summary judgment on the post-maturity class claims and the repossession subclass claims and denied summary

34

judgment on the remaining claims.  CAC's cross-motions for summary judgment are denied except as to the post-sale notices of the repossession subclass.

IT IS SO ORDERED.

Date: _8/4/98_

ORTRIE D. SMITH, JUDGE
UNITED STATES DISTRICT COURT

Case 4:96-cv-01210-ODS   Document 212   Filed 08/04/98   Page 35 of 35