MARVIN FIELDER, et al.,  )
individually and on behalf of  )
a class of similarly situated  )
individuals,  )
                      Plaintiffs,  )   Case No. 96-1210-CV-W-3

vs.  )
  )
CREDIT ACCEPTANCE CORPORATION,  )
  et al.,  )
                      Defendants.  )

## PLAINTIFFS' SUGGESTIONS IN OPPOSITION TO "CAC'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON CAC'S RIGHT TO SET-OFF DAMAGES"

### Table of Contents

**A) Summary of argument**     1

**B) Initial objections**     2

**C.   Argument**     3

    1. CAC's Motion is simply another attempt to assert counterclaims.     3

    2. CAC's unstated attempt to bring a class action against the plaintiffs     5

    3. Venue and personal jurisdiction limitations     6

    4. CAC's pleadings do not support the claims it asserts, both in violation of statute and of this Court's August 4, 1998 order.     7

    5. CAC's pursuit of these claims is in violation of the FDCPA     9

    6. Set off is not proper     9

    7. Waiver of claims     11

    8. Attempt to make the case unmanageable     11

    9.    The judgments CAC has obtained in associate circuit court are likewise subject to the class members' claims and defenses against the dealers and CAC.     12

## A) Summary of argument

Where to begin? There are many compelling reasons why CAC's motion is improper and without merit: 1) it is a renewed attempt by CAC to assert counterclaims under another description, contrary to the substance of this Court's ruling in its order granting class certification (*Fielder v. Credit Acceptance Corporation*, 175 F.R.D. 313 (W.D.Mo 1997)), and contrary to the many reasons previously briefed why counterclaims are not proper here; 2) it amounts to an attempt to assert a class action case against the plaintiff class, without even a pretense of a motion to make these class claims or to qualify them for class treatment; 3) CAC has not asserted and cannot properly assert that venue is proper for such counterclaims or that the class members have been rendered subject to the jurisdiction of this Court for purposes of such claims; 4) any such counterclaims are not properly pleaded in several respects and in fact violate injunctive relief in the order of this Court of August 4, 1998, and the plaintiffs have certainly not been afforded a chance to assert motions and responsive pleadings to such claims; 5) the filing of these claims is in violation of the federal Fair Debt Collection Practices Act; 6) setoff is in any event not proper on the claims asserted by the plaintiffs in this case; 7) CAC's motion amounts to assertion of counterclaims or affirmative defenses that were waived (under the theory of CAC's view of these claims); 8) the motion amounts to an attempt to destroy this class action by making the case entirely unmanageable, especially because an extraordinary number of claims and defenses exist for the absent class members that are not included in this case; 9) it amounts to an attempt to give CAC federal court judgments with much better characteristics for CAC than the state court judgments CAC has sought in Associate Circuit courts; and 10) it is objectionable as being filed long after the deadline for filing dispositive motions. And yet one more point: CAC's collection machine already is pursuing collection suits in

1

state courts on the class members it claims are in default; bringing thousands of claims on those accounts also in this class action case would greatly increase, not decrease, the net burden on the courts.

## B) Initial objections

The plaintiffs object to CAC's filing of a summary judgment motion: nothing in the pretrial conference or the Court's August 28 scheduling order indicated that such a motion could now be filed. Similarly, the plaintiffs now raise their objection to CAC's addition of a setoff "defense" in its Answer to the Third Amended Complaint on the ground that this is actually a mass of thousands of counterclaims (as discussed below), while no such counterclaim was asserted in any of its earlier pleadings, and it did not seek leave of court to add in such claims.

The plaintiffs also object to CAC's "Statement of Undisputed Facts": first, facts 5 through 8 all rely on pre-sale and post-sale notices produced by CAC. But CAC's counsel recently shocked the plaintiffs' counsel with a huge revelation: perhaps half of the notices it produced in discovery, and upon which it and the plaintiffs and the Court relied in the summary judgment briefing, were not genuine, were in fact not correct copies of original notices. At this point the plaintiffs should be beyond surprise, but they voice surprise that CAC has not yet admitted this to the Court, and that it is even now offering "copies" of "notices" to the Court without providing the most thorough and convincing demonstration of their genuineness, and of their correctness. Certainly CAC's assertion of these "facts" is entirely without the support by affidavit, sworn testimony or admissions of the plaintiffs that is required to support summary judgment statements of fact.

Also, the plaintiffs object that, as the Court can see for itself, part or all of the statements in 5 through 8 and 11 falsely represent the Court's own findings.

2

## C. Argument

### 1. CAC's Motion is simply another attempt to assert counterclaims.

CAC's "defense" of setoff is in fact a mass of counterclaims. It is once again (as with its "Motion to Decertify Certain Class Claims" filed in June) trying through its new counsel to reargue and re-present a major issue that this Court has already decided after thorough briefing and consideration.

A counterclaim by any other name remains a counterclaim. *Reiter v. Cooper*, 507 U.S. 258, 262 (1993). Whether a claim is a defense or a counterclaim depends upon whether it can be adjudicated separately from the opposing party's claim to which it applies. *Id.* at 265. CAC's claims against the class members clearly can be separately adjudicated. *Fielder v. Credit Acceptance Corporation*, 175 F.R.D. 313, 321 (W.D.Mo 1997). They are thus counterclaims, even though CAC would call them affirmative defenses. See also *FDIC v. Modular Homes, Inc.*, 859 F.Supp. 117, 123 (D.N.J. 1994):

> Generally, set-off is not considered to be an affirmative defense. fn2 See In re Johnson, 552 F.2d 1072, 1078 (4th Cir. 1977). "Properly considered, set-off - unlike recoupment - does not go to the foundation or justice of a plaintiff's claim. Instead, it embodies a counterdemand based on some transaction entirely extrinsic to the plaintiff's cause of action; and as such it constitutes a defense only in the practical sense that it operates to reduce the remedy rather than the debt." Id. at 1078 (citing 80 C.J.S. §§ 1-5 (1953)).

At footnote 2, the *Modular Homes* opinion recites:

> Set-off is defined as "[a] counter-claim demand which defendant holds against plaintiff, arising out of a transaction extrinsic of the plaintiff's cause of action." Black's Law Dictionary 1372 (6th ed. 1990).

See also *Buchweiser v. Estate of Laberer*, 695 S.W.2d 125, 129 (Mo.banc 1985):

> A defendant who pleads a setoff occupies substantially the position of a plaintiff and must have a subsisting demand which would afford the subject matter for a cause of action.

3

> Barber v. Baker, 70 Mo. App. 680 (Mo. App. 1897). A setoff or counterclaim has the nature and effect of an independent action by the defendant against the plaintiff. Standard Insulation and Window Co. v. Dorrell, 309 S.W.2d 701, 704 (Mo. App. 1958).

CAC cites *Chicago Great Western Ry. Co. v. Peeler*, 140 F.2d 865, 868 (8th Cir. 1944) supposedly to support the proposition that setoff may be asserted as either an affirmative defense or as a counterclaim; however, examination of that case shows no support for such a rule. The court's only comment touching near this subject was to the effect that the defendant's pleadings had not raised setoff either as a counterclaim or even as a defense, though it obviously qualified under a specific statute at the least as a defense and as such had to be in its pleadings.

So, the plaintiffs submit that these are thousands of counterclaims, and the parties are once more back to briefing a subject that was thoroughly briefed and argued in the class certification process: is it proper, necessary, or correct for CAC to assert thousands of counterclaims in this action.

The plaintiffs won't burden the Court with lengthy restatement of their arguments from their earlier suggestions. They request that if the Court wishes to re-consider this question, it may review their several sets of suggestions relating to class certification. The issue of counterclaims was of course the central contested issue in the parties' suggestions and at the class cert hearing. The plaintiffs' Reply suggestions filed July 9, 1997 have perhaps the most extensive discussion of this subject. The plaintiffs will paste in here just one short passage from the second page of those suggestions, by way of giving the flavor of that discussion:

> An extended and cogent discussion of this question and of applicable case law is found in 1 Newberg and Conte, *Newberg on Class Actions* (3d ed., 1992) § 4.34. *Newberg* begins by citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985), for the proposition that absent plaintiff class members are "almost never subject to counterclaims or cross-claims", and concludes

4

by saying "counterclaims should be disallowed in Rule 23 suits as contrary to the basic policies underlying representative class litigation."

## 2. CAC's unstated attempt to bring a class action against the plaintiffs

Inherent in CAC's attempt to have this Court adjudicate thousands of breach of contract claims all at once is CAC's failure to make any attempt at qualifying their claims for class treatment under Rule 23. They would not qualify. The myriad factual and legal disputes involved in determining whether either or both parties are in breach of their obligations under the contract and under Missouri's statutes governing defaults in consumer transactions make CAC's class action counterclaim ill suited for determination by this Court. What CAC in reality seeks to do is bring a defendant class action, in spite of the fact that its pleadings contain no allegations which would support an inquiry into the feasibility of doing so and despite the fact that it has never moved to certify such a class under Rule 23. The Court cannot grant CAC the relief it seeks without undertaking the rigorous analysis required by Rule 23. *Amchem Products, Inc. v. Windsor*, 117 S. Ct. 2231; 138 L.Ed.2d 689 (1997). CAC's counterclaims against the absent class members simply cannot satisfy Rule 23's requirements. As one authoritative commentator has noted:

> It is difficult to conceive of a counterclaim against an entire class which is not more properly regarded as a common defense, e.g., in mitigation of damages claimed commonly by the class. Any such claim against the entire class (counterclaim class) would be permitted only because of the presence of Rule 23. Accordingly, it would also have to satisfy all Rule 23 criteria, which make no exception for different kinds of classes. Because most counterclaims are against individual class members, important consequences follow. Most significantly, whatever adequate representation exists for a class representative with respect to common issues does not extend to individual issues arising from counterclaims against individual class members. Thus, individual class members

5

> will have to defend individually against a counterclaim against them, and they cannot rely on the class representative to defend against their individual counterclaim.

*Newberg on Class Actions*, Vol. 1, § 4.34, at p. 4-149. Counsel for plaintiffs also readily admit that they have neither the time nor the resources to defend thousands of individual breach of contract claims against individual class members. And as CAC itself argued earlier, "The interests of such class members are better served by allowing them individual control over any litigation with CAC"[1].

### 3. Venue and personal jurisdiction limitations

CAC has made no venue or personal or subject matter jurisdiction allegations regarding its claims against the class plaintiffs. Here it seems most expeditious simply to paste in a section from the plaintiffs' post-hearing class cert brief:

As detailed by both *Newberg* and J. Steinman, *The Party Status of Absent Plaintiff Class Members: Vulnerability to Counterclaims,* 69 Georgetown L.J. 1171, (1981), venue and personal jurisdiction have not been waived by absent class members with respect to counterclaims. As stated by Steinman (at 1190):

> Because the waiver and estoppel arguments noted above do not apply to the plaintiff class member, the personal jurisdiction necessary to valid adjudication of a counterclaim cannot be obtained over an absentee by the means that suffice in both traditional litigation and in counter-litigation against the named class representatives. Similarly, the reasoning that permits courts to dispense with personal jurisdiction over absent plaintiffs does not apply when counterclaims are filed against them.

> \* \* \*

---

[1] Defendant Credit Acceptance Corporation's Brief in Opposition to Plaintiffs' Request for Class Certification, page 18.

> In the case of countersued absent class members, however, the court often will lack authority to assert personal jurisdiction and venue may be improper. Moreover, the absentee generally will have no representative before the court because he has been countersued individually and not as a member of a class. In such circumstances, unless the absentee has consented to the jurisdiction of the court or has waived his objections, a court should uphold the due process challenges to lack of jurisdiction and venue. Moreover, if the absentee has made no disqualifying appearance, any judgment entered on a counterclaim should fall upon collateral attack.

**4. CAC's pleadings do not support the claims it asserts, both in violation of statute and of this Court's August 4, 1998 order.**

And no matter the moniker of CAC's pleading, two things are clear. One, that CAC is attempting to establish its right to a deficiency balance and two, CAC's Answer in this Court suffers from the same defect as the thousands of petitions it has filed against class members in state court. CAC, despite the successful attack in this Court on its state court petitions for failure to comply with § 408.556 RSMo[2], repeats its transgression of that statute in the very pleading upon which it relies to set off the purported deficiency balances of the class members herein. CAC contends it has asserted its right to setoff as an affirmative defense in its Answer. Here is the sum and substance of CAC's purported affirmative defense:

> 12. CAC disposed of the collateral at issue in this case in good faith and in a commercially reasonable manner.[3]

and

> 25. Any actual, statutory, punitive or other exemplary damages ordered by this Court to be paid by defendant CAC to plaintiff class members must be offset to the extent said heretofore unknown class members are indebted to defendant CAC by either (a) the terms of a contract between defendant

---

[2] See page 33 of the Court's Order of August 4, 1998 (Document #212).
[3] Answer and Affirmative Defenses of Credit Acceptance Corporation to Third Amended Complaint, page 16, paragraph 12.

> CAC and said individual class members, or (b) judgment entered against any said individual class members by any court of competent jurisdiction.[4]

These allegations don't come close to compliance with § 408.556 RSMo, which requires creditors seeking deficiencies to allege: (1) the facts of the borrower's default; (2) facts sufficient to show compliance with the provisions of §§ 400.9-501 to 400.9-507 RSMo; (3) the amount to which the lender is entitled; and (4) an indication of how that amount was determined. Even if this Court were to undertake the task of determining whether CAC can establish a right to deficiency balances against thousands of debtors herein, it would not find support for doing so under CAC's pleading. Indeed, it appears that CAC's pursuit of deficiencies against the class members under such a pleading violates the Court's order that:

> CAC is permanently enjoined from filing or pursuing any deficiency action without first having complied with Missouri's UCC or alleging compliance with Missouri's UCC.[5]

Such is all the more apparent when one considers that disposition of the collateral in a commercially reasonable manner is but one aspect of compliance with §§ 400.9-501 to 400.9-507 RSMo, as pointed out above. Undaunted by this Court's finding it in violation of a host of consumer protection statutes, CAC now in effect asks the Court to presume it has committed no transgressions other than the ones committed in common against all the class members.

---

[4] Answer and Affirmative Defenses of Credit Acceptance Corporation to Third Amended Complaint, page 17, paragraph 25.

[5] See page 34, paragraph 2, of the Court's Order of August 4, 1998 (Document # 212).

8
Case 4:96-cv-01210-ODS   Document 236   Filed 10/20/98   Page 9 of 15

### 5. CAC's pursuit of these claims is in violation of the FDCPA

The requirement of establishing venue and personal jurisdiction for counterclaims against absent class members brings us to the Fair Debt Collections Practices Act, and particularly to Title 15 U.S.C. § 1692i(a)(2). Pursuant to this federal law, only absent plaintiffs who reside within the territory covered by the Western District of Missouri, Western Division, or who executed their loan agreements in that territory, would be subject to countersuit by CAC in this venue. CAC has not identified how many such persons exist, but it would obviously be at most a small part of the potential counterclaims in this case. The filing of these claims by CAC is thus in direct violation of that statute. In fact, it is very much the sort of abuse that the FDCPA was enacted to prevent.

### 6. Set off is not proper

Courts considering creditor claims for setoffs even in individual TILA cases, in effect similar to all of plaintiffs' claims, have refused to allow them, even where the creditor's claim was reduced to judgment. In *Reid v. Liberty Consumer Discount Co.*, 484 F.Supp. 435 (E.D.Pa. 1980), the court held that a creditor's claimed right to set off its state court judgment against the debtor's Truth in Lending claim in federal court did not constitute a meritorious defense and thus provided no grounds for setting aside a default judgment entered against the creditor in the federal action. In *Dias v. Bank of Hawaii*, 732 F.2d 1401 (9th Cir. 1984), the Court of Appeals reversed the trial court's decision allowing a lender to satisfy an adverse TILA judgment by reducing its state court claim in the amount of the TILA judgment, reasoning that:

> to allow lenders to do so would frustrate the essential purpose of the Act. The TILA civil liability provisions were designed largely to encourage consumers to bring small damage actions and thereby promote creditor compliance with the Act. See *Hannon v. Security National Bank, 537 F.2d 327, 328 (9th Cir.*

9

> *1976)*. Allowing creditors to offset TILA judgments against pending collection claims would discourage debtors from bringing TILA claims.

*Id.* at 1403. This is consistent with *Riggs v. Government Employees Financial Corp.*, 623 F.2d 68 (9th Cir. 1980), where a bankruptcy trustee had obtained a TILA judgment against a creditor on behalf of the bankrupt debtor and the court refused to permit the TILA award to be set off against the creditor's claim, reasoning that "by allowing lenders to subtract Truth-in-Lending awards from amounts owed them by bankrupt borrowers, the district court would eliminate any incentive for bankruptcy trustees to pursue Truth-in-Lending claims." *Id.* at 74.

The only case cited by CAC allowing set offs in the class action context is *Senn v. Commerce Manchester Bank*, 583 S.W.2d 119 (Mo.banc 1979). That case is clearly distinguishable from the one at bar. There six purchasers of lots in a real estate development brought a class action on behalf of 80 others similarly situated. They sued a bank, the assignee of the defunct developer. There was no dispute over the amount they owed on their respective notes given in purchase of their lots. Since their damages were based upon and tied to their respective lots, the court simply held that the balance due which they would otherwise have had to pay to obtain their lots would have to be deducted from their damages. *Id.* at 138. Of course, here the class members' damages are not connected with their purchase of the cars from CAC's dealers. Thus there is no reason to require them to pay their note balances as a quid pro quo for the damages they are awarded.[6]

---

[6] *Senn* is instructive on another issue in this case, however. Even though the bank in that case had taken default judgment against some of the class members on their notes, the court rejected the bank's assertion of res judicata as to those class members, noting that "The issue in the default judgments was whether the installments had been paid as required by the notes. The cause of action in the present suit is completely different in that it is based on [the bank's] assumption of [the developer's] obligations under the contract for deed and defendant's duty to plaintiffs as the purchaser of plaintiffs' contracts with North American." Id. at 137, n.1. Thus CAC's default judgments against the class members are entitled to

10

### 7. Waiver of claims

CAC has not asserted in its pleadings any counterclaims at any time against any class members, even named class members. The plaintiffs never asserted that CAC could not have at least raised counterclaims in its pleadings against the <u>named</u> plaintiffs. The plaintiffs submit that, given the late stage of the case, CAC has in effect and under this Court's scheduling orders waived any counterclaims against the plaintiffs — particularly the named plaintiffs.

### 8. Attempt to make the case unmanageable

CAC once again envisions litigating its claims against thousands of absent class members. Its motion clearly indicates that it envisions litigating some sort of claims even against absent class members who are not in default but still are making payments under their contracts. It clearly aims at making a terrible mess of the case.

Plaintiffs take issue with CAC's blithe assumption that the class representatives' and the class members' nonpayment would automatically entitle CAC to judgment by way of setoff for the entire outstanding balance purportedly due on the contracts. As this Court has already decided, CAC is subject to all claims and defenses the class representatives and class members have against their respective selling dealers.[7] The claims asserted by the named plaintiffs on behalf of the class are limited to those suitable for class treatment under Rule 23. One cannot assume, as CAC would, that the class members have no other claims or defenses against their respective selling dealers that could be asserted in individual actions against those dealers. Apt illustration of this is found in the

---

no more res judicata effect in the instant case than were the bank's judgments against the debtors on their notes in *Senn*.

[7] See page 18 of the Court's Order of August 4, 1998 (Document # 212).

11

individual claims of named plaintiffs Marvin Fielder and Deborah Williams against their selling dealer, defendant Northeast Auto Credit, Inc. ("NAC") - claims upon which this Court has already granted an interlocutory judgment of default.[8]

For another example, the UCC further mandates that "*every aspect* of the disposition including the method, manner, time, place and terms [of the disposition] must be commercially reasonable." § 400.9-504(3) RSMo. (Emphasis supplied). Therefore, even if the content of CAC's notice of sale would pass muster, CAC's failure to send it to the debtor's current address would bar a deficiency. *Commerce Bank of St. Louis , N.A. v. Dooling*, 875 S.W.2d 943, 947-8 (Mo.App.E.D. 1994). Given the variety of factors to be taken into account in determining commercial reasonableness, it is not feasible to test the commercial reasonableness each individual sale in this class action.

### 9. The judgments CAC has obtained in associate circuit court are likewise subject to the class members' claims and defenses against the dealers and CAC.

This is so even where CAC already has a judgment against the debtor. As previously held on CAC's motion to dismiss, CAC's state court judgments do not preclude CAC's debtors from subsequently suing CAC. *Fielder v. Credit Acceptance Corporation*, 10 F.Supp. 2d 1101 (W.D.Mo. 1998) (citing *Rahman v. Matador Villa Assoc.*, 821 S.W.2d 102 (Mo. banc 1991) (no compulsory counterclaim rule in associate circuit court). It is doubtful, however, that the same rule would apply to a judgment entered in favor of CAC in this Court. Thus CAC could conceivably wipe out the class members' individual claims against it by getting this Court to give it judgments against the absent class members by way of set off.

---

8    See Order of January 14, 1998 (Document # 62).

CAC should not be able to accomplish en masse in this Court what it could not do in individual state court collection actions, i.e., cut off its debtors' rights to assert claims against it and its selling dealers.

## Conclusion

The plaintiffs respectfully submit that CAC's motion should be overruled.

THE BROWN LAW FIRM

By /s/ Bernard E. Brown
BERNARD E. BROWN   #31292
3100 Broadway, Suite 223
Kansas City, Missouri 64111
(816)960-6777 (telecopier)

and

SLOUGH, CONNEALY, IRWIN & MADDEN

By /s/ Dale K. Irwin (by BCB)
DALE K. IRWIN   #24928
4051 Broadway, Suite 3
Kansas City, Missouri 64111
(816) 531-2224
(816) 531-2147 (telecopier)

ATTORNEYS FOR PLAINTIFFS

### CERTIFICATE OF SERVICE

I certify that a copy of the above and foregoing was served by facsimile machine and by first class mail, postage prepaid, this 20th day of October, 1998, to:

N. Louise Ellingsworth
Frank W. Lipsman
BRYAN CAVE
3500 Kansas City Place
1200 Main Street
Kansas City, Missouri 64105
Fax (816) 374-3300

and to:

John P. Scotellaro
Robert M. Moye
BELL, BOYD & LLOYD
Three First National Plaza, Suite 3300
70 West Madison Street
Chicago, Illinois 60602-4207
Fax (312) 372-2098

Attorneys for Defendant Credit
 Acceptance Corporation

_____
Attorney for Plaintiffs