IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

MARVIN FIELDER, et al.,            )
                                   )
                    Plaintiffs,    )
                                   )
v.                                 )   Case No. 96-1210-CV-W-3
                                   )
CREDIT ACCEPTANCE                  )
CORPORATION, et al.,               )
                                   )
                    Defendants.    )

ORDER DENYING PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR RECONSIDERATION OF SUMMARY JUDGMENT

Pending before the Court is (1) Credit Acceptance Corporation's Motion for Reconsideration of the Court's Denial of its Cross-Motion for Summary Judgment on the Plaintiffs' Truth In Lending Claims (Doc. #296) and (2) Plaintiff's Cross-Motion for Reconsideration of the Court's Denial of Their Motion for Summary Judgment on Counts VI, VII, VIII, and IX of Their Third Amended Complaint (Doc. # 302). The former motion is granted and the latter motion is denied. All remaining claims are remanded to state court.

1. Background

The factual background of this case is contained in the Court's previous Orders, Fielder v. Credit Acceptance Corp., 175 F.R.D. 313 (W.D. Mo. 1997) and Fielder v. Credit Acceptance Corp.,10 F.Supp. 1101 (W.D. Mo. 1998).

2. Discussion

A. Plaintiffs' Cross-Motion for Reconsideration of Summary Judgment



ORIGINAL

The Court denies Plaintiffs' invitation to reconsider the prior denial of its motion for summary judgment. Plaintiffs fail to present any new law, facts, or arguments that would require the Court to reconsider its early ruling.

### C. Defendant's Motion for Reconsideration of Summary Judgment

Defendant Credit Acceptance Corporation ("CAC") has asked this Court to reconsider its denial of CAC's April 18, 1998 cross-motion for summary judgment on Plaintiffs' Truth In Lending Act ("TILA") claim (Count IX of Plaintiffs' Third Amended Complaint) on the ground that the findings in this Court's decision of August 4, 1998, in light of subsequent decisions of the Courts of Appeals for the Fifth, Seventh, and Eleventh Circuits conclusively demonstrate that there is no genuine issue of material fact that CAC is entitled to judgment as a matter of law on those claims.

The Defendant's assertion that this Court is required to reconsider the Summary Judgment Order because other circuits outside of the Eighth Circuit have ruled on a specific area of law is misplaced. Defendant cites Scott v. City of Sioux City, IA, 736 F.2d 1207 (8th Cir. 1984) as supporting this proposition. A careful reading suggests that the District Court in that case reconsidered its summary judgment order based upon a recent ruling by its controlling circuit, the Eighth Circuit. This Court is bound to apply the law as the Eighth Circuit directs not as the Fifth, Seventh, or Eleventh Circuits may hold.

However, be that is it may, the Court will revisit this issue since the holdings from the other circuits clearly articulate an interpretation of the Truth in Lending Act ("TILA") statute which is becoming standard in the federal circuit courts of appeal. See Green, III v. Levis Motors, Inc., 179 F.3d 286 (5th Cir. 1999); Ellis v. General Motors Acceptance Corp., 160 F.3d 703 (11th Cir. 1998); Walker v. Wallace Auto Sales, 155 F.3d 927 (7th Cir. 1998); Taylor v. Quality Hyundai, Inc., 150 F.3d 689 (7th Cir. 1998).

The issue under consideration is whether an assignee of a retail installment

contracts ("RICs") has liability if a TILA violation results from an official fee overcharge which occurs in the credit transactions under dispute. Defendant's arguments focus on the nature and degree of knowledge necessary for liability under TILA.

Previously, the Court denied Defendant's summary judgment motion and held as uncontroverted the fact that Defendant determines whether to accept the assignment of a RIC by reviewing the consumer's credit application. After Defendant agrees to accept the assignment of a RIC, the dealer completes the contract, obtains the consumer's signature, executes the assignment, and forwards the contract to Defendant. Once Defendant has accepted an assignment, it does so whether or not the dealer subsequently forwards the "documents needed for deal advance" which normally are submitted to Defendant after it has agreed to accept the assignment and which include the title application. See Fielder v. Credit Acceptance Corp., 19 F.Supp.3d 966, 972 (W.D. Mo. 1998).

The Court denied both parties' summary judgment motions because although the Court had the disclosure documents before it, "the propriety of the official fee charges cannot be determined . . . at this time." Id. Therefore, this Court concluded that it "cannot find that CAC had actual knowledge that the official fee charges were in violation of TILA or that CAC is liable because the violations should have been "apparent on the face [of the document]." Id. at 980. In the subsequent discussion of the FTC Holder Rule, this Court stated that "the violations are not apparent on the face." Id.

Section 131 of TILA, 15 U.S.C. § 1641, "limits the liability of subsequent assignees to those situations in which the violation of the TILA is "apparent on the face of the disclosure statement"." Walker, 155 F.3d at 934 (7th Cir. 1998) (quoting the statute). The statutory language is as follows:

> Liability of assignees
> (a)Prerequisites
> Except as otherwise specifically provided in this subchaper,
> any civil action for a violation of this subchaper or
> proceeding under section 1607 of this title which may be

3

> brought against a creditor may be maintained against any
> assignee of such creditor only if the violation for which such
> action or proceeding is brought is *apparent on the face* of
> the disclosure statement, except where the assignment is
> involuntary. For the purpose of this section, a violation
> apparent on the face of the disclosure statement includes,
> but is not limited to (1) a disclosure which can be determined
> to be incomplete or inaccurate from the face of the
> disclosure statement or other documents assigned, or (2) a
> disclosure which does not use the terms required to be used
> by this subchapter.

15 U.S.C. § 1641 (emphasis added).

Since this Court's previous rulings, several cases have considered whether an assignee was liable for a RIC which misrepresented loan costs to the debtor. Two of the cases dealt with the allegation that the charge for an extended warranty was in actuality a disguised finance charge. See Walker, 155 F.3d at 927; Ellis, 160 F.3d at 709. In a case similar to one before this Court, an allegation concerning the amounts listed as "Paid to Public Officials for License Fee" was under contention. Green, 179 F.3d at 295.

Each Circuit Court considered what, if any, knowledge an assignee must have in order to negate its nonliability stature if there is not a violation apparent on the face of the RIC. The Seventh Circuit considered plaintiffs' claim that the assignee had actual knowledge that the amount charged for an automobile extended warranty exceeded the normal market price and thus was a disguised extra finance charge. The Court disagreed with the plaintiffs and reasoned that under the plain language of the statute, actual knowledge of an offense is not enough. Walker, 155 F.3d at 936; see also Taylor v. Quality Hyundai, Inc., 150 F.3d 689, 694 (7th Cir. 1998). The violation must be apparent on the face of the document. Id.

The Eleventh Circuit considered the same issue under similar circumstances. There, the plaintiffs contended that the amount charged for the extended warranty was excessive and sufficiently "apparent on the face" of the disclosure statement to warrant

4

Case 4:96-cv-01210-ODS   Document 323   Filed 05/25/00   Page 4 of 7

liability. Ellis, 160 F.3d at 709. The plaintiffs argued that since the defendant actually paid one amount of money to the mechanic and had possession of the RIC which indicated another amount paid for the warranty, this information formed a sufficient basis to conclude that the defendant knew of the TILA violation. Id. The Eleventh Circuit held that it would not resort to evidence or documents extraneous to the disclosure statement and that the assignee was not liable for a TILA claim. Id. The Court reasoned that there was no TILA violation even if the Defendant had actual knowledge of the discrepancy between the amount charged and the amount paid. Id.

The Fifth Circuit considered the same issue under a set of facts similar to the case before this Court. The plaintiff argued that the amount listed in the RIC as paid to the State of Louisiana, a third party, for license fees exceeded the published license fee tables. Green, 179 F.3d 295. The plaintiff concluded the argument by stating that the public's ready access to the state's tables made the alleged TILA violation apparent on the face of the RIC. Id. The Fifth Circuit held that no violation was apparent. The Court agreed with the lower district court's ruling which held that § 1641 establishes an "objective test to determine the liability of assignees" and not the defendant's subjective experience. Id. The Court reasoned that even though the Louisiana tables may be readily available to the public, the tables do not establish a duty of inquiry on the defendant. Id. The Court went on to state that "this is the very kind of duty that the statute precludes, by limiting the required inquiry to defects that can be ascertained from the face of the documents themselves". Id. (quoting Taylor, 150 F.3d at 694.)

In this case, Plaintiffs allege that the amount of "official fees" charged to a car buyer under a RIC in Missouri exceeded the statutory rates. Plaintiffs argue that Defendant knew, as a matter of law, the exact amount owed to the state under the Missouri statutes and had a duty to review the documents for any excess. Any charge for such fees in excess of the statutorily-prescribed amount appearing on the contract would result in assignee liability under the TILA claim. Plaintiffs premise their argument on the statement that the Defendant knew as a matter of law that any charge in excess of the statutory amount was improper.

5

In support, the Plaintiffs ask the Court to accept Taylor for the proposition that the Defendant should have noticed the amount charged in excess of the Missouri statutory fees as a facial irregularity and corrected the violation. Plaintiffs argue that Defendant's failure should support the claim of a TILA violation. Plaintiffs rely upon the idea that assignees have the duty to "notic[e] facial irregularities, such as statements that are illegal, impossible, or in conflict with other terms." See Taylor, 150 F.3d 694 (7th Cir. 1998).

Plaintiffs' arguments fail. Plaintiffs want this Court to interpret the Seventh Circuit's holdings as allowing actual knowledge of the Missouri statutes to be a substitution for the TILA's requirement that the violation be apparent on the face of the document. Thus, the Plaintiffs ask the Court to make a statutory interpretation that no other circuit has made. In fact, such a claim goes against the principals of statutory interpretation. See United States v. Talley, 16 F.3d 972, 975 (8th Cir. 1994) (reasoning that courts should abide by the plain meaning of a statute); Linquist v. Bowen, 813 F.2d 884, 888 (8th Cir. 1987) (applying concept that interpretation of statutes requires giving effect to the intent of Congress); United States v. Johnson, 56 F.3d 947, 956 (8th Cir. 1995) (courts must look to the ordinary, commonsense meaning of the words). Taylor makes it clear that a successful TILA violation claim against an assignee requires that it be apparent without any supporting documents including licensing fees tables that are dictated by the State of Louisiana. See Green, 179 F.3d 295.

There is little difference between the fees tables established by the State of Louisiana and the Missouri official fees statutes. Even if Plaintiffs could prove that Defendant suspected or knew the proper amount charged exceeded the state's statutory amount, such violation was not apparent on the loan document. Defendant is not required to investigate any extraneous document to determine what, if any, charge was legally allowable.

The Court holds that a violation, if any, was not apparent on the face of the loan documents. The Court grants the Defendant's Motion for Summary Judgment.

6

### 3. Remand of State Claims

A district court has supplemental jurisdiction over claims that are sufficiently related to claims lying within the court's federal jurisdiction that they form part of the same case or controversy. 28 U.S.C. § 1367(a). However, a district court can decline to exercise its supplemental jurisdiction if, inter alia, it has dismissed all claims over which it has original jurisdiction. Id. § 1367(c)(3).

Since all federal claims have been dismissed, leaving only state-law claims, the Court remands all the remaining claims to the jurisdiction of state court. Diversity of citizenship is lacking, so the Court does not have original jurisdiction over the remaining claims. The Court declines to exercise supplemental jurisdiction over the state-law claims. In making this decision, the Court concedes that this case has spent most of its existence in federal court. However, the Court has previously remanded the Post-maturity Interest Class claims to the appropriate Missouri state court, and it is in the interest of justice for all remaining claims to be litigated in the same tribunal.

### 4. Conclusion

Accordingly, the Court grants Defendant's motion for summary judgment on the TILA claim and denies Plaintiff's motion for reconsideration for summary judgment. The Clerk of the Court is directed to remand all remaining claims to the appropriate state court.

IT IS SO ORDERED.

Date: 5/25/00

ORTRIE D. SMITH, JUDGE
UNITED STATES DISTRICT COURT